# Exhibit 2

2:17-cr-20406-RDB-RSW   Doc # 29   Filed 08/08/17   Pg 1 of 33   Pg ID 106

United States District Court
Eastern District of Michigan
Southern Division

United States of America,

v.

D-1 Jerome Durden,

Defendant.

Case No. 17-cr-20406

Hon. John Corbett O'Meara

Offenses:
***Count One*: Conspiracy to Defraud the United States** (18 U.S.C. § 371)

***Count Two*: Failure to File Tax Return** (26 U.S.C. § 7203)

Maximum Imprisonment:
Count One: 5 years
Count Two: 1 year

Maximum Fine:
Count One: $250,000
Count Two: $25,000

F I L E D

AUG - 8 2017

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

---

# Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Defendant **Jerome Durden** and the government agree as follows:

1

1.    **Guilty Plea**

A.    **Counts of Conviction**

Defendant **Jerome Durden** will enter a plea of guilty to Count One and Count Two of the Information.

Count One charges conspiracy to defraud the United States by impeding, impairing, obstructing, and defeating the Internal Revenue Service from ascertaining, computing, assessing, and collecting taxes, in violation of Title 18, United States Code, Section 371.

Count Two charges willful failure to make and file an individual tax return, in violation of Title 26, United States Code, Section 7203.

**Elements of the Offenses**

The elements of conspiracy to defraud the United States, as charged in Count One of the Information, are as follows:

1.    Two or more persons conspired or agreed to defraud the United States, or one of its agencies or departments, by dishonest means; and

2.    The defendant knowingly and voluntarily joined the conspiracy; and

3.    A member of the conspiracy did one or more of the overt acts set forth in Count One of the Information for the purpose of advancing or helping the conspiracy.

The elements of failure to make and file a tax return, as charged in Count Two of the Information, are as follows:

1. The defendant was required by law to file a tax return; and

2. The defendant failed to file at the time required by law; and

3. The failure to file was willful.

## B. Factual Basis for Guilty Plea

The following facts are a sufficient and accurate basis for Defendant **Jerome Durden**'s guilty pleas:

### Count One – Conspiracy to Defraud the United States

1. Between 2009 and 2015, **Jerome Durden** conspired and agreed with Alphons Iacobelli, General Holiefield, Monica Morgan, UAW-2, and other individuals and entities, to defraud the United States by using two tax-exempt organizations known as the UAW-Chrysler National Training Center and the Leave the Light On Foundation to improperly divert millions of dollars in unreported income to his co-conspirators, himself and others. **Jerome Durden** knowingly and voluntarily joined this conspiracy.

2. During the course of the scheme, **Jerome Durden** and his co-conspirators diverted more than $4.5 million from a tax-exempt organization known as the UAW-Chrysler National Training Center to purchase a luxury Ferrari automobile, to pay off the mortgage on a personal residence, to install a swimming

3

pool, spa, and outdoor kitchen at a personal residence, to purchase two $37,500 limited-edition fountain pens, to make home improvements, and to pay for personal credit card transactions, among other personal expenses. The scheme to conceal taxable income caused over $1,000,000 in tax losses to the United States.

3. As part of the scheme, **Jerome Durden** and his co-conspirators used the UAW-Chrysler National Training Center as a conduit to conceal over a million dollars in prohibited payments and things of value paid directly and indirectly to UAW Vice President General Holiefield and other UAW officials by persons acting in the interest of Fiat Chrysler Automobiles US LLC (FCA).

4. As part of the same scheme, **Jerome Durden** and his co-conspirators also diverted tens of thousands of dollars from a related tax-exempt charity known as the Leave the Light On Foundation to pay the personal expenses of UAW Vice President General Holiefield.

### The UAW-Chrysler National Training Center

5. The UAW Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center (NTC) was a tax-exempt corporation organized and registered under the laws of the State of Michigan and located in Detroit, Michigan. In 1986, the NTC applied for and received 501(c)(5) tax-exempt status from the Internal Revenue Service to operate as an organization established to provide for the education, training, and retraining of workers.

4

6. The governing body of the NTC was known as the Joint Activities Board. The Vice President for Employee Relations of FCA and the Vice President for the Chrysler Department of the UAW serve as the Chairmen of the NTC Joint Activities Board. The remainder of the Joint Activities Board was made up of senior officials from FCA and the UAW.

7. FCA provided the funding for the NTC. From 2009 to 2014, FCA made annual transfers to the NTC of between $13 million and $31 million per year.

8. Alphons Iacobelli was the Co-Chairman of the NTC Joint Activities Board from 2008 through 2015. General Holiefield was the Co-Chairman of the NTC Joint Activities Board from in or before 2008 through 2014. **Jerome Durden** was the Controller of the NTC from 2008 through 2015. Senior UAW official UAW-2 served as the Co-Director of the NTC and as a member of the Joint Activities Board from 2010 through 2014.

9. As a 501(c)(5) tax-exempt organization, the NTC was required to file a true and accurate IRS Form 990 return in each relevant tax year disclosing transfers between itself and related entities, disclosing business transactions with interested persons and disclosing compensation to current and former trustees, directors, officers and keys employees, among other information.

10.    In each relevant tax year between 2009 and 2015, Jerome Durden was directly involved in preparing, signing, and filing an IRS Form 990 tax return on behalf of the Joint Activities Board of the NTC.

### The Leave the Light On Foundation

11.    The Leave the Light On Foundation was a non-profit corporation organized and registered under the laws of the State of Michigan as the successor in fact to a Michigan non-profit corporation called the Hand-In-Hand Foundation. In 2002, the Hand-In-Hand Foundation applied for and received 501(c)(3) tax-exempt status from the Internal Revenue Service to operate as a charitable organization.  In February of 2008, the Hand-in-Hand Foundation officially changed its name to the Leave the Light On Foundation (hereafter, LTLOF).  The stated purpose of the LTLOF was to raise money to be used for charitable and community activities.

12.    Between 2009 and 2014, more than $386,400 in funds were transferred from the NTC to the LTLOF.

13.    UAW Vice President General Holiefield selected the members of the Board of Trustees of the LTLOF. At the direction of UAW Vice President General Holiefield, senior UAW official UAW-2 served as the Vice President of the Board of Trustees of the LTLOF from 2009 to 2014.

14. UAW Vice President General Holiefield controlled the funds and assets of the LTLOF. Monica Morgan was a personal associate and, later, the spouse of General Holiefield.

15. From 2009 through June 2015, **Jerome Durden** served as the Treasurer of the Board of Trustees of the LTLOF.

16. As a 501(c)(3) tax exempt organization, the LTLOF was required to file a true and accurate IRS Form 990 return in each relevant tax year disclosing transfers between itself and related entities, disclosing business transactions with interested parties and disclosing compensation to current and former trustees, directors, officers and keys employees, among other information.

17. In each relevant tax year, **Jerome Durden** was directly involved in preparing, signing, and filing an IRS Form 990 return on behalf of the Board of Trustees of the LTLOF.

**The Scheme to Defraud the United States**

18. Between 2009 and 2015, **Jerome Durden** agreed and conspired with Alphons Iacobelli, General Holiefield, Monica Morgan, UAW-2, the NTC, the LTLOF and other individuals and entities to impede, impair, obstruct, and defeat the Internal Revenue Service from ascertaining, computing, assessing, and collecting taxes.

7

19.     It was part of that conspiracy that **Jerome Durden**, Alphons Iacobelli, General Holiefield, Monica Morgan, UAW-2, and others concealed hundreds of thousands of dollars in illegal payments made by and on behalf of FCA to UAW officers and representatives.

20.     It was part of that conspiracy that **Jerome Durden**, Alphons Iacobelli, General Holiefield, Monica Morgan, UAW-2, and others received millions of dollars in compensation from the NTC, which compensation was falsely and fraudulently omitted from the IRS Form 990 returns filed by the NTC with the Internal Revenue Service.

21.     It was also part of that conspiracy that **Jerome Durden**, Alphons Iacobelli, General Holiefield, Monica Morgan, UAW-2, and others directed and caused the NTC to engage in hundreds of thousands of dollars in business transactions with interested parties, including current and former officers, directors, trustees, and key employees, with their family members and with entities they owned or controlled, which business transactions were falsely and fraudulently omitted from the IRS Form 990 returns filed by the NTC with the Internal Revenue Service.

22.     It was further part of the conspiracy that **Jerome Durden**, Alphons Iacobelli, General Holiefield, Monica Morgan, UAW-2, and others transferred, and caused to be transferred, hundreds of thousands of dollars in funds from the

8

LTLOF to General Holiefield through Monica Morgan and through one or more companies owned or controlled by Monica Morgan, which transfers were falsely and fraudulently omitted from the IRS Form 990 filed by the LTLOF with the Internal Revenue Service.

23. It was further part of the conspiracy that **Jerome Durden**, Alphons Iacobelli, General Holiefield, Monica Morgan, UAW-2, and others caused and directed the LTLOF to engage in excess benefit transactions for the direct benefit of Monica Morgan and for the indirect benefit of General Holiefield, which excess benefit transactions were falsely and fraudulently omitted from the IRS Form 990 filed by the LTLOF with the Internal Revenue Service.

**Overt Acts in Furtherance of the Conspiracy**

24. Members of the conspiracy completed the following acts to effect the object of the conspiracy:

25. On or about February 25, 2011, **Jerome Durden** signed and filed a 2010 IRS Form 990 on behalf of the NTC which return failed to identify the LTLOF as a related entity and failed to accurately report the transfer of $56,000 in funds from the NTC to the LTLOF during the subject tax year.

26. On or about November 1, 2011, **Jerome Durden** signed and filed a 2010 IRS Form 990 on behalf of the LTLOF which return failed to identify the NTC as a related entity, failed to accurately report the transfer of $86,000 in funds

9

from the NTC to the LTLOF during the subject tax year and further failed to accurately report the transfer of $53,015 in funds from the LTLOF to General Holiefield through a company controlled by Monica Morgan during the subject tax year.

27.     On or about May 15, 2012, **Jerome Durden** signed and filed a 2011 IRS Form 990 on behalf of the NTC which return failed to identify the LTLOF as a related entity, failed to accurately report the transfer of $122,000 in funds from the NTC to the LTLOF during the subject tax year, failed to accurately report the $421,960 in funds transferred from the NTC to two separate companies controlled by Monica Morgan and failed to accurately report more than $20,600 in compensation paid to Alphons Iacobelli.

28.     On or about May 14, 2013, **Jerome Durden** signed and filed a 2012 IRS Form 990 on behalf of the NTC which return failed to accurately report the $246,652 in funds transferred from the NTC to three separate companies controlled by Monica Morgan, failed to accurately report the transfer of $89,200 in funds from the NTC to the LTLOF, and failed to accurately report more than $148,094 in compensation paid to Alphons Iacobelli.

29.     On or about May 13, 2014, **Jerome Durden** signed and filed a 2013 IRS Form 990 on behalf of the NTC which return failed to accurately report the $40,854 in funds transferred from the NTC to two separate companies controlled

by Monica Morgan, failed to accurately report the transfer of $104,200 in funds from the NTC to the LTLOF, and failed to accurate report more than $609,472 in compensation paid to Alphons Iacobelli.

30.   On or about May 11, 2015, **Jerome Durden** signed and filed a 2014 IRS Form 990 on behalf of the NTC which return failed to accurately report more than $262,000 in compensation paid to General Holiefield and failed to accurately report more than $826,838 in compensation paid to Alphons Iacobelli.

### Count Two – Willful Failure to File Tax Return

31.   Between January of 2013 and December of 2013, **Jerome Durden** received $147,818 in wages from FCA.

32.   FCA paid the $147,818 to **Jerome Durden** as compensation for his position in the FCA Finance Department and for his services as the Controller of the NTC and as the Treasurer of the LTLOF.

33.   Between January of 2013 and December of 2013, **Jerome Durden** received additional income of $4,300 from the NTC in the form of funds used to purchase and install carpeting at his residence in Rochester Hills, Michigan.

34.   In and after April 2014, **Jerome Durden** willfully and intentionally failed to file a 2013 IRS 1040 income tax return as required by law.

2.   **Sentencing Guidelines**

11

A.    Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

B.    **Agreed Guideline Range**

The parties agree on all sentencing factors except the following:

1.    **If the offense involved "sophisticated means" within the definition of USSG § 2T1.1(b)(2).**

The government takes the position that the offense of conspiring to defraud the United States by filing multiple false returns on behalf of tax exempt organizations falls within the definition of sophisticated means and that defendant's base offense level should be increased by 2 levels pursuant to USSG § 2T1.1(b)(2). Defendant Jerome Durden reserves his right to contest the application of USSG § 2T1.1(b)(2) to either of his offenses of conviction.

2.    **Reduction for Mitigating Role.**

Defendant Jerome Durden takes that position that his total offense level should be decreased under USSG § 3B1.2 based on his role in the offense of conspiracy to defraud the United States. The government reserves its right to contest any reduction in Durden's total offense level under USSG § 3B1.2 for mitigating role.

12

The parties agree that the Court shall determine these and all sentence guideline factors by a preponderance of the evidence and further agree to be bound by the Court's determination.

As is set forth on the attached worksheets, the government takes the position that the defendant's advisory guideline range is 30-37 months. If the Court finds:

1. That defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offenses; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 30-37 months, then the government takes the position that the higher guideline range should apply.

## 3. Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

### A. Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed **37 months**.

13

### B. Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is not more than three years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that result from any later revocation of supervised release.

### C. Special Assessment

Defendant will pay a special assessment of $200.00 and must provide the government with a receipt for the payment before sentence is imposed.

### D. Fine

There is no agreement as to the amount of the fines.

### E. Restitution

Pursuant to 18 U.S.C. § 3553, the parties agree that restitution shall be imposed in this matter with respect to defendant's conviction for failure to file a tax return as charged in Count Two of the Information, to include any unpaid taxes plus interest due and owing as calculated by the U.S. Probation department.

### F. Payment of Taxes and Filing of Accurate Tax Returns

As a condition of and at least 90 days prior to the expiration of any term of probation or supervised release imposed herein, Defendant Jerome Durden shall in

14

good faith (1) file true and correct individual IRS Form 1040 income tax returns that he has not filed as required by law, including a 1040 income tax return for the year 2013; (2) file amended individual IRS Form 1040 income tax returns as necessary for the tax years 2009, 2010, 2011, 2012 and 2014; and (3) make arrangements for payment of any taxes owing as a result of the filing(s) required under this subparagraph.

Defendant Jerome Durden shall further cooperate fully and in good faith with the Internal Revenue Service in determining his correct tax liability, including any assessable penalties and applicable interest owed thereon, and shall make satisfactory arrangements with the Internal Revenue Service for payment of any taxes, penalties and interest.

Defendant Jerome Durden agrees that he will not seek, request or file any claim for any refunds of any taxes, penalties or interest for the tax years 2009 through 2014, inclusive.

Defendant Jerome Durden shall further cooperate fully and in good faith with the Internal Revenue Service in determining the correct tax liabilities of the NTC and any individual who received unreported income from the NTC, including any assessable penalties and interest owed thereon.

15

Nothing in this Agreement shall limit the ability of the Internal Revenue Service to examine and to make adjustments to any original or amended 1040 income tax returns filed by defendant Jerome Durden.

4.      **Cooperation Agreement**

The written cooperation agreement between Defendant Jerome Durden and the government, which is dated March 15, 2017, is part of this plea agreement.

5.      **Use of Withdrawn Guilty Plea**

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), Durden waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

6.      **Defendant's Right to Withdraw from This Agreement**

Defendant Durden may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than 37 months. This is the only reason for which Durden may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than 37 months.

7.      **Appeal Waiver**

16

Defendant Jerome Durden waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence does not exceed 37 months, the defendant also waives any right he may have to appeal his sentence, the amount of the fine or the amount of restitution imposed in this matter on any grounds.

8.    **Consequences of Withdrawal of Guilty Pleas or Vacation of Convictions**

If defendant is allowed to withdraw his guilty pleas or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty pleas becomes final, which charges relate directly or indirectly to the conduct underlying the guilty pleas or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

9.    **Parties to Plea Agreement**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

10.    Scope of Plea Agreement

This agreement is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States, the Internal Revenue Service or any other party.

## 11.    Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on March 22, 2017. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Daniel L. Lemisch
Acting United States Attorney


_____
David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit


_____
Stephanie M. Gorgon
Assistant United States Attorney

Date:


_____
Bruce C. Judge
Assistant United States Attorney


_____
Charles J. Kalil II
Assistant United States Attorney

19

By signing below, defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.


JUDITH GRACEY
Attorney for Defendant

JEROME A. DURDEN
Defendant

Date: 3/17/17

Date   3-17-17

20