# Exhibit 32

United States District Court
Eastern District of Michigan
Southern Division

United States of America,

v.

D-5 Keith Mickens,

            Defendant.

Case No. 17-cr-20406

Honorable Paul D. Borman

Offense: **Conspiracy to Violate the
Labor Management Relations Act**
(18 U.S.C. § 371)

Maximum Imprisonment: 5 years

Maximum Fine: $250,000

Maximum Supervised Release: 3
years

---

# Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Defendant

**Keith Mickens** and the government agree as follows:

## I.    Guilty Plea

### A.    Count of Conviction

Defendant **Keith Mickens** will enter a plea of guilty to Count One of the

Third Superseding Information.

- 1 -

Count One of the Third Superseding Information charges conspiracy to violate the Labor Management Relations Act, in violation of 18 U.S.C. § 371.

### Elements of the Offense

The elements of conspiracy to violate the Labor Management Relations Act, as charged in Count One of the Third Superseding Information, are as follows:

(1)     Two or more persons conspired to violate the Labor Management Relations Act in violation of 29 U.S.C. § 186(a)(2), (b)(1), and (d)(1).

(2)     The defendant knowingly and voluntarily joined the conspiracy.

(3)     A member of the conspiracy did one of the overt acts described in the Third Superseding Information for the purpose of advancing or helping the conspiracy.

**B.     Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for defendant **Keith Mickens's** guilty plea to Count One of the Third Superseding Information:

From in and after June 2010 through December 2015, **Keith Mickens** knowingly joined a conspiracy in which he and other employees and officers of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) willfully requested, received, accepted, and agreed to receive and accept, payments, money, and things of value from persons acting in the interest of employer Fiat Chrysler Automobiles US LLC (FCA).

- 2 -

**Keith Mickens**, then a representative and employee of the UAW, knowingly and voluntarily joined this conspiracy to receive and accept payments, money, and things of value from persons acting in the interest of FCA. **Keith Mickens** knew that payments, money, and things of value were delivered through and concealed by the UAW-Chrysler National Training Center (NTC) and were willfully made with the intent to benefit **Keith Mickens**, UAW Vice President General Holiefield, UAW official Virdell King, UAW official UAW-3, UAW official UAW-4, and other UAW officials who were not permitted to receive the payments, money, and things of value.

The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) was a labor organization based in Detroit, Michigan. The UAW represented tens of thousands of non-managerial employees employed by FCA at numerous locations in Michigan and across the United States. At all times relevant, the UAW was a labor organization subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

**Keith Mickens** was a UAW employee who served as an official in the UAW Chrysler Department from 2010 until he retired in December of 2015. In 2011, Keith Mickens served as a member of the UAW national negotiating committee responsible for the collective bargaining agreements between the UAW and FCA. As a senior UAW official in the Chrysler Department, **Keith Mickens** was

- 3 -

responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW.

The UAW-Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center (NTC) was a tax-exempt corporation based in Detroit, Michigan. The NTC purported to function as a labor management committee under the Labor Management Relations Act, 29 U.S.C. § 186(c)(9). The stated purpose of the NTC was to provide for the education, training, and retraining of workers.

The governing body of the NTC was known as the Joint Activities Board. The Vice President of Employee Relations of FCA and the Vice President of the Chrysler Department of the UAW served as the Chairmen of the NTC Joint Activities Board. The remainder of the Joint Activities Board was made up of senior officials from FCA and the UAW.  From 2010 through 2014, **Keith Mickens** was the Co-Director of the NTC and served on the NTC's Joint Activity Board.

Fiat Chrysler Automobiles US LLC was an automotive company based in Auburn Hills, Michigan, and the successor to the automotive company formerly known as Chrysler Group LLC. Both are referred to here as "FCA."  At all times relevant, FCA was an employer in an industry affecting interstate commerce and subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

- 4 -

Alphons Iacobelli was the FCA Vice President for Employee Relations and a person acting in the interest of employer FCA from 2008 through 2015. As the FCA Vice President for Employee Relations, Alphons Iacobelli was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW.  Alphons Iacobelli was the senior FCA official responsible for resolving disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW.

Jerome Durden was a Financial Analyst in FCA's Corporate Accounting Department. From 2008 through 2015, Jerome Durden was the controller of the NTC and served as the secretary of the NTC Joint Activities Board.

FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and other FCA executives used the bank accounts of the NTC to conceal hundreds of thousands of dollars in payments made to UAW Vice President General Holiefield in the form of checks issued to companies owned and controlled by UAW Vice President General Holifield and his girlfriend and later wife, Monica Morgan.

FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and their co-conspirators used NTC bank accounts and NTC credit card accounts to conceal prohibited payments and things of value paid and delivered to

- 5 -

senior UAW Vice President General Holiefield, UAW-3, UAW-4, **Keith Mickens**,

senior UAW official Virdell King, and other senior UAW officials.

### Overt Acts

One or more members of the conspiracy completed one or more of the

following overt acts to effect the object of the conspiracy:

In and after 2011, UAW Vice President General Holiefield selected the

company Monica Morgan Photography (MMP) and the company Wilson's

Diversified Products, also known as Wilson Diversifed Products (WDP), as

preferred and single-source vendors for the NTC. Both companies were owned and

controlled by General Holiefield and his girlfriend and later wife, Monica Morgan.

On numerous occasions between 2011 and 2013, UAW Vice President

General Holiefield and Monica Morgan created invoices for WDP and for MMP

demanding payment from the NTC for goods and services that were not provided to

the NTC.

On numerous occasions between 2011 and 2013, UAW Vice President

General Holiefield delivered false and inflated invoices to **Keith Mickens** and

directed **Keith Mickens** to obtain "offline" NTC checks payable to WDP and

MMP. At the direction of General Holiefield, from time to time **Keith Mickens**

provided the NTC checks, in person, to Monica Morgan.

In July 2013, at the direction of UAW Vice President General Holiefield, **Keith Mickens** obtained an offline check from the NTC payable to MMP in the amount of $13,500. Within days of receiving that check, Monica Morgan and General Holiefield used the $13,500 to pay the remaining balance due for the installation of a swimming pool at their residence in Harrison Township, Michigan.

In and after 2010, NTC credit cards were provided to **Keith Mickens** and other UAW officials. FCA Vice President Alphons Iacobelli encouraged and authorized **Keith Mickens**, UAW Vice President General Holiefield, UAW official Virdell King, UAW-3, and UAW-4 to purchase items such as clothing, jewelry, electronics and other personal items using their NTC credit cards. The purchases of personal items and other personal expenses were paid for by the NTC using funds provided by FCA.

In January 2013, **Keith Mickens** made a personal purchase costing over $1,000 on his NTC credit card from a Best Buy store located in Oakland County, Michigan.

In June 2014, **Keith Mickens** made a personal purchase costing over $1,700 on his NTC credit card from a Best Buy store located in Madison Heights, Michigan.

Between 2012 and 2014, **Keith Mickens** used his NTC credit cards to make over $5,000 in additional purchases of clothing, luggage, golf equipment and other

- 7 -

items for himself and other senior UAW officials, knowing that the credit card purchases were authorized by individuals acting in the interest of FCA and were paid for with funds provided by FCA.

## C.    Other Relevant Conduct

In January of 2016, FCA offered to pay $25,000 to **Keith Mickens** as part of what FCA called "a one-time, non-precedent setting, incentivized retirement program" being offered as "a result of numerous internal [UAW] staff moves." FCA informed **Keith Mickens** that it would not pay him the $25,000 if FCA was "unable to avoid public disclosure" of the terms of what FCA claimed was a "settlement agreement." Before paying him the $25,000, FCA required Keith Mickens to agree in writing that he would not disclose information about the payment to "members of the news media" or to any other third parties.

In and after January 2016, **Keith Mickens** accepted the offer of $25,000 from FCA. At the time he accepted the $25,000 offer, **Keith Mickens** knew that there was no dispute for him to settle with FCA.

Because **Keith Mickens** provided this information to the United States pursuant to a proffer agreement with the United States, the parties agree that it should not be included in determining defendant's guideline calculations under U.S.S.G. §1B1.8(a).

- 8 -

## II.     Sentencing Guidelines

### A.     Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

### B.     Agreed Guideline Range

The parties agree on all sentencing factors except the following:

**1.     If the offense involved "abuse of trust" within the definition of USSG § 3B1.3.**

The government takes the position that the two-level enhancement pursuant to USSG § 3B1.1 (abuse of a position of public or private trust) applies. Defendant Keith Mickens reserves his right to contest the application of USSG § 3B1.1 to his offense of conviction.

**2.     The reduction for mitigating role under USSG § 3B1.2(b).**

The government and the defendant agree that defendant's offense level should be decreased by 2 levels pursuant to USSG § 3B1.2(b).  Defendant Keith Mickens reserves his right to argue for an additional decrease in his offense level pursuant to USSG § 3B1.2(a).

The parties agree that the Court shall determine these and all sentence guideline factors by a preponderance of the evidence and further agree to be bound by the Court's determination.

As is set forth on the attached worksheets, the government takes the position that the defendant's advisory guideline range is **24–30 months**.  If the Court finds:

- 9 -

Case 2:17-cv-20400-FDB-RSW Doc # 86 Filed 04/05/18 Pg 10 of 28 Pg ID 466

1. that defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 24–30 months, the government may take the position that the higher guideline range should apply.

## III. Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the advisory sentencing guideline range.

### A. Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed **27 months**.

### B. Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is not more than three years. The agreement concerning imprisonment described

- 10 -

Case 2:17-cv-20400-FDB-RSW   Doc # 88   Filed 04/03/18   Pg 11 of 28   Pg ID 467

above in Paragraph 3A does not apply to any term of imprisonment that results

from any later revocation of supervised release.

### C.   Special Assessment

Defendant will pay a special assessment of $100.00.

### D.   Fine

There is no agreement as to fines.

### E.   Restitution

The Court shall order restitution to every identifiable victim of defendant's

offense.

## IV.   Cooperation Agreement

The written cooperation agreement between Defendant Keith Mickens and

the government, which is dated March 8, 2018, is part of this plea agreement. The

government agrees to bring no further charges against Defendant Keith Mickens

arising out of his involvement in the charged offenses, unless the Defendant

withdraws his plea or breaches the March 8, 2018 cooperation agreement.

## V.   Use of Withdrawn Guilty Plea

If the Court allows defendant to withdraw his guilty plea for a "fair and just

reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), Mickens waives his rights under

Fed. R. Evid. 410, and the government may use his guilty plea, any statement made

under oath at the change-of-plea hearing, and the factual basis statement in this plea
agreement, against him in any proceeding.

## VI.    Defendant's Right to Withdraw from this Agreement

Defendant Mickens may withdraw from this agreement, and may withdraw
his guilty plea, if the Court decides to impose a sentence higher than 27 months.
This is the only reason for which Mickens may withdraw from this agreement. The
Court shall advise defendant that if he does not withdraw his guilty plea under this
circumstance, the Court may impose a sentence greater than 27 months.

## VII.   Appeal Waiver

Defendant Keith Mickens waives any right he may have to appeal his
conviction on any grounds. If the defendant's sentence of imprisonment does not
exceed 27 months, the defendant also waives any right he may have to appeal his
sentence, including the fine and amount of restitution imposed, on any grounds.

Nothing in this waiver bars a timely claim of ineffective assistance of counsel
on appeal or by collateral relief under 28 U.S.C. § 2255.

## VIII.  Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If the defendant is allowed to withdraw his guilty plea or if any conviction
entered pursuant to this agreement is vacated, the Court shall, on the government's
request, reinstate any charges that were dismissed as part of this agreement. If
additional charges are filed against defendant within six months after the date the

- 12 -

Case 2:17-cv-20400-FDB-RSW Doc # 36 Filed 04/05/18 Pg 13 of 28 Pg ID 469

order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## IX. Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## X. Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Case 1:19-cv-06770-EK-MMH    Document 34-12    Filed 08/21/20    Page 15 of 16 PageID
Case 2:17-cv-20406-FDB-RSW    Doc # 88    Filed 04/03/18    Pg 14 of 28    Pg ID 470
#: 1148

- -

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## XI.    Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on March 16, 2018. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Matthew Schneider
United States Attorney

David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit

Bruce C. Judge
Assistant United States Attorney

Charles J. Kalil II
Assistant United States Attorney

Date: 03-12-2018

- 14 -

By signing below, defendant acknowledges that he has read (or has been read) this entire document, understands it, and agrees to its terms. he also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

_____
Robert D. Sheehan
Attorney for Defendant

_____
Keith Mickens
Defendant

Date: 3-14-18

- 15 -