# Exhibit 50

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF MICHIGAN
                 SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,
                                    HONORABLE PAUL D. BORMAN

   v.                               No. 17-20406

MONICA MORGAN,

            Defendant.
_____/



                        SENTENCING

                 Friday, July 13, 2018

                      1:31 p.m.


APPEARANCES:

   For the Plaintiff:        DAVID A. GARDEY
                             CHARLES J. KALIL, II
                             U.S. Attorney's Office
                             211 West Fort Street
                             Suite 2001
                             Detroit, Michigan  48226
                             (313) 226-9100


   For the Defendant:        STEVEN F. FISHMAN
                             615 Griswold
                             Suite 1125
                             Detroit, Michigan  48226
                             (313) 962-4090




            To Obtain Certified Transcript, Contact:
          Leann S. Lizza, CSR-3746, RPR, CRR, RMR, CRC
                      (313) 234-2608
```

Case 1:19-cv-06770-EK-MMH   Document 34-18   Filed 08/21/20   Page 3 of 28 PageID
Case 2:17-cr-20406-FDB-RSW   ECF No. 119   filed 05/03/18   PageID.698   Page 2 of 25
#: 1245

2

**TABLE OF CONTENTS**

                                                               Page

    Argument by Mr. Fishman                                      5

    Argument by Mr. Gardey                                      13

    Further argument by Mr. Fishman                            20

    Sentencing by the Court                                    22



Exhibits:                                                 Received

   (None offered.)

**SENTENCING**

July 13, 2018

Detroit, Michigan

- - -

(Call to order of the Court, 1:31 p.m.)

(Court, Counsel and Defendant present.)

THE COURT CLERK:  Now calling the case the *United States of America versus Monica Morgan*, Case Number 17-20406.

THE COURT:  Okay.  Parties please identify themselves for the record beginning with the government.

MR. GARDEY:  Good afternoon, Your Honor.  David Gardey on behalf of the United States.

THE COURT:  Okay.  With you at counsel table, please?

MR. KALIL:  Good afternoon, Your Honor.  Charles Kalil on behalf of the United States.

THE COURT:  Okay.

MR. FISHMAN:  Good afternoon, Judge.  Steve Fishman on behalf of Miss Morgan who is here with me.

THE COURT:  Good afternoon, Miss Morgan.

THE DEFENDANT:  Good afternoon, Judge.

THE COURT:  Okay.  Have a seat for a minute.  Let me just spread out the various documents.

Okay.  Mr. Fishman, why don't you and Miss Morgan come to the podium.  Mr. Gardey, if you go sidebar, then we will continue.

No, you come right next to Mr. Fishman.

**FURTHER ARGUMENT BY MR. FISHMAN**

the Court to follow the yellow brick road that Mr. Gardey's trying to lay out while he's at the same time saying, oh, Judge, I just want you to sentence her for what she pled to. He doesn't. He wants you to say she's bad, she's just as bad as her late husband, she's just as bad as Iacobelli and you ought to nail her. That's what he's saying to you. And my response is the same as it's been from the beginning. I'm trusting in this court, the last bastion of fairness, to sentence her for what she did. And I suggested to the Court why I thought a nonjail sentence was sufficient, and I'm not going to reiterate what's in the sentencing memo giving you all the different options that you have. But I suggest still that that's the proper remedy in this case. And I thank you for the opportunity to rebut.

THE COURT: Thank you.

The Court has before it the sentencing of Miss Monica Morgan. The guideline range that's applicable to this case is 24 to 30 months. The other factors that the Court is to consider in reaching a sentence are contained in 18 U.S.C. Section 3553(a). The nature and circumstances of the offense. And it is a serious offense, but it's not just a straight tax offense. A lot of times people earn a lot of money legitimately and they then don't pay taxes and they're caught and then prosecuted for failing to pay taxes.

In this case the parties in the Rule 11 agreement

**USA v. MORGAN, 17-20406**

Case 1:19-cv-06770-EK-MMH   Document 34-18   Filed 08/21/20   Page 6 of 28 PageID
Case 2:17-cr-20406-FDB-RSW   ECF No. 119   filed 08/09/18   PageID.704   Page 23 of 28
 #: 1248
23

**SENTENCING BY THE COURT**

agreed to a specific offense characteristic, said if the defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity, then you increase that by two levels. So the money that she received and didn't pay taxes on, she acknowledged in the characteristic in the Rule 11 that she agreed to, it's that the source of the money came from criminal activity. And, of course, as we showed here, for example, in the year 2011 she claimed $5,000 income and had a lot more. So the offense is a serious offense and not just a plain failure-to-pay tax offense.

There's a need to promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct. White collar crimes were one of the focuses of the Sentencing Reform Act to make sure that there was not a double standard for people who were convicted of other crimes and people who were convicted of white collar crimes and that the white collar crime defendants should get a walk because they're from white collar offenses and not from poor individuals who got involved in criminal activity that were convicted and sentenced.

There's also, as I said, a need to adequately deter criminal conduct. I don't believe that there is a need to protect the public from further crimes of the defendant.

Taking these factors into account, the Court feels

**USA v. MORGAN, 17-20406**

Case 1:19-cv-06770-EK-MMH   Document 34-18   Filed 08/21/20   Page 7 of 28 PageID<br>
Case 2:17-cv-20406-FDB-RSW   ECF No. 119-18   filed 08/09/18   PageID.705   Page 24 of 28<br>
#: 1249

that a sentence of incarceration is required in this case.  The Court recognizes the guidelines are 24 to 30 months.  The Court will vary down a bit recognizing her involvement in the community over many years and assistance to individuals.

So pursuant to the Sentencing Reform Act of 1984, considering the guidelines and the factors contained in 18 U.S.C. Section 3553(a), commits the defendant to the custody of the Bureau of Prisons for a period of 18 months.  Upon release from imprisonment, defendant shall be placed on supervised release for a term of one year.  Further ordered a special assessment of $100 due immediately.  Impose a $25,000 fine due immediately.  Interest shall not accrue.

Restitution in the amount of $190,747 shall be ordered.  A large part of that has already been paid.  Is that correct, Mr. Gardey?

MR. GARDEY:  That is correct.  $102,984.32.

THE COURT:  That leaves about 88,000.  No drug testing is required.  Interest shall not accrue on the remaining balance.

While on supervision, defendant shall abide by the standard conditions adopted by this court and the following special conditions.  If necessary, participate in a program with regard to restitution, provide financial -- the probation officer with financial access to any requested financial information, not incur new credit charges or open additional

**SENTENCING BY THE COURT**

lines of credit without approval of the probation officer unless defendant is in compliance with the payment schedule that is suggested to the Court but that the Court will make the final decision on.

And Miss Morgan is also to fully continue cooperating with the IRS, filing delinquent and amended returns within six months of the sentence date and file future returns that come due during the term of probation for supervised release and also report correct taxable income and claim only allowable expenses on those returns and provide all appropriate documentation in support of the returns. Also, if requested, furnish the IRS with information pertaining to assets and liabilities and also fully cooperate by paying taxes, interest and penalties due and, otherwise, comply with the tax laws.

Let me ask Mr. Luke, did I miss anything?

MR. LUKE: Your Honor, would the Court --

THE COURT: Let's go sidebar.

(Bench conference held off the record.)

THE COURT: Let me ask counsel for Miss Morgan, are there any objections to the sentence just pronounced that have not previously been raised?

MR. FISHMAN: No, sir.

THE COURT: Okay. Same question, Mr. Gardey?

MR. GARDEY: Just one item, Your Honor. Part of the Rule 11 agreement was a -- an agreement by the defendant to

Case 1:19-cv-06770-EK-MMH    Document 34-18    Filed 08/21/20    Page 9 of 28 PageID
Case 2:17-cr-20406-FDB-RSW    ECF No. 119-18    Filed 08/09/18    PageID. 707    Page 26 of 28
#: 1251

SENTENCING BY THE COURT

26

sign a Form 870 and a Form 4549 for the tax years 2011 through 2014 and Miss Morgan has done that for the tax years 2011, '12 and '13. And through no fault of Miss Morgan, we have not resolved the 2014 Form 870 and 4549 and I would just ask the Court to direct that those be signed within 30 days of today.

THE COURT: Okay. Any objection to that?

MR. FISHMAN: No. We're in the process of taking care of that. Her accountant has been in contact with the IRS people and there's some accountant-type problems that he's going to explain to me. Yes, we can do that.

THE COURT: Okay. Then at that point we -- I must advise you that under the Rule 11 plea agreement that you waive your right to appeal the conviction or sentence except on the ground of ineffective assistance of counsel. You understand that, Miss Morgan?

THE DEFENDANT: Yes, sir.

THE COURT: If you wish to appeal on that ground, then you must file a Notice of Appeal with the court within 14 days. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And if you cannot afford counsel to represent you on appeal on that discrete issue of ineffective assistance of counsel, then the Court would appoint counsel to represent you at no cost, you understand that?

THE DEFENDANT: Yes, sir.

USA v. MORGAN, 17-20406

THE COURT: But either way you must file notice within 14 days if you wish to appeal based on the issue of ineffective assistance of counsel. You understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. We are concluded. Thank you.

MR. FISHMAN: Just one thing, Judge.

THE COURT: Sure.

MR. FISHMAN: She be allowed to voluntarily report?

THE COURT: Absolutely.

THE COURT CLERK: Everyone please rise. Court is in recess.

(Proceedings concluded, 2:10 p.m.)

-   -   -

**SENTENCING BY THE COURT**

CERTIFICATION OF REPORTER

I, Leann S. Lizza, do hereby certify that the above-entitled matter was taken before me at the time and place hereinbefore set forth; that the proceedings were duly recorded by me stenographically and reduced to computer transcription; that this is a true, full and correct transcript of my stenographic notes so taken; and that I am not related to, nor of counsel to either party, nor interested in the event of this cause.

S/Leann S. Lizza                                    8-3-2018

Leann S. Lizza, CSR-3746, RPR, CRR, RMR        Date

**USA v. MORGAN,  17-20406**

# Exhibit 51

Case 2:17-cr-20406-PDB-RSW   ECF No. 132-1 filed 07/23/18   PageID.651   Page 1 of 25

United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    v.

D-6 Nancy A. Johnson,

        Defendant.

Case No. 17-cr-20406

Honorable Paul D. Borman

Offense: **Conspiracy to Violate the Labor Management Relations Act** (18 U.S.C. § 371)

Maximum Imprisonment: 5 years

Maximum Fine: $250,000

Maximum Supervised Release: 3 years

---

## Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Defendant **Nancy A. Johnson** and the government agree as follows:

### I.    Guilty Plea

#### A.    Count of Conviction

Defendant **Nancy A. Johnson** will enter a plea of guilty to Count One of the Fourth Superseding Indictment.

- 1 -

Count One charges conspiracy to violate the Labor Management Relations Act, in violation of 18 U.S.C. § 371.

**Elements of the Offense**

The elements of conspiracy to violate the Labor Management Relations Act, as charged in Count One of the Fourth Superseding Indictment, are as follows:

(1)     Two or more persons conspired to violate the Labor Management Relations Act in violation of 29 U.S.C. § 186(a)(2), (b)(1), and (d)(1).

(2)     The defendant knowingly and voluntarily joined the conspiracy.

(3)     A member of the conspiracy did one of the overt acts described in the Fourth Superseding Indictment for the purpose of advancing or helping the conspiracy.

**B.     Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for Defendant **Nancy A. Johnson's** guilty plea to Count One:

1.     From in or before 2009 through 2016, FCA executives conspired with one another, with FCA, with officials at the UAW, and with the UAW, to violate the Labor Management Relations Act.  From 2014 through 2016, while serving as a representative and employee of the UAW, **Nancy A. Johnson** knowingly joined the conspiracy whereby officers and employees of the UAW would willfully request, receive, and accept—and agree to receive and accept—money and things of value

- 2 -

worth over $40,000 from persons acting in the interest of FCA. The prohibited payments and things of value included tens of thousands of dollars in personal travel, golf resort fees, lavish meals and parties, limousine services, designer clothing, jewelry, designer shoes, golf equipment, electronics, and a shotgun. During that time, FCA was the employer of tens of thousands of employees represented by the UAW.

2.      Defendant **Nancy A. Johnson**, then a representative and employee of the UAW, knowingly and voluntarily joined this conspiracy to take and receive money and things of value from persons acting in the interest of FCA. Johnson joined knowing that the money and things of value, which were delivered through and concealed by the UAW-Chrysler National Training Center (NTC), were willfully made with the intent to benefit **Nancy A. Johnson**, senior UAW official Virdell King, senior UAW official Keith Mickens, and other senior UAW officials, who were not permitted to receive the money and things of value.

3.      The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) was a labor organization based in Detroit, Michigan. The UAW represented tens of thousands of non-managerial employees employed by FCA at numerous locations in Michigan and across the United States. The UAW was a labor organization subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

4.      **Nancy A. Johnson** was a UAW employee who served as a senior official in the UAW Chrysler Department from 2014 through 2016. As a senior UAW official in the Chrysler Department, **Nancy A. Johnson** was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2015, **Nancy A. Johnson** served as a member of the UAW national negotiating committee responsible for the collective bargaining agreements between the UAW and FCA.

5.      Keith Mickens (D-5) was a UAW employee who served as a senior official in the UAW Chrysler Department from 2010 through 2015. As a senior UAW official in the Chrysler Department, Keith Mickens was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2011, Keith Mickens served as a member of the UAW national negotiating committee responsible for negotiating the terms of the collective bargaining agreements between the UAW and FCA.

6.      Virdell King (D-4) was a UAW employee who served as a senior official in the UAW Chrysler Department from 2008 until 2016. As a senior UAW official in the Chrysler Department, Virdell King was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA

- 4 -

Case 2:17-cr-20406-PDB-RSW   ECF No. 132-1   filed 07/23/18   PageID.655   Page 5 of 25

on behalf of tens of thousands of FCA employees represented by the UAW. In 2011 and 2015, Virdell King served as a member of the UAW national negotiating committee responsible for negotiating the terms of the collective bargaining agreements between the UAW and FCA.

7.     Fiat Chrysler Automobiles US LLC was an automotive company based in Auburn Hills, Michigan, and the successor to the automotive company formerly known as Chrysler Group LLC. Both are referred to here as "FCA." FCA was an employer in an industry affecting interstate commerce and subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

8.     Alphons Iacobelli (D-2) was the FCA Vice President for Employee Relations and a person acting in the interest of employer FCA from 2008 through 2015. As the FCA Vice President for Employee Relations, Alphons Iacobelli was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW. As the FCA Vice President for Employee Relations, Alphons Iacobelli was FCA's lead representative for labor relations and managed FCA's relationship with the UAW. Alphons Iacobelli was the senior FCA official responsible for resolving disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW.

9.  Jerome Durden (D-1) was a Financial Analyst in FCA's Corporate Accounting Department. From 2008 through 2015, Jerome Durden was the controller of the NTC and served as the secretary of the NTC Joint Activities Board.

10.  The UAW-Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center (NTC) was a tax-exempt corporation based in Detroit, Michigan. The NTC purported to function as a labor management committee under the Labor Management Labor Relations Act, 29 U.S.C. § 186(c)(9). The stated purpose of the NTC was to provide for the education, training, and retraining of workers.

11.  The governing body of the NTC was known as the Joint Activities Board. The Vice President of Employee Relations of FCA and the Vice President of the Chrysler Department of the UAW served as the Chairmen of the NTC Joint Activities Board. The remainder of the Joint Activities Board was made up of senior officials from FCA and the UAW.

12.  FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and their co-conspirators used NTC bank accounts and NTC credit card accounts to conceal prohibited payments and things of value paid and delivered to senior UAW official **Nancy A. Johnson**, senior UAW official Virdell King, senior UAW official Keith Mickens, and other senior UAW officials.

Case 2:17-cr-20406-PDB-RSW   ECF No. 132-1   filed 07/23/18   PageID.857   Page 7 of 25

13.     In and after 2014, FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and other FCA executives encouraged and authorized senior UAW official **Nancy A. Johnson** and other senior UAW officials to use the NTC credit cards to pay for personal purchases and personal expenditures in an effort to obtain benefits, concessions, and advantages in the negotiation, implementation, and administration of the collective bargaining agreements between FCA and the UAW.

14.     In approximately December 2014, **Nancy A. Johnson** told Virdell King that FCA Vice President Alphons Iacobelli said, "if you see something you want, feel free to buy it. I don't have a problem if you buy it on the charge card." **Nancy A. Johnson** also told Virdell King "Al [Iacobelli] didn't have a problem" with union officials making personal purchases on their NTC credit cards.

## Overt Acts

15.     One or more members of the conspiracy completed one or more of the following overt acts to effect the object of the conspiracy:

16.     In June 2014, the UAW President approved the appointment of **Nancy A. Johnson** as the Top Administrative Assistant to the Vice President for the UAW Chrysler Department.  As the Top Administrative Assistant, **Nancy A. Johnson** was the second most senior official in the UAW Chrysler Department.

- 7 -

17.     In and after 2012, NTC credit cards were given to senior UAW officials, including Virdell King, Keith Mickens, and others. **Nancy A. Johnson** received an NTC credit card in 2014.

18.     From 2014 through 2016, **Nancy A. Johnson** made purchases on her NTC credit card for her own benefit and, sometimes, at the direction and request of other high-ranking UAW officials and for the benefit of other high-ranking UAW officials.  **Nancy A. Johnson** also directed other UAW officials to use their NTC credit cards to make personal purchases for the benefit of other senior UAW officials.

19.     In October 2014, **Nancy A. Johnson** directed Virdell King to buy luggage at the London Luggage Shop in Detroit, Michigan. King used her NTC credit card to make the purchase.  This luggage was for **Johnson** and another senior UAW official.  The luggage purchased by Virdell King cost $811.01.

20.     In December 2014, **Nancy A. Johnson** directed Virdell King to buy luggage at the London Luggage Shop in Detroit, Michigan. King used her NTC credit card to make the purchase. This luggage was for **Johnson** and other senior UAW officials.  The luggage purchased by Virdell King cost $2,919.77.

21.     In August 2015, **Nancy A. Johnson** directed Virdell King to purchase a shotgun to be presented as a birthday present to another senior UAW officer.  At the direction of **Nancy A. Johnson,** Virdell King spent $2,182 to purchase an

- 8 -

Italian-made Beretta shotgun at Field & Stream in Troy, Michigan. Virdell King had the NTC pay for the shotgun, using funds provided by FCA.

22.     **Nancy A. Johnson** used the NTC credit card to make over $40,000 in personal purchases for other senior UAW officials and herself. **Nancy A. Johnson** made these personal purchases for herself and other high-ranking UAW officials knowing that the credit card purchases were authorized by individuals acting in the interest of FCA and paid for by funds provided by FCA.  Although **Nancy A. Johnson** made some purchases using her NTC credit card for her own personal benefit, the majority of the purchases that she made using her NTC credit card were done at the direction of and for the personal benefit of other senior UAW officials and not for her benefit.

C.     **Other Relevant Conduct**

Sometime in 2014 or 2015, a high-level UAW official directed senior UAW officials to use money supplied by automobile manufacturing companies through joint UAW training centers to pay for travel, including travel solely for purported union business, as well as lavish meal and other entertainment costs of senior UAW officials and their friends, family and allies. This directive was issued in order to reduce costs to the UAW budget from such expenditures because the UAW's budget was under pressure.

In 2014, 2015, and 2016, in Palm Springs, California, high-level UAW officials used UAW funds to pay for extravagant meals, premium liquor, multi-month stays at condominiums, and multiple rounds of golf for little, if any, legitimate union-business or labor-management purposes. As set forth above in the factual basis, some additional expenses in Palm Springs for golf, expensive meals, hotel suites, limousine services, condominium expenses, and other things were paid for using NTC credit cards with funds supplied by FCA.

During the period 2014 through 2016, 100% of the UAW salaries of a large number of UAW officials and employees, nominally assigned to the NTC, was paid for by FCA through the NTC. FCA paid these salaries for the UAW even though senior UAW officials and FCA executives both knew that these UAW officials and employees "assigned" to the NTC spent most of their work time performing tasks for the UAW, reported to the UAW, and enforced FCA's compliance with the collective bargaining agreement on behalf of the union and not for the benefit of FCA or the NTC.

Because **Nancy A. Johnson** provided this information to the United States pursuant to a proffer agreement with the United States, the parties agree that it should not be included in determining defendant's guideline calculations under U.S.S.G. §1B1.8(a).

## II. Sentencing Guidelines

### A. Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

### B. Agreed Guideline Range

There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is **12–18 months**, as set forth on the attached worksheets. If the Court finds:

1. that defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from her probation officer; otherwise demonstrated a lack of acceptance of responsibility for her offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 12–18 months, the higher guideline range becomes the **agreed range**.

## III. Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

- 11 -

### A. Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed **18 months**.

### B. Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is not more than three years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that result from any later revocation of supervised release.

### C. Special Assessment

Defendant will pay a special assessment of $100.00.

### D. Fine

There is no agreement as to fines.

### E. Restitution

The Court shall order restitution to every identifiable victim of defendant's offense.

### IV. Cooperation Agreement

The written cooperation agreement between Defendant Nancy A. Johnson and the government, which is dated July 23, 2018, is part of this plea agreement.

- 12 -

Case 2:19-cv-20406-FDB-RSW   ECF No. 132-1   filed 07/23/18   PageID.683   Page 13 of 20

## V.    Use of Withdrawn Guilty Plea

If the Court allows defendant to withdraw her guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), Johnson waives her rights under Fed. R. Evid. 410, and the government may use her guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against her in any proceeding.

## VI.    Defendant's Right to Withdraw from this Agreement

Defendant Johnson may withdraw from this agreement, and may withdraw her guilty plea, if the Court decides to impose a sentence higher than 18 months. This is the only reason for which Johnson may withdraw from this agreement. The Court shall advise defendant that if she does not withdraw her guilty plea under this circumstance, the Court may impose a sentence greater than 18 months.

## VII.    Appeal Waiver

Defendant Nancy A. Johnson waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 18 months, the defendant also waives any right she may have to appeal her sentence, including the fine and amount of restitution imposed, on any grounds.

Nothing in this waiver bars a timely claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255.

## VIII. Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If the defendant is allowed to withdraw her guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing her to withdraw her guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives her right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## IX. Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## X. Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time

- 14 -

before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## XI.  Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office

of the United States Attorney by 5:00 P.M. on July 23, 2018. The government

reserves the right to modify or revoke this offer at any time before defendant pleads

guilty.

Matthew Schneider
United States Attorney


_____
David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit

Date: 7-18-18

_____
Charles J. Kalil II
Assistant United States Attorney


By signing below, defendant acknowledges that she has read (or has been read) this
entire document, understands it, and agrees to its terms. She also acknowledges that
she is satisfied with her attorney's advice and representation. Defendant agrees that
she has had a full and complete opportunity to confer with her lawyer, and has had
all of her questions answered by her lawyer.


_____
Harold Gurewitz
Attorney for Defendant

Date: July 18, 2018

_____
Nancy A. Johnson
Defendant

- 16 -