**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE FIAT CHRYSLER AUTOMOBILES N.V. SECURITIES LITIGATION | 19-CV-6770 (EK) (VMS)<br><br>(Oral Argument Requested) |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

William B. Monahan
Thomas C. White
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Defendants*

December 14, 2020

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.    PLAINTIFF'S OPPOSITION CONFIRMS HIS FAILURE TO ALLEGE A
      STRONG INFERENCE OF SCIENTER ...................................................................... 3

II.   PLAINTIFF HAS NOT ALLEGED ANY MATERIAL
      MISREPRESENTATIONS .......................................................................................... 6

      A.    Plaintiff's Omission Theory Mischaracterizes FCA's Entirely Accurate
            Disclosures Regarding the 2015 CBA and WCM System .................................... 6

      B.    Mr. Marchionne's September 2017 Statement to a Reporter Was Not
            Materially Misleading ......................................................................................... 7

      C.    Plaintiff Mischaracterizes FCA's Opinion that FCA US "Was a Victim" ............ 8

III.  THE OPPOSITION EFFECTIVELY ADMITS THAT PLAINTIFF HAS
      FAILED TO PLEAD LOSS CAUSATION .................................................................. 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*In re Banco Bradesco*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...................................................................... 3

*In re BofI*,
  977 F.3d 781 (9th Cir. 2020) ................................................................................... 9

*Cent. States* v. *FHLMC*,
  543 F. App'x 72 (2d Cir. 2013) .............................................................................. 10

*City of Pontiac* v. *UBS*,
  752 F.3d 173 (2d Cir. 2014) .................................................................................... 2

*In re Cognizant*,
  2020 WL 3026564 (D.N.J. June 5, 2020) ................................................................ 5

*Constr. Laborers Pension Tr.* v. *CBS*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020) ................................................................... 10

*In re Cyan*,
  2017 WL 1956955 (Del. Ch. May 11, 2017) ........................................................... 8

*In re Dynex*,
  2006 WL 314524 (S.D.N.Y. Feb. 10, 2006) ........................................................... 4

*GE Inv'rs* v. *Gen. Elec. Co.*,
  447 F. App'x 229 (2d Cir. 2011) ........................................................................... 10

*In re Henry Schein*,
  2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ........................................................ 5

*Jackson* v. *Abernathy*,
  960 F.3d 94 (2d Cir. 2020) ...................................................................................... 5

*Kalnit* v. *Eichler*,
  264 F.3d 131 (2d Cir. 2001) ............................................................................... 1, 3

*Khoja* v. *Orexigent Therapeutics, Inc.*,
  2020 WL 6395629 (S.D. Cal. Nov. 2, 2020) ........................................................... 9

*Long Miao* v. *Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020) ..................................................................... 7

*Loreley Fin. (Jersey) No. 3* v. *Wells Fargo Sec.*,
    797 F.3d 160 (2d Cir. 2015) ................................................................................. 10

*Menaldi* v. *Och-Ziff Cap. Mgmt. Grp.*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016) ................................................................... 7

*In re Mylan*,
    379 F. Supp. 3d 198 (S.D.N.Y. 2019) ................................................................... 7

*Pa. Pub. Sch.* v. *Bank of Am.*,
    874 F. Supp. 2d 341 (S.D.N.Y. 2012) ................................................................... 5

*RSM Prod. Corp.* v. *Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................................... 8

*Sachsenberg* v. *IRSA Inversiones*,
    339 F. Supp. 3d 169 (S.D.N.Y. 2018) ................................................................... 9

*Sfiraiala* v. *Deutsche Bank*,
    729 F. App'x 55 (2d Cir. 2018) ............................................................................ 5

*Suez Equity Invs.* v. *Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001) ................................................................................... 10

*Ulbricht* v. *Ternium S.A.*,
    2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020) ................................................... 6, 7

*Zheng* v. *Pingtan Marine Enter.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) ................................................................. 10

### STATUTE AND RULES

15 U.S.C. § 78u-4 ..................................................................................................... 7

Fed. R. Civ. P. 8 ........................................................................................................ 7

Fed. R. Civ. P. 9(b) ................................................................................................ 1, 2, 5, 7

-iii-

## PRELIMINARY STATEMENT

Plaintiff's Opposition ("Opp."; ECF No. 35) confirms that his effort to spin allegations from General Motors' ("GM") dismissed lawsuit into securities fraud against FCA's shareholders falls flat. Plaintiff has not identified a single well-pled fact to support his claim that Defendants set out to defraud FCA's shareholders about the 2015 collective bargaining agreement ("CBA"). Instead, Plaintiff (i) speculates about what FCA executives *must have known*, (ii) ignores Second Circuit law in arguing that Defendants should *also* have disclosed additional facts in their *entirely accurate* public statements, and (iii) pretends that GM's complaint did not merely repurpose allegations that had been *public for years*. Plaintiff's Amended Complaint does not come close to satisfying the heightened pleading requirements of Rule 9(b) or the PSLRA.

***Failure To Plead a Cogent and Compelling Inference of Scienter:*** In his Opposition, Plaintiff first relies on generalized motives possessed by any corporate executive, which the Second Circuit has held does not plead scienter. *Kalnit* v. *Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001). Plaintiff then implausibly claims that FCA's former CEO Sergio Marchionne "acted with knowledge or recklessness" (Opp. at 16-17) because he allegedly gave a promotional watch to a UAW official in 2010—*five years before* the 2015 CBA negotiations and *six years before* any of Defendants' alleged misrepresentations to shareholders. Plaintiff then speculates that Mr. Marchionne must have known about the alleged bribery scheme based on an internal investigation that supposedly "was hidden" (*id.* at 18), but fails to point to a single well-pled fact showing either (i) that the investigation uncovered any bribery, as opposed to *theft* by two former FCA US employees, or (ii) that Mr. Marchionne was informed of the results of the investigation.

***No Material Misrepresentation:*** Plaintiff claims that FCA had a "duty to disclose" that FCA US "received concessions from the UAW" during 2015 CBA negotiations "as a result of the bribery scheme," but concedes that all of FCA's statements accurately "described relevant

labor terms in the 2015 CBA" (*id.* at 13-14) and fails adequately to allege that FCA actually received any such concessions, particularly given that the two former FCA US employees were separated from FCA US "*before* the 2015 CBA negotiations *began*" (*id.* at 9-10).  In any event, "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac* v. *UBS*, 752 F.3d 173, 184 (2d Cir. 2014).

The Opposition concedes that the sole support for Plaintiff's theory of falsity concerning the statement that the two former FCA US employees' conduct "did not impact the CBA process" is unverified allegations in GM's dismissed lawsuit alleged only on "information and belief" (Opp. at 7-9), which cannot satisfy the particularity requirements of the PSLRA or Rule 9(b).  Plaintiff also ignores entirely that the UAW membership initially voted down the allegedly affected CBA and that the renegotiated 2015 CBA was ratified by 77% of the UAW membership, which would have "cleansed" the alleged bribery's alleged impact on negotiations.

Finally, Plaintiff attempts to rewrite FCA's opinion that it "believe[d] that FCA US was a victim" (*id.* at 11-13; Br. at 9, 22),[1] even though, on their face, those statements referred to a "victim of *illegal conduct*" (Opp. at 12)—*i.e.*, theft of FCA funds by two former FCA US employees, which Plaintiff concedes is true.  Plaintiff also does not allege that a single FCA executive did not believe these statements to be true when made.

***No Loss Causation:***  Plaintiff concedes that he is relying exclusively on GM's complaint to plead loss causation, but *dismissed* allegations cannot support loss causation, and the Opposition does not identify a single contrary case.  Further, the allegedly "previously unreported fact[]" revealed by GM's suit was that "FCA obtained concessions in the CBA process as a result

---

[1]     Citations to "Br." refer to Defendants' August 21, 2020 opening brief (ECF No. 32).  Citations to "Ex." refer to the exhibits to the August 21, 2020 Declaration of William B. Monahan (ECF No. 33).  All emphasis is added and internal quotation marks are omitted unless otherwise indicated.

of the bribery scheme." (*Id.* at 23.)  Appendix C hereto demonstrates that this theory was widely

covered in press reports and lawsuits filed *years before GM filed its lawsuit*.  Because only "*new*

*information* can be a corrective disclosure" (*id.* at 22), Plaintiff has failed to plead loss causation.

## ARGUMENT

I.    **PLAINTIFF'S OPPOSITION CONFIRMS HIS FAILURE TO ALLEGE A STRONG INFERENCE OF SCIENTER.**

Plaintiff admits that motives that are "generally possessed by most corporate

directors" and officers do not suffice to plead scienter.  (Opp. at 16 (quoting *Kalnit*, 264 F.3d at

139).)  This is fatal to Plaintiff's motive allegations based on Mr. Marchionne's alleged desire to

merge FCA with GM and become "the CEO of the largest automaker in the world." (*Id.*)  Plaintiff

also ignores that GM rejected the proposed merger *before* FCA's alleged misrepresentations to

investors.  (Br. at 12-13.)  Plaintiff's speculation about Mr. Marchionne's supposed motive to

"[a]void[] criminal charges" (Opp. at 16) does not explain how any of the challenged investor

statements would (or could) have helped him do so, and is far "too speculative and conclusory to

support scienter." *In re Banco Bradesco*, 277 F. Supp. 3d 600, 665 (S.D.N.Y. 2017).

Plaintiff's three novel theories of "conscious recklessness" also fall short. *First*,

Plaintiff's grab bag of speculative allegations concerning Mr. Marchionne do not show his alleged

"involvement in the bribery scheme." (Opp. at 17.)  For example, Plaintiff speculates that

Mr. Marchionne must have known unspecified contrary facts because, as CEO, he was "involved

in the Company's relationship with the UAW." (*Id.* at 16-17.)  But vague allegations based on an

individual defendant's "managerial position" are insufficient to allege scienter as a matter of law.

(Br. at 13-14 (collecting cases).)  Plaintiff's assertion that Mr. Marchionne was "*questioned* by the

DOJ" (Opp. at 17), a wholly unremarkable fact in a government investigation, also does not

demonstrate that he participated in or condoned the alleged bribery.  And Plaintiff's assumption

-3-

that "FCA-1" in a February 2014 email from "FCA-7" to Mr. Iacobelli stating that the UAW may "tell [FCA-1] we are being uncooperative" "is believed to be Marchionne" (*id.* at 9, 17; Compl. ¶¶ 138, 260) is pure speculation.  Even if FCA-1 does refer to Mr. Marchionne, the email does not state that anyone told Mr. Marchionne that the FCA US employees were being "uncooperative," and acting "cooperatively" or "uncooperatively" says nothing about bribery in all events.[2]

Plaintiff makes much of a promotional watch that Mr. Marchionne allegedly gave to a UAW official *in 2010* (Opp. at 4, 9, 17), but never explains how this has anything to do with *2015* CBA negotiations *five years later*, particularly since the UAW official who allegedly received the watch passed away *before* 2015 CBA negotiations started (Ex. P (GM's complaint) ¶ 50 n.11).  At best, the gift of the watch preceded negotiations of the *2011* CBA, but none of the statements to investors that Plaintiff challenges concerns the 2011 CBA.  Plaintiff also does not explain how a mere promotional item (Opp. at 9 n.6) could plausibly evidence participation in an alleged bribery scheme involving *millions* of dollars of alleged bribes.[3]

Nor has Plaintiff alleged a single fact showing that FCA US's "internal investigation confirmed the existence of a bribery scheme" but "was hidden," let alone that Mr. Marchionne was "advised of the investigation's findings."  (Opp. at 18.)  If, as Plaintiff implausibly claims, Messrs. Iacobelli and Durden were part of some vast "ongoing conspiracy" with "other unnamed FCA executives including Marchionne" to "obtain benefits, concessions, and

---

[2]   Plaintiff's assertion that Mr. Marchionne "was implicated in the scheme" is not supported even by his own citation—an anonymously sourced article that does not mention the CBA.  (Opp. at 13 & n.12.)

[3]   Plaintiff speculates that Mr. Marchionne *must have known* unspecified contrary facts because Mr. Iacobelli reported to Mr. Marchionne.  (Opp. at 17-18.)  Even Plaintiff's own cited authority holds, however, that "senior officers will always have 'access' to information indicative of malfeasance (if such information exists)," but "[t]he PSLRA demands more," such as "specific reports or statements that indicated malfeasance."  *In re Dynex*, 2006 WL 314524, at *9 (S.D.N.Y. Feb. 10, 2006), *vacated on other grounds*, 531 F.3d 190 (2d Cir. 2008).  Plaintiff has not identified a single report or confidential witness showing that Mr. Marchionne was aware of Mr. Iacobelli's misconduct prior to Mr. Iacobelli's indictment.

-4-

advantages for FCA" (*id.* at 9-10), it would have made no sense for FCA to have taken any action with respect to their employment *before* the 2015 CBA negotiations.  Plaintiff admits that "[t]he DOJ discovered that Iacobelli was stealing NTC funds *for himself*" (*id.* at 5), so the more plausible, nonculpable explanation is that FCA US uncovered Mr. Iacobelli's theft and separated him from the Company *for stealing*.[4]  Plaintiff's fact-free speculation that *the* most senior FCA executive— who is not alleged to have been involved in the investigation—was aware of the alleged bribery while "silently clutching the results of an investigation" (*id.* at 18, 20-21) cannot withstand the PSLRA and Rule 9(b).

 *Second*, Plaintiff resorts to improper group pleading of so-called "corporate scienter" based on vague assertions of "a multi-year-long bribery scheme" by unspecified "named and unnamed senior FCA officials."  (*Id.* at 19-20.)  "Such allegations are not sufficiently particularized to raise a strong inference of scienter against any individual, much less one whose knowledge may be imputed to the Corporate Defendants," and Plaintiff has not pled any of the "exceedingly rare instances" in which "collective corporate scienter may be inferred." *Jackson* v. *Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020).[5]

 *Third*, Plaintiff tries to invoke the legally questionable "core operations" doctrine. (Opp. at 21-22; Br. at 14 n.8 (collecting cases).)  Plaintiff admits that, even if the doctrine were

---

[4] Mr. Iacobelli technically retired before he could be fired.  Contrary to Plaintiff's allegations (Opp. at 5, 18, 20), FCA US never claimed otherwise.  (*See* Ex. K ("Mr. Iacobelli and Mr. Durden were promptly *separated* from the Company.").)

[5] The cases cited by Plaintiffs (Opp. at 19-20) either support Defendants or are irrelevant.  The cases either (i) rejected "corporate scienter" because "plaintiffs have failed to allege facts supporting an inference of scienter," *Sfiraiala* v. *Deutsche Bank*, 729 F. App'x 55, 58 n.1 (2d Cir. 2018); (ii) held that "a strong inference of corporate scienter" requires internal "reports or statements," such as "signed false affidavits" and a "letter drafted by [the] general counsel," *Pa. Pub. Sch.* v. *Bank of Am.*, 874 F. Supp. 2d 341, 359, 363-64 (S.D.N.Y. 2012); or (iii) found it unnecessary to analyze whether "to impute scienter to a corporation without specifically naming an individual that possessed scienter," because individual scienter *was* adequately pled in that case, *In re Cognizant*, 2020 WL 3026564, at *28 (D.N.J. June 5, 2020); *In re Henry Schein*, 2019 WL 8638851, at *23 (E.D.N.Y. Sept. 27, 2019) (not addressing corporate scienter).

viable in this Circuit (a dubious proposition), it would require a showing that "UAW labor *costs*" "constitute[] nearly all of FCA's Class Period business," but misleadingly cites *revenue* in "FCA's NAFTA segment" (Opp. at 21-22), which has nothing to do with this case.

## II.   PLAINTIFF HAS NOT ALLEGED ANY MATERIAL MISREPRESENTATIONS.

### A.   Plaintiff's Omission Theory Mischaracterizes FCA's Entirely Accurate Disclosures Regarding the 2015 CBA and WCM System.

Plaintiff does not dispute that FCA's disclosures regarding the 2015 CBA, WCM System, and accompanying memorandum of understanding ("MOU") between FCA US and the UAW accurately described those agreements.  Instead, Plaintiff claims that FCA should have *also* disclosed that FCA US allegedly "received concessions from the UAW as a result of the bribery scheme."  (Opp. at 13.)  Even assuming *arguendo* that any of the Individual Defendants were aware of the alleged bribery scheme (which they were not) and that it affected 2015 CBA negotiations (which it did not),[6] Plaintiff admits that, under Second Circuit precedent, "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing."  (*Id.*)[7]  Plaintiff also claims that FCA had a duty to disclose because it "put the reason for [its] success into issue" (*id.* at 14), but FCA did no such thing; instead, it simply "described relevant labor terms in the 2015 CBA" and the accompanying MOU regarding the WCM system (*id.*).

Judge Chen's recent decision in *Ulbricht* v. *Ternium S.A.*, which dismissed securities claims on falsity grounds, is instructive.  Plaintiffs alleged that "Ternium's descriptions of the Sidor Transactions" in its "20-Fs put the transaction 'at issue,' so as to trigger a duty to

---

[6]   Plaintiff concedes that FCA US separated Mr. Iacobelli and Mr. Durden from the Company "*before* the 2015 CBA negotiations *began*."  (Opp. at 8-9.)

[7]   Plaintiff claims that FCA had a duty to disclose "after FCA employees had been charged in connection with the bribery scheme" (Opp. at 13), but ignores that FCA in fact disclosed that these employees had been criminally charged and also stated that they had been separated from FCA US years earlier for stealing from the Company (*see* Br. at 9).  Further, as a matter of law, "failure to disclose . . . isolated employee misconduct is not material."  (*Id*. at 19.)

disclose the bribery scheme that allegedly enabled the transaction."  2020 WL 5517313, at *7 (E.D.N.Y. Sept. 14, 2020).  Just like FCA's descriptions of the 2015 CBA and WCM System, Ternium's statements "accurately report[ed]" the transaction "without attributing the Transaction's success to a particular cause, thereby relieving Ternium of any obligation to disclose the bribery scheme."  *Id.* at *8.[8]

      **B.**        **Mr. Marchionne's September 2017 Statement to a Reporter Was Not Materially Misleading.**

Plaintiff cannot point to a single particularized factual allegation to support his challenge to Mr. Marchionne's September 2017 statement that the alleged bribery "had nothing to do with" the "2015 CBA process."  (Opp. at 8; Compl. ¶¶ 213-14.)  Plaintiff's assertion that "FCA received concessions and favors from the UAW" relies on "alleg[ations] in the GM Complaint," which are alleged "upon information and belief."  (Opp. at 8-9 (citing Compl. ¶¶ 102, 235); Ex. P ¶¶ 78, 81, 89.)  Even if these sorts of allegations were sufficient under Rule 8, the PSLRA and Rule 9(b) require that any allegations "'made on information and belief . . . state with particularity all facts on which that belief is formed,'" including "detail as to the who, what, when, where, and how" of the "sources of their knowledge."  *Long Miao* v. *Fanhua, Inc.*, 442 F. Supp. 3d 774, 797, 803-04 (S.D.N.Y. 2020) (quoting 15 U.S.C. § 78u-4(b)(1)).  Plaintiff does not provide *any* such detail and, instead, concedes that he is relying only on "facts known to GM."  (Opp. at 8.)[9]

---

[8]      Judge Chen also distinguished the cases cited by Plaintiff (Opp. at 14-15), which "all involve situations where the company . . . either omitted the illegal source of income while emphasizing the legal sources, or otherwise touted their current success or future prospects."  *Ulbricht*, 2020 WL 5517313, at *8; *see also Menaldi* v. *Och-Ziff Cap. Mgmt. Grp.*, 164 F. Supp. 3d 568, 582 (S.D.N.Y. 2016) (no "duty to disclose" because challenged "statements do not address the sources of Och-Ziff's success").

[9]      Plaintiff argues that he can borrow "allegations [i]n complaints from other proceedings" (Opp. at 8-9), but does not cite a single case that permits reliance on *dismissed* allegations from another lawsuit. *See*, *e.g.*, *In re Mylan*, 379 F. Supp. 3d 198, 215 (S.D.N.Y. 2019) (permitting plaintiffs "to borrow allegations" from "a *credible* complaint based on facts obtained after an investigation" after "verify[ing] the allegations").  "Second Circuit case law is clear that paragraphs in a complaint" cannot be "based on,

Plaintiff concedes that FCA US terminated Messrs. Iacobelli and Durden "*before the 2015 CBA negotiations began*" (*id.* at 10), which supports the accuracy of Mr. Marchionne's statement.  Plaintiff also ignores entirely that the UAW membership initially *voted down* the 2015 CBA, which, according to Plaintiff, was supposedly affected by bribery, and the renegotiated CBA was then ratified by 77% of the UAW membership.  (Br. at 7, 16, 20.)  Thus, even accepting Plaintiff's implausible speculation that FCA US separated Messrs. Iacobelli and Durden from the Company for bribery prior to the 2015 CBA negotiations but then nonetheless extracted concessions during the initial round of CBA negotiations as part of the bribery scheme, Plaintiff still has pled no facts showing that the final, renegotiated 2015 CBA was affected by the claimed bribery.  *Cf. In re Cyan*, 2017 WL 1956955, at *11, *17 (Del. Ch. May 11, 2017) (dismissing fiduciary duty claims based on the "cleansing effect flowing from" majority shareholder vote).

<h3 style="text-align:center">C.    Plaintiff Mischaracterizes FCA's Opinion that FCA US "Was a Victim."</h3>

Plaintiff says that "a reasonable investor *would have* understood" statements that FCA US "was a victim" to refer *exclusively* "to the bribery scheme." (Opp. at 11-12.)  But that speculation ignores what FCA and FCA US actually stated.  They stated that FCA US was a "victim[] of malfeasance" by "Mr. Iacobelli and Mr. Durden" (Ex. K), who "stole training funds" for "their personal enrichment" (Exs. L & M).  Plaintiff does not dispute that FCA US was a victim of this misconduct, and so FCA's and FCA US's statements were not misleading.  Further, Plaintiff acknowledges that investors consider the "context and manner of presentation" and that "the NTC scandal was already public" (Opp. at 11-12), including public allegations that "[t]he purpose of the bribes was to obtain benefits [and] concessions . . . for FCA in . . . collective bargaining agreements between FCA and the UAW" (Compl. ¶ 10).  Thus, even if an investor *also*

---

or rely on, other actions that have been dismissed." *RSM Prod. Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

"understood Defendants' statements as referring to the [alleged] bribery scheme," those statements could not have been misleading when read in the context of the public "filings and various newspaper articles."  (Opp. at 12 & n.10.)

Plaintiff also mischaracterizes FCA's February 2018 opinion (Opp. at 11-13) that it "believe[d] that FCA US was a victim" (Ex. G at 34) by ignoring the *immediately preceding sentence*, which disclosed that "two former FCA US employees" were charged with bribing "UAW employees *while acting in the interests of FCA US*" (Ex. G at 34).  As a result, no reasonable investor could have read FCA's opinion to refer to the alleged bribery.[10]

## III.    THE OPPOSITION EFFECTIVELY ADMITS THAT PLAINTIFF HAS FAILED TO PLEAD LOSS CAUSATION.

The Opposition concedes (at 22-25) that Plaintiff is relying only on the filing of GM's complaint to plead loss causation, but "complaints in other actions that have been dismissed" cannot support loss causation (Br. at 5, 24 (collecting cases)).  Plaintiff does not identify a single case holding that loss causation can be pled based on dismissed allegations from another suit.[11]

Plaintiff concedes that only "*new* information can be a corrective disclosure" and that a "materialization-of-the-risk theory of loss causation" also requires that "the risk [be] *concealed*" from the public.  (Opp. at 22, 24.)  Plaintiff attempts to manufacture some "new" information from GM's lawsuit by claiming that it (i) "revealed previously unreported facts showing that FCA obtained concessions from the UAW" during CBA negotiations, and

---

[10]    Plaintiff "makes no attempt to respond to Defendants' argument[s]" regarding FCA's Sarbanes-Oxley certifications, and has thus "abandon[ed] this claim." *Sachsenberg* v. *IRSA Inversiones*, 339 F. Supp. 3d 169, 181 (S.D.N.Y. 2018).

[11]    Plaintiff's citation to a single, out-of-circuit case (Opp. at 22-23 (citing *In re BofI*, 977 F.3d 781 (9th Cir. 2020))) is not to the contrary.  While non-dismissed "allegations in a lawsuit, made by a person with firsthand knowledge," can potentially "serve as a corrective disclosure," here Plaintiff relies on dismissed allegations by a competitor "without firsthand knowledge" based on already public information. *Khoja* v. *Orexigent Therapeutics, Inc.*, 2020 WL 6395629, at *14 & n.9 (S.D. Cal. Nov. 2, 2020) (distinguishing *In re BofI*; dismissing securities action).

Case 1:19-cv-06770-EK-MMH   Document 36   Filed 12/14/20   Page 14 of 15 PageID #: 1812

(ii) "revealed to the market that FCA's bribery scheme was sanctioned by Marchionne." (*Id*. at 23.) In fact, as early as January 26, 2018—over *a year and a half before* GM filed suit—a publicly filed lawsuit, which was widely covered by the press, alleged that "[t]he prohibited payments *did impermissibly influence the collective bargaining process* by allowing FCA to obtain company-friendly concessions from the UAW during the collective bargaining process." (App'x C.) This is just one example.[12] Further, "Plaintiff's allegations that Marchionne participated in the bribery scheme" are based on an August 16, "2018 press report" (Opp. at 17 n.17; Ex. R), which predated GM's lawsuit by *over a year*. Courts in this Circuit routinely dismiss securities actions that "fail[] adequately to plead loss causation, a *sine qua non* of a claim for securities fraud." *GE Inv'rs* v. *Gen. Elec. Co.*, 447 F. App'x 229, 232 & n.2 (2d Cir. 2011); *see also*, *e.g.*, *Cent. States* v. *FHLMC*, 543 F. App'x 72, 75, 77 (2d Cir. 2013); *Zheng* v. *Pingtan Marine Enter.*, 379 F. Supp. 3d 164, 177-79 (E.D.N.Y. 2019).[13]

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.[14]

---

[12]    A full list of such public information is set forth in Appendix C hereto. By contrast, in the cases cited by Plaintiff, the alleged corrective disclosures revealed something *new* to the market. *See*, *e.g.*, *Constr. Laborers Pension Tr.* v. *CBS*, 433 F. Supp. 3d 515, 550 (S.D.N.Y. 2020) ("Defendants concede that the fact that harassment allegations had been made against Mr. Moonves was 'new' information.").

[13]    Plaintiff does not point to a single allegation in the Complaint that supports derivative § 20(a) claims against Messrs. Palmer or Manley. (Br. at 25 n.15.) In fact, the case cited by Plaintiff affirmed dismissal of § 20(a) claims. *Suez Equity Invs.* v. *Toronto-Dominion Bank*, 250 F.3d 87, 102 (2d Cir. 2001).

[14]    The Court should reject Plaintiff's perfunctory request in a footnote for leave to amend. (Opp. at 25 n.30.) Plaintiff cites *Loreley Fin. (Jersey) No. 3* v. *Wells Fargo Sec.*, but, in that case, the Second Circuit held that denying leave to amend was improper because the district court considered only "three pages" of letters, and the dismissal motion was "not yet fully briefed." 797 F.3d 160, 190 (2d Cir. 2015). Here, by contrast, Plaintiff had over six months to amend and full briefing, and any amendment would be futile.

-10-

Respectfully submitted,


   */s/ William B. Monahan*
William B. Monahan
Thomas C. White
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Defendants*


December 14, 2020