# Exhibit 113

Case 1:19-cv-06770-EK-MMH   Document 37-2   Filed 12/14/20   Page 2 of 20 PageID #:
1823
Case 2:18-cv-10319-GAD-DRG   ECF No. 1-2 filed 01/26/18   PageID.2   Page 1 of 19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BEVERLY L. SWANIGAN,
BRIAN LEE KELLER, and
SHERI ANOLICK, individually
and on behalf of others similarly situated,

                Plaintiffs,

vs.

FCA US, LLC, a foreign limited
liability company,

and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA ("UAW"),
jointly and severally,

                Defendants.

Case No.
Hon.
Magistrate

_____/

  Raymond J. Sterling (P34456)
  James C. Baker (P62668)
  Brian J. Farrar (P79404)
  Attorneys for Plaintiffs
  STERLING ATTORNEYS AT LAW, P.C.
  33 Bloomfield Hills Pkwy., Ste. 250
  Bloomfield Hills, MI 48304
  (248) 644-1500
  rsterling@sterlingattorneys.com
  jbaker@sterlingattorneys.com
  bfarrar@sterlingattorneys.com

_____/

# CLASS ACTION COMPLAINT
# AND DEMAND FOR JURY TRIAL

# CLASS ACTION COMPLAINT
# AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      Plaintiffs bring this hybrid § 301 claim against FCA US, LLC ("FCA") and/or its predecessors and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").

2.      FCA and the UAW engaged in collusion when FCA bribed the UAW to obtain company-friendly positions at the bargaining table and elsewhere; bribes which the UAW accepted, to the detriment of plaintiffs and the proposed class.

3.      Plaintiffs are employees of Defendant FCA US, LLC ("FCA") and/or its predecessors and are dues-paying members of defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW" or the "Union").

4.      Plaintiffs, individually and on behalf of those similarly situated, bring this action against FCA for breaches of collectively bargained agreements pursuant to the Labor Management Relations Act, 29 USC 185 ("LMRA") resulting from the illegal and overt acts of FCA by itself and by its designated agent(s) in violation of 29 USC 186.

5.      Plaintiffs, individually and on behalf of those similarly situated, bring this action against their labor union, the UAW, pursuant to Section 301 of

2

Case 2:18-cv-10319-GAD-DRG ECF No. 1-2 filed 01/26/18 PageID.93 Page 5 of 15

the LMRA (codified at 29 USC 185) for violations and breaches of its duty of fair representation by accepting money, gifts, bribes, and other prohibited payments to bargain away plaintiffs' rights, and the rights of other similarly situated individuals, and to engage in other improper acts, including the improper use of Union dues for purposes other than the purposes intended.

## THE PLAINTIFFS

6. Plaintiff Beverly L. Swanigan, an individual residing in Clinton Township, Macomb County, Michigan, is a citizen and resident of Michigan.

7. Plaintiff Brian Lee Keller, an individual residing in Mount Clemens, Macomb County, Michigan, is a citizen and resident of Michigan.

8. Plaintiff Sheri Anolick, an individual residing in Garden City, Wayne County, Michigan, is a citizen and resident of Michigan.

9. The potential class members who are similarly situated to plaintiffs include all dues paying FCA employees who were dues paying UAW members impacted by the illegal, improper, and collusive conduct of FCA and the UAW in violation of the LMRA.

## THE DEFENDANTS

10. Defendant FCA is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business in Auburn Hills, Oakland County, Michigan.

3

11.     Defendant UAW is a labor organization as the term is defined by the NLRA, 29 USC 152(5), and plaintiffs' exclusive bargaining representative under the NLRA, 29 USC 159(a).

## CLASS ALLEGATIONS

12.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as follows: all past and current employees of defendant FCA who were dues paying members of the UAW impacted by the illegal, improper, and collusive conduct of FCA and the UAW in violation of the LMRA.

13.     The members of the class are so numerous that joinder is impractical, if not impossible.

14.     The members of the class can be identified easily through a review of the business records of FCA and the UAW.

15.     There are common questions of fact and law affecting all class members that arise as a result of the allegations in this complaint.

16.     The plaintiffs' claims are typical of all members of the class as they were members of the UAW and paid dues for the purpose of having the UAW negotiate with FCA in good faith and on their behalf, they have been adversely impacted by the actions of FCA and the UAW arising from the illegal and collusive conduct, and have been adversely impacted by the collective

bargaining agreements negotiated in violation of the duties of FCA and the UAW as prescribed by the LMRA.

17.     Plaintiffs will fairly and adequately protect the interests of the proposed class as they are injured employees of FCA and injured members of the UAW.

18.     A class action is a superior method of resolution to the other available methods for a fair, efficient, and just resolution of this controversy.

19.     The expense and burden of individual litigation are impediments to class members' seeking relief for the wrongful conduct alleged.

20.     This action is maintainable under Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of fact and law predominate over questions affecting only individual class members (individual questions focus almost exclusively on the amount of damages owed in the form of dues paid by the class members, and other compensation, including compensatory damages, punitive damages, and interest).

21.     The amount in controversy with respect to each individual member of the class is relatively modest when compared to the costly prosecution of separate actions.

22.     Plaintiffs have retained the undersigned counsel for these purposes, who are experienced in employment and class action litigation.

Case 2:18-cv-10319-GAD-DRG ECF No. 1 filed 01/26/18 PageID.6 Page 6 of 19

## JURISDICTION

23. This action arises from plaintiffs' employment with FCA, and membership with the UAW.

24. Although employment numbers varied slightly over time, FCA employs, and the UAW represents, tens of thousands of union workers.

25. This Court has personal jurisdiction over defendants because the claims arise from the transaction of business, the negotiation of collectively bargained agreements, and other conduct between the defendants, all of which occurred in this State.

26. This Court has subject matter jurisdiction pursuant to: 28 USC 1331 because the claims arise under the laws of the United States; 28 USC 1337(a) because the claims arise under an Act of Congress regulating commerce; and 29 USC 185 because the claims concern the violation of contracts and/or contract negotiations between an employer and labor organization.

27. To the extent the claims allege violations of state law, this Court has supplemental jurisdiction over state law claims pursuant to 28 USC 1367, because those claims are so related to the claims arising under federal law that they form part of the same case or controversy.

## VENUE

28. Venue is proper pursuant to 28 USC 1391 because both FCA and the UAW have principal places of business in this judicial district and all of the

events, omissions, or occurrences giving rise to the lawsuit took place in this district.

**THE COLLECTIVE BARGAINING PROCESS**

29. In 2009, Chrysler (the predecessor to FCA), emerged from bankruptcy protection.

30. Upon emerging from bankruptcy, the UAW pension fund, Fiat S.p.A. (an Italian automaker), and the United States and Canadian governments became the principal owners.

31. Since 2009, Fiat has gradually acquired the other parties' shares and the Chrysler brand is now a wholly-owned subsidiary of defendant FCA US, LLC.

32. The UAW is one of the largest labor organizations in the United States and has historically represented Chrysler and FCA hourly workers.

33. The UAW is a hierarchical organization governed by the Constitution of the International UAW.

34. In the United States, collective bargaining agreements between the UAW and the "Big 3" automobile manufacturers (General Motors, Ford, and Chrysler/FCA) are negotiated approximately every four years.[1]

---

[1] Since emergence from bankruptcy, Chrysler bargained with the UAW in 2009, then again in 2011, and most recently in 2015.

35.     Negotiations of the most recent master collective bargaining agreement between FCA and the UAW began in or around June 2015, with the final agreement completed sometime later in 2015.

36.     The International UAW and FCA have also, from time to time, negotiated other agreements, including pension and bonus agreements, as well as an agreement negotiated and completed in 2014 whereby the International UAW purchased the equity held by the UAW Retirees Medical Benefits Trust in Chrysler Group LLC (subsequently FCA) for billions of dollars.

37.     The collective bargaining agreements described in the preceding paragraphs contemplate additional agreements between UAW Local Unions and FCA management concerning matters specific to those locals, so long as those agreements are consistent with the master collective bargaining agreements bargained for between the International Union and FCA.

38.     The UAW's membership, of which plaintiffs and the class are members, pay periodic dues, the substantial majority of which are designated to be used in the bargaining process.

39.     FCA designates a number of its employees, including officers, directors, and senior executives, to represent FCA in the master collective bargaining discussions; these designees are the agents of FCA empowered and authorized to negotiate on behalf of FCA.

8

40.     Between 2009 and approximately June 2015, FCA designated Alphons Iacobelli ("Iacobelli"), its Vice President of Labor Relations, to be its lead representative for managing FCA's contractual relationship with the UAW.

41.     The UAW similarly designates a number of its employees, including officers, directors, and senior executives, to represent the UAW and its membership in the master collective bargaining process; these designees are the agents of the Union authorized to negotiate on behalf of UAW and its membership.

42.     Between 2009 and early 2015, the UAW designated its officer General Holiefield ("Holiefield") to be its lead representative for managing UAW's contractual relationship with FCA.

43.     From 2012 through the 2015 collective bargaining process, one of the UAW's designees, who was senior in the negotiating process and relationship with FCA, was Virdell King ("King").

## THE COLLUSION BETWEEN FCA AND THE UAW

44.     Based on the sworn statement of FCA's Vice President Alphons Iacobelli, "Between in or before January 2009 and continuing through or after June 2015, [I] knowingly and voluntarily joined a conspiracy in which FCA and FCA executives and FCA employees agree to pay and deliver, and willfully paid and delivered, money and things of value to officers and employees of the UAW," including Holiefield and King. January 15, 2018 Rule 11 Plea

9

Case 2:18-cv-10319-GAD-DRG ECF No: 1 filed 01/26/18 PageID.10 Page 10 of 19

Agreement of Alphons Iacobelli, Eastern District of Michigan Case No. 2:17-cr-20406.

45. Iacobelli admitted to performing these prohibited acts with "FCA and other co-conspirators" while "acting in the interest of employer FCA."

46. Iacobelli also admitted that "Over the course of the conspiracy, [Iacobelli], FCA" and other yet-to-be-named FCA director(s), senior manager(s), executives, and employees, "unlawfully paid and delivered more than $1.5 million in prohibited payments and things of value directly and indirectly to" Holiefield, King, and other yet-to-be-named UAW officials.

47. Over the course of the conspiracy, FCA transferred prohibited payments and things of value to UAW officers and employees, per Iacobelli, "in an effort to obtain benefits, concessions, and advantages for FCA in the negotiation, implementation, and administration of collective bargaining agreements between FCA and the UAW."

48. In or before December 2013, Iacobelli provided Holiefield with a script in advance of a meeting between Holiefield and other members of the International UAW's executive board, during which the UAW was considering expending billions of dollars to purchase the equity interest held by the UAW Retiree Medical Benefits Trust in Chrysler Group, LLC.

49.    The purchase was completed in January 2014, using in substantial part the dues paid by UAW members to finance the billions paid for the equity interest in FCA.

50.    The illegal and collusive relationship between Iacobelli and Holiefield led to the script that Holiefield relied upon to encourage the UAW's executive board to spend billions of dollars on the purchase of the equity interest in FCA.

51.    The conspiracy of collusion makes it reasonable to conclude that the purchase price arrived at between FCA and the UAW was not negotiated at arm's length, was not a legitimate bargained-for exchange, and was overvalued to the benefit of FCA and to the detriment of the UAW's membership.

52.    The result was that in all likelihood, the UAW's membership paid tens, if not hundreds of millions of dollars in Union dues for a transaction tainted by the conspiracy between FCA and the UAW.

53.    Additionally, during the ongoing conspiracy, the UAW's dues-paying membership paid a substantial percentage of periodic dues to the UAW so that the Union would engage in good faith and honest negotiations with FCA.

54.    As a result of the conspiracy, the Union acted on improper motivations or in a manner which is contrary to its arbitrary, perfunctory, or inexcusably neglectful.

11

Case 2:18-cv-10319-GAD-DRG ECF No: 1 filed 01/26/18 PageID.12 Page 12 of 19

55. From at least 2012 through 2016, per the sworn statement of Union officer Virdell King, after the 2015 master collective bargaining agreement was finalized between FCA and the UAW, King "knowingly joined a conspiracy where officers and employees of the UAW would willfully request, receive, and accept – and agree to receive and accept – money and things of value" from persons acting in the interest of FCA. During that time, FCA was the employer of tens of thousands of employees represented by the UAW." August 17, 2017 Rule 11 Plea Agreement of Virdell King; Eastern District of Michigan Case No. 2:17-cr-20406.

56. Per King, she "was a UAW employee who served as a senior official in the UAW Chrysler Department from 2008 until … February 2016. As a senior UAW official … King was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW" who were dues paying members of the UAW, whose dues in substantial part were used in the bargaining process.

57. According to King, "In 2011 and 2015, King served as a member of the UAW national negotiating committee responsible for the collective bargaining agreements between the UAW and FCA."

58. Holiefield, King, and other yet-to-be-named UAW senior officials participated in the conspiracy that included FCA making payments that were

Case 1:19-cv-06770-EK-MMH Document 37-2 Filed 12/14/20 Page 14 of 20 PageID
#: 1835
Case 2:18-cv-10319-GAD-DRG ECF No. 1 filed 01/26/18 PageID.13 Page 13 of 19

intended to obtain benefits, concessions, and advantages for FCA in the negotiation, implementation, and administration of collective bargaining agreements between FCA and the UAW.

59.    The requesting, receiving, accepting, and agreeing to receive and accept money, gifts, things of value, and prohibited payments caused FCA to obtain benefits, concessions, and advantages for FCA in the negotiation, implementation, and administration of collective bargaining agreements between FCA and the UAW as well as to cause UAW to pay a substantially higher price for the purchase of an equity interest in Chrysler Group, LLC (subsequently FCA).

60.    Iacobelli and King have both pled guilty to conspiracy to violate the LMRA, 29 USC 186; Holiefield is deceased.

61.    Other FCA and UAW officials engaged in the ongoing conspiracy have yet to be named through supplemental criminal indictments, despite having been identified by numeric monikers in the existing indictments and Iacobelli's and King's Rule 11 Plea Agreements.

62.    The conspiracy to violate the LMRA by both FCA and the UAW has resulted in tens, if not hundreds of millions of dollars in Union dues not being used for the intended purpose: bargaining for the benefit of the Union members.

63.     All collective bargaining agreements, with letters, other agreements, and supporting documents are in the possession of FCA and the UAW.

64.     Plaintiffs were unable to reasonably discover FCA's violation of the LMRA and the UAW's breach of its duty of fair representation until the public issuance of federal indictments against Iacobelli on July 26, 2017 and King on August 8, 2017.

65.     Plaintiffs had no way of knowing about the details or extent of the conspiracy, including the levels of involvement of FCA, the UAW, and its respective officers, directors, managers, senior executives, executives, and employees, until the public filing of King's August 17, 2017 Rule 11 Plea Agreement and Iacobelli's January 15, 2018 Rule 11 Plea Agreement.

**COUNT I**
**VIOLATION OF THE**
**LABOR MANAGEMENT RELATIONS ACT**

66.     Plaintiffs incorporate the preceding paragraphs by reference.

67.     FCA unlawfully paid bribes to executives of the UAW to take FCA-friendly positions during collecting bargaining negotiations, including those in 2011 and 2015.

68.     FCA's unlawful conduct violated the LMRA in that two or more persons conspired in violation of 29 USC 186.

14

Case 2:18-cv-10319-GAD-DRG ECF No. 1 filed 01/26/18 PageID.15 Page 15 of 19

69. FCA, through the acts of its designated agents, who included officers, directors, senior managers, and executives, knowingly and voluntarily joined the conspiracy.

70. Members of the conspiracy made prohibited payments with the intention of impermissibly influencing the collective bargaining process.

71. The prohibited payments did impermissibly influence the collective bargaining process by allowing FCA to obtain company-friendly concessions from the UAW during the collective bargaining process.

72. The prohibited payments caused at least one designated agent of the UAW, a co-conspirator with FCA, to direct and/or impermissibly influence the decision of the UAW Executive Board to expend billions of dollars in the non-arm's length purchase of an equity interest in FCA.

73. As a result of FCA's violation of the LMRA, plaintiffs and other class members have been harmed in that potentially hundreds of millions of dollars of their dues paid to the UAW for the purposes of good-faith negotiations have instead been spent on tainted and/or illegal collective bargaining negotiations.

74. As a result of FCA's violation of the LMRA, plaintiffs' and other class members' dues have not been spent for the purposes of good-faith negotiations but instead on a multi-billion dollars non-arm's length, overvalued purchase of equity in FCA.

Case 2:18-cv-10319-GAD-DRG ECF No. 1 filed 01/26/18 PageID.16 Page 16 of 19

## COUNT II
## BREACH OF THE DUTY OF
## FAIR REPRESENTATION UNDER THE LMRA

75. Plaintiffs incorporate the preceding paragraphs by reference.

76. The UAW engaged in willfully requesting, receiving, accepting, and agreeing to receive and accept, money and things of value from persons acting in the interest of FCA.

77. The UAW gave authority to its designated agents, including Holiefield and King, among others, to represent its members who were employees of FCA.

78. The UAW had an obligation to serve the interests of all members without favoritism to the company, and/or without favoritism or hostility to any members, to exercise its representational discretion with complete good faith and honesty, and to avoid arbitrary conduct.

79. The UAW breached its duty to its membership, by acting based upon the improper motivation of FCA's bribery, and the UAW's requesting and receiving prohibited payments and things of value.

80. The UAW's representation of its membership was arbitrary, perfunctory, or inexcusably neglectful.

81. By its involvement in the FCA conspiracy, the UAW, through its designated agents, lacked a rational basis for decision-making within the

bargaining process, and engaged in egregious unfairness or reckless disregard for its members' rights.

82. By its involvement in the FCA/UAW conspiracy, the UAW, through its designated agents, lacked a rational basis for decision-making when it chose to expend millions of dollars of its members' dues in the tainted bargaining process.

83. By its involvement in the conspiracy, the UAW, through its designated agents, lacked a rational basis for decision making and acted egregiously neglectful when it expended billions of dollars of its membership's dues on a non-arm's length purchase of an equity interest in FCA.

84. By the multiple UAW actors in the FCA conspiracy, the UAW failed in its duty to investigate the actions of its designated agents, to the detriment of its members' rights, and to the expense of its membership through hundreds of millions of dollars of dues having been wasted on tainted bargaining.

85. As a result of the UAW's breach of its duty of fair representation, plaintiffs and other class members have been harmed in that hundreds of millions of dollars of their dues paid to the UAW, spent for the purposes of good-faith negotiations, have been spent on a multi-billion dollars non-arm's length, overvalued purchase of an equity interest in FCA.

17

WHEREFORE, plaintiffs, on behalf of themselves and others similarly situated, respectfully request that a money judgment be entered against defendants, jointly and severally, or by statutory apportionment, for an amount to be determined by a jury to compensate them for their damages and specifically request the following:

A.   That this Court, as soon as practicable, certify the Class and appoint the undersigned to represent it;

B.   That this Court award damages in an amount to be determined by a jury, including reimbursement of the value of all dues paid during the conspiracy period by the UAW membership who were or are FCA employees;

C.   That this Court award damages in an amount to be determined by a jury to compensate plaintiffs and the Class for the value of those dues paid which were spent on the UAW's non-arm's length, overvalued purchase of an equity interest in FCA;

D.   That this Court exercise its legal and equitable power by ordering FCA to repay plaintiffs and the class the excess value the UAW paid for the equity interest;

E.   That this Court grant any injunctive relief it determines is necessary to protect the claims of the plaintiffs and the class;

18

Case 2:18-cv-10319-GAD-DRG   ECF No: 1   filed 01/26/18   PageID.19   Page 19 of 19

F.    That this Court award plaintiffs and the Class any additional damages it determines are reasonable and appropriate as compensatory damages, punitive damages, and interest;

G.    That this Court award reasonable attorney fees, costs and expenses, and expert witness fees; and

H.    That this Court award whatever additional monetary relief that may be available in law and equity.

## DEMAND FOR JURY TRIAL

Plaintiffs, by themselves and as representatives of the Class, respectfully demand a trial by jury as to all issues.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ Raymond J. Sterling
       Raymond J. Sterling (P34456)
       James C. Baker (P62668)
       Brian J. Farrar (P79404)
       Attorneys for Plaintiffs
       33 Bloomfield Hills Pkwy., Ste. 250
       Bloomfield Hills, MI 48304
Dated: January 26, 2018    (248) 644-1500

19