# Exhibit 115

2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

2018 WL 4030815
United States District Court, E.D.
Michigan, Southern Division.

Beverly L. SWANIGAN, Brian Lee Keller, and Sheri Anolick, individually and on behalf of other similarly situated, Plaintiffs,
v.
FCA US, LLC, a foreign limited liability company, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, ("UAW"), jointly and severally, Defendants.

Case No.: 18-cv-10319
|
Signed 08/23/2018

**Attorneys and Law Firms**

Brian Farrar, James C. Baker, Raymond J. Sterling, Sterling Attorneys at Law, P.C., Bloomfield Hills, MI, for Plaintiffs.

Brian M. Schwartz, Miller, Canfield, Jeffrey D. Sodko, UAW Legal Dept., William J. Karges, III, International Union, UAW, Detroit, MI, David D. O'Brien, Miller, Canfield, Ann Arbor, MI, Jacob Eden Cohen, Steven L. Holley, Sullivan and Cromwell LLP, New York, NY, Julia Marie Jordan, Sullivan and Cromwell LLP, Abigail V. Carter, Elisabeth Oppenheimer, Bredhoff & Kaiser, PLLC, Washington, DC, Thomas W. Cranmer, Miller Canfield Paddock and Stone PLC, Troy, MI, for Defendants.

**OPINION AND ORDER GRANTING FCA US LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [#27] AND GRANTING UAW INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [#28] AND DISMISSING ACTION**

GERSHWIN A. DRAIN, United States District Judge

**I. INTRODUCTION**

*1 Plaintiffs Beverly Swanigan, Brian Lee Keller, and Sheri Anolick filed the instant putative class action lawsuit against their employer, Defendant FCA US LLC ("FCA"),

and their union, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") on January 26, 2018. Plaintiffs filed their Second Amended Class Action Complaint on May 22, 2018.

Presently before the Court are the Defendants' Motions to Dismiss the Second Amended Class Action Complaint, both filed on June 5, 2018. Plaintiffs filed a Consolidated Response in Opposition on July 10, 2018, and the Defendants filed their Reply Briefs on July 31, 2018. A hearing was held on August 20, 2018. For the reasons that follow, the Court will grant Defendant FCA's Motion to Dismiss and will also grant Defendant UAW's Motion to Dismiss.

**II. FACTUAL BACKGROUND**

Plaintiffs and the potential class members are all past or current employees of FCA, as well as past or current members of the UAW, a labor union that represents employees of several automakers. Plaintiffs characterize the instant action as a "hybrid" claim under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Plaintiffs allege that after Chrysler Corporation emerged from bankruptcy in 2009, the UAW Benefits Trust ("UAW Trust") owned 41% of Chrysler. Italian automaker, Fiat S.p.A. ("Fiat"), which is now Defendant FCA, as well as the United States and Canadian governments owned the remaining shares. In January of 2014, FCA purchased the 41.5 % interest that the UAW Trust held in Chrysler for approximately $4.4 billion dollars.

As members of the UAW, Plaintiffs pay periodic dues, the majority of which fund the collective bargaining and other negotiating processes between FCA and the UAW. Between 2009 and June of 2015, FCA designated Alphons Iacobelli, its Vice President of Labor Relations, to be its lead representative for managing the FCA's bargaining relationship with the UAW. Between 2009 and early 2015, the UAW designated General Holiefield to be its lead representative for managing UAW's bargaining relationship with FCA. The UAW also designated Virdell King as a senior representative alongside Holiefield in the negotiation process with FCA.

On July 26, 2017, federal indictments against Iacobelli and King were unsealed charging both with conspiracy to violate the LMRA, 29 U.S.C. § 186. On January 15, 2018, Iacobelli entered a Rule 11 Plea Agreement wherein he admitted to knowingly and voluntarily joining a conspiracy in which FCA and its executives agreed to pay money

2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

—more than 1.5 million—and things of value to officers and employees of the UAW, including Holiefield and King. Iacobelli's Plea Agreement further states that these payments were provided to UAW officers with the intent to obtain benefits, concessions and advantages for FCA in the negotiation and implementation of collective bargaining agreements. Plaintiffs assert that "discovery will likely reveal that the collusion impacted the sale of the equity interest in old Chrysler." Sec. Am. Compl. at ¶ 69. In support of this allegation, Plaintiffs rely on a December 2013 email from Iacobelli to another FCA executive confirming that Holiefield "had been 'scripted' in advance of the scheduled meeting between Holiefield and other members of the UAW's International Executive Board." *Id.* at ¶ 70. During this time, the UAW International Executive Board was considering the terms of a multi-billion dollar purchase for the equity held by the UAW Trust.

 **\*2**  King also entered a Rule 11 Plea Agreement on August 17, 2017, wherein he admitted that as a senior UAW official he was responsible for negotiating and administering collective bargaining agreements on behalf of FCA employees. Plaintiffs also allege that discovery will likely reveal that their UAW membership dues were used to pay for non CBA matters, including costs and expenses associated with the valuation, purchase and sale of the UAW's Trust interest in Chrysler. During Iacobelli's plea, he testified that the collusion tainted the negotiations between FCA and the UAW Trust, which led to a non-arm's length transaction. *Id.* at ¶ 88.

Plaintiffs were unaware of the collusion until the indictments were unsealed and became available to the public in July of 2017. Plaintiffs filed this action roughly six months later and prior to exhausting any remedies pursuant to the UAW constitution. Plaintiffs assert that they had no ability or duty to exhaust their contractual remedies under the operative collective bargaining agreement or internal union procedures because of the prolonged and expansive collusive conduct of UAW and FCA officials, thus rendering exhaustion of internal remedies futile.

 **III. LAW & ANALYSIS**

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957) ). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555, 127 S.Ct. 1955).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining on whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

Case 1:19-cv-06770-EK-MMH    Document 37-4    Filed 12/14/20    Page 4 of 10 PageID #: 1848

Swahigan v. FCA US, LLC, Not Reported in Fed. Supp. (2018)
2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

## B. FCA's Motion to Dismiss

**\*3**  In Defendant FCA's Motion to Dismiss, it raises several arguments in support of dismissal. First, FCA argues that Plaintiffs have failed to allege an actionable violation of the LMRA because: (1) there is no viable Section 301 claim based on the alleged dissatisfaction with the price at which the UAW Trust sold certain securities to FCA because the UAW Trust is not a labor organization and has nothing to do with collective bargaining or any terms or conditions of Plaintiffs' employment, (2) Plaintiffs fail to allege a breach of any collective bargaining agreement and lastly, (3) Plaintiffs cannot transform a Section 302 claim—improper payoffs to union officials—into a Section 301 claim because Section 302 does not create a private right of action. FCA also maintains that dismissal of this action is warranted because Plaintiffs fail to adequately allege that they are excused from exhausting their administrative remedies. The Court will address each argument in turn.

### 1. Violation of the LMRA

Employee actions under § 301 are characterized as "hybrid" claims and to recover employee-union members "must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Garrish v. Int'l Union*, 417 F.3d 590, 594 (6th Cir. 2005). "If both prongs are not satisfied, Plaintiffs cannot succeed against any Defendant." *Id.* Section 301 actions authorize federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization[.]" 29 U.S.C. § 185(a).

As an initial matter, FCA first argues that the Purchase Agreement between the UAW Trust and the FCA does not fall within the purview of Section 301 for the following reasons: (1) the UAW Trust is not a labor organization, rather it is an entirely separate entity from the UAW, thus it is not an agreement between an employer and a labor organization, and (2) has nothing to do with collective bargaining.

Plaintiffs fail to address this argument in their Responsive Brief. At the hearing in this matter, Plaintiffs asserted that they had not waived this aspect of their claim. Plaintiffs failure to address FCA's argument in their Responsive brief "constitutes waiver or abandonment[.]" *Beydoun v. Countrywide Home Loans, Inc.*, No. 09-10445, 2009 WL 1803198, *3, 2009 U.S.

Dist. LEXIS 53309 *8 (E.D. Mich. Jun. 23, 2009); *Ortiz v. Gaston Cty. Dyeing Mach. Co.*, 277 F.3d 594, 597 (2d Cir. 2002). It appears to the Court that Plaintiffs failure to respond to FCA's argument may be due to the apparent meritorious argument advanced.

The LMRA defines labor organizations as "any organization ... in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5). The UAW Trust does not fall within this definition because it is "a voluntary employees beneficiary association trust," *Fiat N. Am. LLC v. UAW Retiree Med. Benefits Trust*, C.A.No. 7903 (DFP), 2013 WL 3963684, *2 (Del. Ch. Jul. 30, 2013), and "union benefit trust funds ... are not 'labor organizations' " as a matter of law. *Smith v. Hickey*, 482 F.Supp. 644, 648 (S.D.N.Y. 1979); *see also Tr. of Operating Eng'rs Pension Trust v. Tab Contractors, Inc.*, 224 F.Supp.2d 1272, 1279 (D. Nev. 2002) (holding that union "Trust Funds are not 'labor organizations' " under the LMRA); *Morrissey v. Curran*, 483 F.2d 480, 484 (2d Cir. 1973) (same); *Marine Terminal, Welfare Fund v. Tri-River Docks, Inc.*, No. 94-cv-3461 (GMM), 1992 WL 82389, *5 (N.D. Ill. Apr. 20, 1992). Therefore, Plaintiffs cannot allege that the UAW Trust is a labor organization; rather it is a separate legal entity from the UAW that is an employee benefits trust.

Additionally, the Trust Agreement does not fall within the purview of § 301 because it is not a labor contract, which relates to "hiring and work and pay in [the bargaining] unit." *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 334-35, 64 S.Ct. 576, 88 L.Ed. 762 (1994); *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) ("Wages, hours, working conditions, seniority, and job security" are the typical subjects of labor contracts.) Here, the Purchase Agreement does not deal with the wages, working conditions and employment relationship of FCA's employees, thus it is not a labor contract within the LMRA and there is no available § 301 cause of action for Plaintiffs related to the sale of the Trust's interest in Chrysler.

**\*4**  FCA next argues that dismissal is appropriate because Plaintiffs fail to allege any specific provision of any collective bargaining agreement that was breached by FCA's conduct.[1] In their Responsive Brief, Plaintiffs concede that their Second Amended Class Action Complaint fails to allege a breach of any provision of the operative collective bargaining

Swahigan v. FCA US, LLC, Not Reported in Fed. Supp. (2018)
2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

agreement. *See* Plfs.' Resp. at Pg ID 650 ("[P]laintiffs plead FCA's violation of federal labor law, not the express terms of the CBA.") Plaintiffs maintain that since they have alleged FCA bribed the UAW, an unfair labor practice under the NLRA, they have sufficiently alleged a breach of contract to withstand Rule 12(b)(6) scrutiny. Plaintiffs' argument is without merit.

Relying on *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), Plaintiffs argue that the Supreme Court has held that an employer's unfair labor practice is also a breach of a collective bargaining agreement giving rise to the right to seek redress under the LMRA. Plaintiffs misconstrue the holding in *Smith*. In *Smith*, the plaintiff-petitioner brought suit alleging that his employer breached a collective bargaining contract by discriminating against him based on his membership in a labor organization. *Id.* at 195-96, 83 S.Ct. 267. The trial court dismissed the action concluding that the plaintiff-petitioner's allegations, if true, would make out an unfair labor practice under the National Labor Relations Act, thus the subject matter of the suit was within the sole jurisdiction of the National Labor Relations Board. *Id.* at 196, 83 S.Ct. 267.

The Supreme Court reversed and concluded that the National Labor Relations Board did not have exclusive jurisdiction over an action alleging a breach of contract that would also amount to an unfair labor practice and such a suit does not destroy § 301 jurisdiction in the federal courts. *Id.* at 197, 83 S.Ct. 267. The *Smith* court did not hold that an unfair labor practice can be a breach of a collective bargaining agreement under § 301. To the contrary, the *Smith* action was based on a breach of a collective bargaining agreement. *Id.* at 196, 83 S.Ct. 267.

Moreover, the Court rejects Plaintiffs' assertion that the *Smith* court recognized other cases holding that an employer's violation of federal labor law is sufficient to support breach of a collective bargaining agreement under § 301. In all of those cases, the action alleged a violation of a collective bargaining agreement. *See Atkinson v. Sinclair Rfg Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (alleging breach of a clause prohibiting union members to strike in a collective bargaining agreement); *Local 174, Teamsters Union v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (alleging a breach of clause in collective bargaining agreement); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962)(same).

Plaintiffs' suggestion that the Supreme Court has held that an unfair labor practice is a breach of contract sufficient to state a claim under § 301 is contrary to Supreme Court precedent holding that the National Labor Relations Board has exclusive jurisdiction over unfair labor practice claims. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Martin v. Lake County Sewer Co.*, 269 F.3d 673, 680 (6th Cir. 2001)(dismissing a "claim alleg[ing] bad-faith bargaining" because such a claim is "an unfair labor practice claim over which the NLRB has exclusive jurisdiction.")

Plaintiffs are asking this Court to ignore well settled precedent requiring § 301 Plaintiffs to allege a claim for breach of contract. *See Young v. Int'l Union,* 148 F.Supp.3d 602, 616 (E.D. Mich. 2015), aff'd, 686 Fed.Appx. 304 (2017) (dismissing hybrid Section 301 claim because the plaintiffs failed to "identify specific contract provisions that support their assertions of how Defendants breached the CBA and other agreements."); *see also Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 787 (6th Cir. 2007)(affirming dismissal "because there is a complete absence of factual allegations to support a claim for breach of contract."). Plaintiffs argue that these decisions do not apply here because these cases involved "contract interpretation," rather than claims alleging bribery and collusion. This purported distinction is counterintuitive; this well settled authority required the plaintiffs to plead a breach of contract because § 301 applies to suits that are "filed *because a contract has been violated.*" *Textron v. UAW*, 523 U.S. 653, 657, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998)(emphasis in original). Plaintiffs "cannot avoid having to show breach-of-contract by 'artful[ ] pleading[.]' " *Young*, 686 Fed.Appx. at 312.

**\*5** Lastly, Defendant FCA argues that Plaintiffs have not sufficiently alleged a § 301 claim because they are attempting to bring a disguised § 302 claim for bribery and collusion, which does not provide a private right of action pursuant to Sixth Circuit authority.[2] *See Ohlendorf v. United Food & Comm. Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018); *Garrish v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 417 F.3d 590 (6th Cir. 2005). Defendants are correct.

"Section 302 of the Labor Management Relations Act makes it a crime for an employer to willfully give money to a labor union, 29 U.S.C. § 186(a), and for a labor union to willfully accept money from an employer, *id.* § 186(b). *Ohlendorf*, 883 F.3d at 640. The *Ohlendorf* court rejected the plaintiffs'

2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

argument that Section 302 confers a right for private parties to sue. *Id.* at 639-40. Here, Plaintiffs characterize their claim as a hybrid § 301 claim but their allegations stem from "collusion" between FCA and the UAW whereby the FCA "transferred prohibited payments and things of value to UAW officers ... to obtain company-friendly positions at the bargaining table and elsewhere." Sec. Am. Compl. at §§ 2, 67. However, allegations of "improper payoffs to union officials" "may not be redressed pursuant to § 301." *Garrish*, 417 F.3d at 597-98.

Plaintiffs mistakenly suggest that *Ohlendorf* is inapplicable here because the plaintiffs in that action brought a single count under § 302, whereas here, Plaintiffs have brought their action under § 301. Plaintiffs simply cannot bring a purported hybrid claim under the LMRA which is in reality a disguised claim under § 302. *Ohlendorf*, 883 F.3d at 642 (rejecting contention that § 302 criminal provision provides for a private right of action because "Section 302 is flanked by provisions of the [LMRA] that expressly establish private rights of action" however Section 301's "provision—creating a right of action for violations of [cbas]—does not cover this dispute.... We should respect [Congress's] ability to decide when, and when not, to create private rights of action."); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 311, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010)(holding that "[t]he balance federal statutes strike between employer and union relations in the collective-bargaining arena is carefully calibrated," and thus Section 301 may not be extended beyond its narrow confines as "a grant of jurisdiction only to enforce contracts."). Contrary to Plaintiffs' argument, *Ohlendorf* does not endorse characterizing a Section 302 claim as a hybrid § 301 claim, rather *Ohlendorf* stressed that federal courts must respect Congress's decision about "when, and when not, to create private rights of action." *Ohlendorf*, 883 F.3d at 642.

Plaintiffs also attempt to distinguish *Garrish* by arguing the case was at the summary judgment stage, the decision to dismiss the action was based on the statute of limitations and the court did not specifically cite § 302. None of these purported distinguishing characteristics save Plaintiffs' claim. The *Garrish* court expressly held that, in addition to the failure to bring suit within the statute of limitations, judgment in favor of the employer and union was also appropriate for the additional reason that their "allegations may not be redressed pursuant to § 301—[ ][n]either the prolongation of a strike nor the payoffs constitutes a cause of action in the instant appeal—GMC did not breach the NCBA and the union did not breach its duty of fair representation." *Garrish*, 417 F.3d at 598.

**\*6** Here, Plaintiffs have not alleged a breach of any provision in the operative collective bargaining agreement. Additionally, the UAW Trust is a separate entity that is not a labor organization and its Agreement does not qualify as a labor contract. Lastly, their purported § 301 claim is a disguised § 302 claim, which does not give them a private cause of action. For all of these reasons, Plaintiffs claims for breach of contract against FCA (Count I) and for breach of the duty of fair representation against the UAW (Count II) fail to state a viable cause of action and are dismissed.

**2. Exhaustion of Contractual and Internal Union Remedies**

Even if Plaintiffs sufficiently alleged a § 301 claim, this action must also be dismissed because Plaintiffs failed to adequately allege they are excused from attempting to exhaust both the grievance procedure established by the operative collective bargaining agreement, as well as the internal union remedies established by the UAW Constitution. In their Second Amended Class Action Complaint, Plaintiffs allege that FCA's and the UAW's "prolonged and expansive collusive conduct [renders] exhaustion of internal remedies [ ] futile if not impossible." Sec. Am. Compl. at ¶ 38.

Before aggrieved employees may bring a § 301 action, they must satisfy two separate exhaustion requirements. *Chapman v. United Auto Workers Local 1005*, 670 F.3d 677, 680-82 (6th Cir. 2015). Specifically, they must exhaust (1) "contractual grievance and arbitration procedures set forth in the collective bargaining agreement," and (2) "internal union ... appeal procedure[s] established in the UAW Constitution." *Id.* "Exhaustion of internal union remedies and resort to exclusive contractual remedies are separate prerequisites to an employee suit." *Willits v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir. 1978).

In their Responsive Brief, Plaintiffs assert that their contractual duty to invoke the grievance procedure under the operable collective bargaining agreement is excused because employees are not required to utilize these internal union procedures when the union has breached its duty of fair representation. Plaintiffs cite to *Jackson v. Local Union 992*, 991 F.Supp.2d 71, 81 (D.D.C. 2014), but mainly rely on *Hines v. Anchor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) for this proposition. Both cases do not demonstrate that Plaintiffs are excused from invoking

2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

the grievance process set forth in the collective bargaining agreement.

In *Hines*, employee-truck drivers were terminated from their employment based on charges of dishonesty. *Id.* at 556, 96 S.Ct. 1048. The employer's practice was to reimburse the drivers for lodging expenses while the drivers were on the road. *Id.* However, the employer had obtained evidence that the drivers sought reimbursement in excess of the actual motel charges. *Id.* Initially the union represented the drivers during the arbitration process set forth in the collective bargaining agreement. *Id.* Even though the union told the drivers there was no need to hire their own attorney and "there was nothing to worry about," the union did not investigate the motel and presented no evidence at the arbitration hearing other than the drivers' denials of the charges. *Id.* at 557-58, 96 S.Ct. 1048. The arbitration concluded in favor of the employer. *Id.* at 558, 96 S.Ct. 1048. After the drivers hired their own attorney, evidence came to light that the motel clerk listed the charges to the drivers in the motel's documents for less than what was actually charged to the drivers and pocketed the difference. *Id.*

The drivers filed suit alleging a breach of the collective bargaining agreement which required discharge for "just cause." *Id.* at 556, 96 S.Ct. 1048. They also sued the union asserting that the falsity of the charges would have been discovered had the union conducted the most minimal investigation, yet the union "made no effort to ascertain the truth of the charges ... and [therefore] had violated its duty of fair representation...." *Id.*

 **\*7** The Supreme Court ultimately concluded that employees seeking remedy pursuant to § 301 were not foreclosed from doing so when "the contractual processes have been seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct." *Id.* at 571, 96 S.Ct. 1048. Relying on its prior precedent in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1960), and *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held that an employee may be excused from using collective bargaining grievance procedures under circumstances where "the union subverts the arbitration process by refusing to proceed ... or follows the arbitration to the end, but in so doing subverts the arbitration process by failing to fairly represent the employee." *Id.* at 572, 96 S.Ct. 1048; *see also Jackson*, 991 F.Supp.2d at 81(excusing exhaustion of grievance procedure where

the complaint describes the difficulties the plaintiffs had in getting their union to respond to their grievances).

Thus, contrary to Plaintiffs' argument, *Hines* does not permit an employee to forego altogether the grievance process set forth in the collective bargaining agreement. Exhaustion is only excused when the union engages in unfair representation *during the grievance process*, and not, for any and all purported breaches of the duty of fair representation in the employment context. Rather, it must be a breach in the context of the actual grievance process. Here, Plaintiffs admit they have not attempted to invoke the collective bargaining agreement's grievance procedure. *Hines* does not permit them to do this prior to filing their § 301 suit.

Because Plaintiffs have not attempted to exhaust the grievance procedures outlined in the collective bargaining agreement, their § 301 claim must be dismissed. However, FCA also maintains that Plaintiffs have likewise failed to exhaust their internal union procedures as required by the UAW Constitution. Thus, this circumstance provides yet another reason for dismissal of the instant action. Plaintiffs counter that they are excused from exhausting the internal union procedures set forth in the UAW's Constitution because the "UAW's violations of its duty of fair representation have created hostility" which prevents these procedures from "adequately address[ing] the class's grievances ... [and cannot] provide the class with the full relief it seeks." Sec. Am. Compl. at ¶¶ 39-41.

Before bringing suit under § 301, plaintiffs must "show that internal union remedies were exhausted, or were futile, before allowing them to litigate a claim alleging a union's breach of the duty of fair representation." *Chapman,* 670 F.3d at 683. "The plaintiff bears the burden of showing that exhaustion should be excused." *Pearson v. United Auto Workers Int'l Union*, 694 Fed.Appx. 401, 403 (6th Cir. Aug. 16, 2017).[3]

Courts have the discretion to decide whether to excuse exhaustion of internal union procedures if any of the following three factors exist: (1) "the Union is so hostile to them that they have no hope of obtaining a fair hearing," (2) "internal union appeals procedures are inadequate to provide relief or reactivate their grievances," or (3) "exhaustion would unreasonably delay their chances to obtain a judicial hearing on the merits of their claims." *Spicer v. Ford Motor Co.*, 491 Fed.Appx. 543, 545 (6th Cir. Jul. 30, 2012).

Case 1:19-cv-06770-EK-MMH    Document 37-4    Filed 12/14/20    Page 8 of 10 PageID #: 1852

Swanigan v. FCA US, LLC, Not Reported in Fed. Supp. (2018)
2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

In their Second Amended Class Action Complaint Plaintiffs speculate that due to the expansive nature of the collusion; the UAW is hostile to them. Plaintiffs do not explain in their pleading why they cannot receive a fair hearing in 2017 or 2018 when the conspirators are no longer in a position to thwart the internal union procedures. Additionally, Plaintiffs' assertion that the union would be hostile towards them ignores the fact that the UAW Constitution permits them to seek redress before the Public Review Board, which the Sixth Circuit has previously held consists of an "impartial" and "independent group of academic and social agency persons ... of good public repute and ... with no UAW affiliation." *Wagner v. General Dynamics*, 905 F.2d 126, 128 (1990).

 **\*8** Plaintiffs' contention that the internal union procedures will not provide the full relief they seek is disingenuous. The UAW's Public Review Board "has the authority to require the Union to pay money damages." *Chapman*, 670 F.3d at 685; *see also Washington v. Ford Motor Co.*, 35 Fed.Appx. 160, 163 (6th Cir. 2002) ("The [UAW's] internal union appeals procedures available to [plaintiff], however, were plainly adequate to award [him] the only relief sought: monetary damages."); *Pearson*, 694 Fed.Appx. at 406 (Because the UAW's "[Convention Appeals Committee] has the authority to order the Union to pay monetary damages to [plaintiff]," plaintiff cannot show that the UAW's internal appeal bodies "would not be able to award the full relief he seeks.").

In support of their claim that they are excused from exhausting their internal union procedures, Plaintiffs assert that courts have "waived the exhaustion requirement in the face of management/union collusion." *See Parker v. Local 413, Intern Broth of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 657 F.2d 269 (6th Cir. 1981). However, Plaintiffs again misstate the holding of *Parker*, which excused exhaustion due to the union's "failure to provide meaningful review after receiving various complaints." *Id.* The *Parker* case demonstrates again that in order for collusive conduct to excuse exhaustion, such conduct must be directed toward, and impact the internal union procedure itself, which Plaintiffs do not, and cannot allege in this matter because they failed to invoke their internal union procedures altogether.

Plaintiffs also rely on *Brown v. Int'l Union, United Auto Aerospace & Agr Implement Workers of Am.*, 512 F.Supp. 1337, 1353 (W.D. Mich. 1981), wherein the district court excused internal union remedy exhaustion in a class action case involving over 1,000 plaintiffs. *Id.* The *Brown* court noted it was unaware of any case "involving a class action of this magnitude and complexity...."). However, the *Brown* court relied on out-of-circuit authority that requires the defendant-union to establish its procedures and remedies are adequate. *Id.* (relying on *Foust v. Int. Broth. Elec. Workers*, 572 F.2d 710 (10th Cir. 1978) ). *Brown* is not controlling upon this Court, and it was decided in 1981, or before the Sixth Circuit decisions in *Chapman* and *Pearson*, which hold that it is the plaintiff's burden to establish the futility of exhaustion. *See Chapman*, 670 F.3d at 683; *Pearson*, 694 Fed.Appx. at 403.

Lastly, Plaintiffs argue, without any substantive allegations set forth in the Second Amended Class Action Complaint that a final reason to excuse exhaustion is that it will cause undue delay. Plaintiffs do not allege this in their pleading and this assertion is conclusory without any factual support.

Accordingly, the Court agrees that this action must be dismissed for the additional reason that Plaintiffs have not sufficiently alleged they should be excused from exhausting their contractual remedies and internal union procedures.

### 3. Amendment

In their Responsive Brief, Plaintiffs ask that they be allowed to amend their pleading to correct any deficiencies the Court finds with respect to their allegations. A bare request without providing any explanation as to how Plaintiffs will remedy their deficient allegations does not warrant leave to amend. *Patterson v. Novartis Pharm. Corp.*, 451 Fed.Appx. 495, 499 (6th Cir. 2011).

To the extent Plaintiffs believe *Garrish* provides them an avenue for stating a claim, they are mistaken. The *Garrish* court held that "the hiring of unqualified employees is a viable claim under § 301," 471 F.3d at 598, and here, Plaintiffs could similarly allege that the collusive conduct of the FCA and UAW involved the hiring of UAW family members at the National Training Center. However, the National Training Center is a separate legal entity. As such, hiring UAW members to work there would not amount to a breach of the operative collective bargaining agreement between FCA and the UAW. Such a claim would therefore be futile. Their request to amend their pleading is denied. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 519 (6th Cir. 2001)(holding that leave to amend should be denied where amendment would be futile); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (A "proposed amendment is futile if

Case 1:19-cv-06770-EK-MMH    Document 37-4    Filed 12/14/20    Page 9 of 10 PageID #: 1853

Swahigan v. FCA US, LLC, Not Reported in Fed. Supp. (2018)
2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

the amendment could not withstand a Rule 12(b)(6) motion to dismiss.")

## C. UAW's Motion to Dismiss

**\*9** Because the Court concludes that Plaintiffs' purported § 301 claim fails as a matter of law since (1) Plaintiffs have not alleged a breach of the operable collective bargaining agreement, as well as (2) pursuant to Sixth Circuit precedent of *Ohlendorf,* 883 F.3d at 640 and *Garrish,* 417 F.3d at 595, their claim against the UAW for breach of the duty of fair representation fails as a matter of law. *Garrish,* 417 F.3d at 595. (If a § 301 claimant cannot establish that the employer breached the collective bargaining agreement *and* that the union breached its duty of fair representation, he cannot succeed against either his employer or his union)(emphasis supplied).

In its present motion, the UAW makes many of the same arguments in support of dismissal as the FCA, namely that Plaintiffs have not alleged a breach of the collective bargaining agreement; their claims are precluded by *Ohlendorf* and *Garrish*, and lastly, they failed to exhaust their contractual and internal union procedures. The Court need not repeat its conclusions with respect to these arguments. However, the UAW raises two additional arguments in support of their Rule 12(b)(6) Motion. Specifically, the UAW maintains that Plaintiffs have not alleged any harm proximately caused by Defendants' purported actions and Plaintiffs' claims are time-barred.

### 1. Proximate Cause

The UAW argues that even if Plaintiffs had adequately alleged a breach of the collective bargaining agreement, they have failed to articulate the harmful effects of the purported breach. Plaintiffs allege that the unlawful payments made to the UAW officials "allow[ed] FCA to obtain company-friendly concessions from the UAW during the collective bargaining process." Sec. Am. Compl. at ¶ 100. However, Plaintiffs do not specify which provisions of the collective bargaining agreements would have been different absent the payments. *See Anderson v. United Paperworks Int'l Union*, 641 F.3d 574, 580 (8th Cir. 1981) (no damages available when "it is mere speculation" that a better agreement could have been reached absent union's breach).

Plaintiffs also argue that the harm they suffered was the improper collection and use of union dues while the UAW engaged in collusive conduct. Thus, Plaintiffs maintain that their Second Amended Class Action Complaint provides sufficient reason to award their dues back. The UAW counters that return of union dues is inappropriate in this case, asserting that it is not aware of any case where member dues were refunded in a Section 301 action.

Neither party provides controlling authority on this point, rather both cite to *Addington v. U.S. Airline Pilots Ass'n, Nos. CV08-1633, CV08-1728-PHX-NVW, 2009 WL 856334 (D. Ariz. Mar. 26, 2009)*, where the court recognized the limited circumstance where restitution in the form of return of dues may be appropriate when collection of dues were coerced by threats or when the union spends the dues on "expenditures unrelated to collective bargaining and labor disputes." *Id.* at \*2 (citing *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 775, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), *Dean v. Trans World Airlines, Inc.*, 708 F.2d 486, 488 (9th Cir. 1983) ).

Based on this authority, it appears there is some precedent for providing relief in the form of union dues, if such dues were used for purposes outside of the collective bargaining process or labor disputes. However, Plaintiffs' Second Amended Class Action Complaint stops short of making this allegation. Rather, they allege that "[d]iscovery will likely reveal that dues paid were used to pay non-CBA matters...." Sec. Am. Compl. at ¶ 81. In fact, Plaintiffs' pleading repeatedly asserts that discovery "*will likely*" reveal more information. *Id.* at ¶ 68, 104 and 115 (emphasis in original). A party may not "use the discovery process to obtain" the very facts needed to file a suit. *Holliday v. Wells Fargo Bank, NA*, 569 Fed.Appx. 366, 372, n.1 (6th Cir. 2014); *Patterson*, 451 Fed.Appx. at 498 ("The Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a Plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint.")

**\*10** Thus, Plaintiffs' § 301 claim also suffers from a failure to allege their specific injuries resulting from the collusive conduct of the UAW and FCA officials. For this additional reason, Plaintiffs have failed to state an actionable § 301 claim.

### 2. Statute of Limitations

Lastly, the UAW argues that even if Plaintiffs have stated a viable § 301 claim, it is nonetheless subject to dismissal

**Swanigan v. FCA US, LLC, Not Reported in Fed. Supp. (2018)**
2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

because their claim is time barred under the applicable statute of limitations. The statute of limitations for a § 301 claim is six months. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The claim accrues "when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763-64 (6th Cir. 2017).

The UAW maintains that even if Plaintiffs adequately plead harm associated with the collective bargaining agreements and the UAW Trust's sale of its equity share in Chrysler, this harm should have been apparent to them long before 2018. The UAW theorizes that Plaintiffs should have known of the injuries when the collective bargaining agreement was ratified in 2015, thus their statute of limitations ran in 2016. Similarly, their claims associated with the sale of the Trust's stock accrued when that transaction was consummated in 2014. The UAW argues that Plaintiffs cannot rely on the unsealing of Iacobelli's and King's Indictments in July of 2017 because Plaintiffs were aware of the terms of the collective bargaining agreement and sale of the stock much earlier than 2017.

Plaintiffs counter that July 26, 2017 was the earliest that they had any knowledge of the collusion giving rise to this action because this was the first time it was publicly disclosed that Iacobelli, King and Holiefield were engaged in collusion.

Because the Court finds that Plaintiffs have not stated a claim under § 301 and failed to exhaust their administrative remedies, the Court need not resolve the UAW's statute of limitations argument. However, the Court finds that the UAW's statute of limitations argument has limited merit because Plaintiffs could not have known of the unlawful acts of FCA and UAW executives until it came to light publicly.

**IV. CONCLUSION**

Accordingly, for the reasons articulated above, FCA US LLC's Motion to Dismiss Second Amended Complaint [#27] is GRANTED.

The UAW International's Motion to Dismiss Plaintiffs' Second Amended Complaint [#28] is also GRANTED.

This cause of action is DISMISSED.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4030815, 2018 L.R.R.M. (BNA) 304,131

Footnotes

1    The UAW also asserts this argument in its Motion to Dismiss.

2    The UAW also raises this argument in its Rule 12(b)(6) motion.

3    Plaintiffs improperly argue that FCA and the UAW must establish the adequacy of their administrative procedures by citing to Second and Ninth Circuit authority, which is contrary to Sixth Circuit authority. *See Fruit and Vegetable Packers & Ware Local 760 v. Morley*, 378 F.2d 738 (9th Cir. 1967); *see also Johnson v. Gen. Motors*, 641 F.2d 1075, 1079-80 (2d Cir. 1981).

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.