# Exhibit 117

No. 18-2303

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Beverly L. Swanigan; Brian Lee Keller; Sheri Anolick,
Plaintiffs-Appellants,

v.

FCA US, LLC; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,
Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of Michigan

## BRIEF OF APPELLANTS

Raymond J. Sterling
James Christian Baker
Brian J. Farrar
Sterling Attorneys at Law, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
jbaker@sterlingattorneys.com
bfarrar@sterlingattorneys.com

Jeffrey M. Harris
Cameron T. Norris
Consovoy McCarthy Park PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
jeff@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for Appellants*

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Statement in Support of Oral Argument ..................................................................... viii

Jurisdictional Statement ................................................................................................. 1

Statement of the Issues .................................................................................................. 1

Statement of the Case .................................................................................................... 2

      I.     Employees' Judicial Remedies Under Federal Labor Law ....................... 3

      II.    The Union's and Fiat's Years-Long Scheme of Collusion and Bribery.... 6

      III.   District Court Proceedings ................................................................. 9

Summary of the Argument ............................................................................................ 12

Argument ...................................................................................................................... 14

      I.     Plaintiffs pleaded valid claims against the Union and Fiat. ..................... 15

            A.   The Union violated its duty of fair representation. ...................... 16

            B.   Fiat breached the collective-bargaining agreement. ...................... 17

            C.   The district court erred by holding that Plaintiffs failed to plead proximate cause .................................................................... 23

      II.    Plaintiffs' complaint cannot be dismissed for failure to exhaust. ............ 30

            A.   Union Grievance Procedures ........................................................ 30

            B.   Contractual Grievance Procedures ............................................... 37

      III.   Plaintiffs should at least be allowed to amend their complaint. ............. 40

Conclusion .................................................................................................................... 41

Certificate of Compliance ............................................................................................. 42

Certificate of Service .................................................................................................... 43

Addendum

      Designation of Relevant Documents ................................................................. 1a

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Min & Kim, Inc.,*
___ F.3d ___, 2019 WL 1234259 (6th Cir. Mar. 18, 2019) ......................................... 26

*Addington v. U.S. Airline Pilots Ass'n,*
2009 WL 856334 (D. Ariz. Mar. 26, 2009) ................................................................ 25

*Adkins v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC,*
769 F.2d 330 (6th Cir. 1985) ....................................................................... 5, 37, 38

*Air Line Pilots Ass'n, Int'l v. O'Neill,*
499 U.S. 65 (1991) ............................................................................. 4, 16, 29, 38

*Aquilar-Avellaveda v. Terrell,*
478 F.3d 1223 (10th Cir. 2007) ..................................................................... 35

*Armour & Co. v. Wantock,*
323 U.S. 126 (1944) ................................................................................... 37

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................... 27

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.,*
228 F.3d 275 (3d Cir. 2000) ........................................................................ 18

*Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,*
493 U.S. 67 (1989) ..................................................................................... 4

*Brown v. Trans World Airlines, Inc.,*
746 F.2d 1354 (8th Cir. 1984) ...................................................................... 16

*Brown v. UAW,*
512 F. Supp. 1337 (W.D. Mich. 1981) ........................................................... 31

*Chapman v. City of Detroit,*
808 F.2d 459, 462 (6th Cir. 1986) ................................................................. 39

*Chapman v. UAW Local 1005,*
670 F.3d 677 (6th Cir. 2012) (en banc) ............................................... 11, 34, 35

*Clayton v. Int'l Union, UAW,*
451 U.S. 679 (1981) .............................................................................. passim

*Consol. Rail Corp. v. Ry. Labor Executives' Ass'n,*
491 U.S. 299 (1989) ................................................................................... 17

ii

*Cox v. Adm'r U.S. Steel & Carnegie*,
17 F.3d 1386 (11th Cir. 1994) ........................................................................24, 28

*Cranpark, Inc. v. Rogers Grp., Inc.*,
821 F.3d 723 (6th Cir. 2016) ...................................................................................24

*DelCostello v. Int'l Bhd. of Teamsters*,
462 U.S. 151 (1983) ...................................................................................................5

*Desrosiers v. Am. Cyanamid Co.*,
377 F.2d 864 (2d Cir. 1967) ....................................................................................38

*Doe v. U.S. Dep't of Justice*,
753 F.2d 1092 (D.C. Cir. 1985) ..............................................................................24

*El-Hallani v. Huntington Nat. Bank*,
623 F. App'x 730 (6th Cir. 2015) ............................................................................29

*Emswiler v. CSX Transp., Inc.*,
691 F.3d 782 (6th Cir. 2012) ............................................................................32, 38

*Erickson v. Pardus*,
551 U.S. 89 (2007) ...................................................................................................26

*Erie Cty. v. Morton Salt, Inc.*,
702 F.3d 860 (6th Cir. 2012) ..................................................................................29

*Farmer v. ARA Servs., Inc.*,
660 F.2d 1096 (6th Cir. 1981) .........................................................................33, 38

*Fisher v. Roberts*,
125 F.3d 974 (6th Cir. 1997) ..................................................................................40

*Foman v. Davis*,
371 U.S. 178 (1962) .................................................................................................40

*Fulton Nat. Bank v. Tate*,
363 F.2d 562 (5th Cir. 1966) ............................................................................28, 29

*Garrish v. UAW*,
133 F. Supp. 2d 959 (E.D. Mich. 2001) .................................................................22

*Garrish v. UAW*,
284 F. Supp. 2d 782 (E.D. Mich. 2003) .................................................................22

*Garrish v. UAW*,
417 F.3d 590 (6th Cir. 2005) ..................................................................................22

*Geddes v. Chrysler Corp.*,
608 F.2d 261 (6th Cir. 1979) ..................................................................................33

*Glover v. St. Louis-San Francisco Ry. Co.*,
   393 U.S. 324 (1969) ............................................................................................32, 38

*Heheman v. E. W. Scripps Co.*,
   661 F.2d 1115 (6th Cir. 1981) ...................................................................................18

*Hines v. Anchor Motor Freight, Inc.*,
   424 U.S. 554 (1976) ...............................................................................................5, 17

*Holt Civic Club v. City of Tuscaloosa*,
   439 U.S. 60 (1978) .......................................................................................................23

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.*,
   425 U.S. 738 (1976) .....................................................................................................29

*Humphrey v. Moore*,
   375 U.S. 335 (1964) .....................................................................................................16

*In re Fair Fin. Co.*,
   834 F.3d 651 (6th Cir. 2016) ..............................................................................34, 36

*Inge v. Rock Fin. Corp.*,
   281 F.3d 613 (6th Cir. 2002) .....................................................................................40

*Int'l Ass'n of Machinists v. Street*,
   367 U.S. 740 (1961) .....................................................................................................25

*Int'l Union, UAW v. NLRB*,
   844 F.3d 590 (6th Cir. 2016) ......................................................................................4

*Johnson v. City of Shelby*,
   135 S.Ct. 346 (2014) ....................................................................................................20

*Jones v. Bock*,
   549 U.S. 199 (2007) ...............................................................................................34, 35

*Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*,
   489 U.S. 527 (1989) .......................................................................................................4

*Keys v. Humana, Inc.*,
   684 F.3d 605 (6th Cir. 2012) .....................................................................................27

*LaPerriere v. UAW*,
   348 F.3d 127 (6th Cir. 2003) .....................................................................................39

*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*,
   369 U.S. 95 (1962) .......................................................................................................17

*Local 594, UAW v. NLRB*,
   776 F.2d 1310 (6th Cir. 1985) ...................................................................................34

*Loren v. Blue Cross & Blue Shield of Mich.*,
505 F.3d 598 (6th Cir. 2007) .................................................................................24

*M&G Polymers USA, LLC v. Tackett*,
135 S.Ct. 926 (2015) .............................................................................................17

*Marlowe v. Fisher Body*,
489 F.2d 1057 (6th Cir. 1973) ........................................................................32, 38

*Martin v. Lake Cty. Sewer Co.*,
269 F.3d 673 (6th Cir. 2001) .................................................................................19

*Nicholas v. N. Philadelphia Health Sys.*,
2016 WL 5791703 (E.D. Pa. Oct. 4, 2016) ..........................................................24

*NLRB v. Cummer-Graham Co.*,
279 F.2d 757 (5th Cir. 1960) .............................................................................5, 17

*Ohio Drill & Tool Co. v. Johnson*,
498 F.2d 186 (6th Cir. 1974) .................................................................................30

*Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*,
883 F.3d 636 (6th Cir. 2018) .................................................................................21

*Parker v. Local 413, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*,
657 F.2d 269 (6th Cir. 1981) (table) ..................................................................6, 38

*Pearson v. UAW Int'l Union*,
694 F. App'x 401 (6th Cir. 2017) ..........................................................................11

*Pension Ben. Guar. Corp. v. E. Dayton Tool & Die Co.*,
14 F.3d 1122 (6th Cir. 1994) .................................................................................23

*Pepper v. Litton*,
308 U.S. 295 (1939) ...............................................................................................29

*Peterson v. Offshore Div. of Int'l Org. of Masters, Mates & Pilots, Marine Div., Int'l Longshoremen's Ass'n, AFL-CIO*, 851 F.2d 360 (9th Cir. 1988) (table) .......................16

*Phelan v. Middle States Oil Corp.*,
220 F.2d 593 (2d Cir. 1955) ..................................................................................29

*Pratt v. UAW, Local 1435*,
939 F.2d 385 (6th Cir. 1991) ...........................................................................20, 39

*Rembisz v. Lew*,
590 F. App'x 501, 504 (6th Cir. 2014) ............................................................35, 36

*Rissetto v. Plumbers & Steamfitters Local 343*,
94 F.3d 597 (9th Cir. 1996) ...................................................................................18

*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,*
    359 U.S. 236 (1959) .................................................................................................... 4

*Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters,*
    436 U.S. 180 (1978) .................................................................................................... 4

*Skilling v. United States,*
    561 U.S. 358 (2010) ...................................................................................................26

*Smith v. Evening News Ass'n,*
    371 U.S. 195 (1962) ...............................................................................................5, 17

*Steele v. Louisville & N.R. Co.,*
    323 U.S. 192 (1944) ...................................................................................................24

*Steffens v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees,*
    797 F.2d 442 (7th Cir. 1986) .................................................................................... 16

*Storey v. Local 327, Teamsters,*
    759 F.2d 517 (6th Cir. 1985) ...................................................................................... 4

*Textile Workers Union of Am. v. Lincoln Mills of Ala.,*
    353 U.S. 448 (1957) ...................................................................................................17

*Trail v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,*
    542 F.2d 961 (6th Cir. 1976) .................................................................................16, 34

*Trollinger v. Tyson Foods, Inc.,*
    370 F.3d 602 (6th Cir. 2004) ....................................................................................28

*U.S. Gypsum Co. v. Indiana Gas Co.,*
    350 F.3d 623 (7th Cir. 2003) ....................................................................................35

*United States v. Baldinger,*
    838 F.2d 176 (6th Cir. 1988) ....................................................................................26

*United Steelworkers of Am., AFL-CIO-CLC v. N. Bend Terminal Co.,*
    752 F.2d 256 (6th Cir. 1985) .................................................................................... 18

*United Transp. Union, Local 74 v. Consol. Rail Corp.,*
    881 F.2d 282 (6th Cir. 1989) .................................................................................30, 33

*Vaca v. Sipes,*
    386 U.S. 171 (1967) ...............................................................................................4, 24

*Virginian Ry. Co. v. Sys. Fed'n No. 40,*
    300 U.S. 515 (1937) .................................................................................................... 2

*Vista Outdoor Inc. v. Reeves Family Tr.,*
    725 F. App'x 17 (2d Cir. 2018) ................................................................................ 18

*White v. Anchor Motor Freight, Inc.*,
  899 F.2d 555 (6th Cir. 1990) ............................................................... 20

*Wooddell v. Int'l Bhd. of Elec. Workers*, Local 71,
  502 U.S. 93 (1991) ........................................................................... 16

**Statutes**

28 U.S.C. §1291 ................................................................................... 1

28 U.S.C. §1331 ................................................................................... 1

28 U.S.C. §1337 ............................................................................... 1, 4

29 U.S.C. §158 ..................................................................................... 4

29 U.S.C. §185 ............................................................................. 1, 4, 5

29 U.S.C. §186 ................................................................................... 20

**Other Authorities**

Bogert, *Trusts and Trustees* §543 (2d ed. 1960) ................................... 28

D. Jablonski, *50 Years After His Assassination, Here Is a JFK Quote on Unions*,
  AFL-CIO (Nov. 22, 2013) ................................................................... 2

F. Kingdon, *As FDR Said* (1950) ........................................................... 2

Fed. R. Civ. P. 15(a)(2) ....................................................................... 40

Fed. R. Civ. P. 20(a)(2) ......................................................................... 5

Fed. R. Civ. P. 54(c) ........................................................................... 23

Pet. for Writ of Cert., *Garrish v. UAW*,
  546 U.S. 1094 (No. 05-580), 2005 WL 2985729 ................................. 22

*Restatement (Second) of Contracts* §205 (1981) ................................... 18

*Restatement (Third) of Restitution and Unjust Enrichment* §51 (2011) .......... 25, 26

*Restatement (Third) of Restitution and Unjust Enrichment* §3 (2011) ........... 25

*Restatement (Third) of Restitution and Unjust Enrichment* §37 (2011) .......... 24

*Restatement (Third) of Restitution and Unjust Enrichment* §43 (2011) .......... 25

Wright & Miller, 5B Fed. Prac. & Proc. Civ. §1357 (3d ed.) ...................... 35

### STATEMENT IN SUPPORT OF ORAL ARGUMENT

This case involves a multi-year conspiracy between one of the largest labor unions and one of the largest car manufacturers in the country. From at least 2009 to 2016, the UAW took bribes from Fiat in exchange for advancing the company's interests in the negotiation, implementation, and administration of collective-bargaining agreements. In short, UAW colluded with Fiat to sell out its members. This scheme was criminal: over a half-dozen officials (and counting) have pleaded guilty to federal criminal charges. But this scheme also injured the employees who worked at Fiat and paid the Union to faithfully represent their interests. The question presented is whether employees have a private right of action to sue their union and employer for colluding to violate their rights. Given the obvious importance of this question, Plaintiffs respectfully request oral argument.

## JURISDICTIONAL STATEMENT

Because Plaintiffs' claims arise under federal labor law and implicate a collective-bargaining agreement, the district court had jurisdiction under 28 U.S.C. §§1331, 1337, and 29 U.S.C. §185. And because the district court entered a final judgment dismissing the complaint, this Court has jurisdiction under 28 U.S.C. §1291. The district court dismissed on August 23, 2018; Plaintiffs moved for reconsideration on September 6; the district court denied reconsideration on October 15; and Plaintiffs timely appealed on November 7. RE41.

## STATEMENT OF THE ISSUES

1.      For at least six years, the union that represents Plaintiffs took millions of dollars in bribes from their employer. Several players in this scheme testified—in their guilty pleas for conspiring to violate federal labor law—that the bribes were given in exchange for employer-friendly concessions at the bargaining table. Plaintiffs sued their union and employer under federal labor law for breach of fiduciary duty and breach of contract. Does their complaint state a claim for relief?

2.      As a general rule, employees must exhaust their claims with their union and employer before coming to court. But exhaustion is an affirmative defense, not an element of the claim; and it is excused when the grievance process would be futile, would not grant the requested relief, or would take too long. Here, Plaintiffs alleged that exhaustion would be futile, given the defendants' demonstrated hostility toward

1

employees and the classwide nature of the requested relief. Did the district court err by dismissing Plaintiffs' claims, at the pleadings stage, for failure to exhaust?

3.     If Plaintiffs have valid claims against their union and employer, but those claims could be stated more clearly with minor changes to the complaint, should Plaintiffs be given leave to amend?

**STATEMENT OF THE CASE**

Over the years, American leaders have used some fairly lofty rhetoric to describe labor unions. John F. Kennedy declared that "labor unions are not narrow, self-seeking groups"; they speak "not for narrow self-interest," but "for the people." D. Jablonski, *50 Years After His Assassination, Here Is a JFK Quote on Unions*, AFL-CIO (Nov. 22, 2013), bit.ly/2xeZhnU. "[F]ree and independent labor unions," President Franklin D. Roosevelt stated more grandly, are "one of the characteristics of a free and democratic nation." F. Kingdon, *As FDR Said* 81 (1950). They are "the true representative of the employees," according to the Supreme Court. *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 548 (1937).

But the rhetoric does not always match the reality. Sometimes, union officials are more interested in lining their own pockets than defending the interests of their members. And sometimes, union officials are even willing to take bribes and collude with the employer to undermine their members' rights. That is exactly what happened here.

2

In 2017, federal investigators exposed a "disturbing criminal collaboration" between Fiat Chrysler Automobiles (FCA or Fiat) and the International Union, United Automobile, Aerospace, and Agricultural Workers of America (UAW or the Union). DOJ Press Release, RE32-3, PageID#705. For years, Fiat funneled millions of dollars to the Union, siphoning the money from an employee-training program and using it to bribe the Union for "benefits, concessions, and advantages in the negotiation and administration of collective bargaining agreements." U.S. Sent'g Memo., RE39-5, PageID#1127. Union officials, in turn, were more than happy to "enrich themselves and live lavish lifestyles rather than zealously work on behalf of the best interests of tens of thousands of rank and file members of their union." *Id.*

This scheme of bribery and collusion, to quote the FBI agent who exposed it, "deprived working men and women of critical workforce and professional development opportunities and calls into question the integrity of contracts negotiated during the course of this criminal conspiracy." DOJ Press Release, RE32-3, PageID#705. It also "deprived" the Union's members of "the representation that they deserved and paid for in union dues." U.S. Sent'g Memo., RE39-5, PageID#1134-35. The question in this case is whether the employees that the Union betrayed can bring a federal lawsuit to recover for their injuries.

## I.    Employees' Judicial Remedies Under Federal Labor Law

Federal labor law limits, but does not eliminate, employees' access to court. The labor statutes prohibit various "unfair labor practices" by unions and employers, 29

3

U.S.C. §158, and the National Labor Relations Board has "primary jurisdiction" to enforce that prohibition, *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 198 (1978). As a "general rule," unfair labor practices cannot be regulated by States or adjudicated by federal courts. *Vaca v. Sipes*, 386 U.S. 171, 179 (1967) (citing *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959)). But that general rule has major exceptions.

For example, employees can sue their union for violating the duty of fair representation, even though the violation also constitutes an unfair labor practice. *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73-75 (1989). The duty of fair representation applies "'in all contexts of union activity, including contract negotiation, administration, enforcement, and grievance processing.'" *Int'l Union, UAW v. NLRB*, 844 F.3d 590, 603 (6th Cir. 2016). It is a "fiduciar[y]" duty that requires the union to put the best interests of its members before all else. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74-75 (1991). When an employee alleges that a union violated this duty, federal courts can hear the claim: There is an implied cause of action under the National Labor Relations Act, *see Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 534 (1989), and federal courts have jurisdiction under 29 U.S.C. §185 and 28 U.S.C. §1337, *see Storey v. Local 327, Teamsters*, 759 F.2d 517, 523 (6th Cir. 1985). The union can defend against the claim by arguing that the plaintiff failed to exhaust the union's internal grievance process (and had no valid excuse). *Clayton v. Int'l Union, UAW*, 451 U.S. 679, 696 (1981).

Additionally, employees can sue their employer for breaching a collective-bargaining agreement, even when the breach also amounts to an unfair labor practice. *Smith v. Evening News Ass'n*, 371 U.S. 195, 197-200 (1962). Although collective-bargaining agreements are technically negotiated by unions, "employees are the real parties in interest" and "are, in a very real sense, parties to the agreement." *NLRB v. Cummer-Graham Co.*, 279 F.2d 757, 759 (5th Cir. 1960). When an employee sues his employer for breaching one of these agreements, federal courts can hear the claim: Section 301 of the Labor-Management Relations Act, 29 U.S.C. §185, provides both a cause of action and a basis for federal jurisdiction. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561-62 (1976). The employer can defend against the claim by arguing that the plaintiff failed to exhaust the agreement's contractual grievance process (and had no valid excuse). *Adkins v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 769 F.2d 330, 336 (6th Cir. 1985).

What if the union and employer are in cahoots and *both* violate the employee's rights? In other words, what if the union violates the duty of fair representation *and* the employer violates the collective-bargaining agreement? The employee could bring two separate lawsuits, one against the union and one against the employer. Or the employee could bring both claims in a single lawsuit. *See* Fed. R. Civ. P. 20(a)(2). The employee could also bring what is known as a "hybrid" claim against the union, the employer, or both. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983).

5

To prove a hybrid claim, the employee must "ordinarily establish both that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement." *Clayton*, 451 U.S. at 683 n.4. Both showings are required because hybrid claims are an "exception" to the rule that employees must exhaust the contractual grievance process before suing their employer for breaching the collective-bargaining agreement. *Adkins*, 769 F.2d at 336. Because the union would represent the employee in the contractual grievance process—but the union has proven untrustworthy by breaching its duty of fair representation—the employee is not required to exhaust the contractual grievance process before coming to court. *Parker v. Local 413, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 657 F.2d 269 (6th Cir. 1981) (table).

## II.   The Union's and Fiat's Years-Long Scheme of Collusion and Bribery

In the wake of the 2008 financial crisis, Chrysler—one of the "Big Three" automakers in Detroit—declared bankruptcy. Compl. ¶¶44, 51, RE24, PageID#127-28. Italian automaker Fiat swooped in, buying a majority of Chrysler in 2009 and the rest of Chrysler in 2014. *Id.* ¶¶44-48, 84, 87, Page ID#127-28, 133. Over that same timeframe, Fiat negotiated three collective-bargaining agreements (and several other agreements) with UAW—the Union that represents Fiat's tens of thousands of employees. *Id.* ¶¶52-54, 49, 31, PageID#128, 125. The employees paid regular dues to the Union so it would zealously defend their interests vis-à-vis Fiat. *Id.* ¶21, PageID#124.

6

But the Union did the opposite. For at least six years, the Union took millions of dollars in bribes from Fiat and colluded with Fiat to disadvantage its employees. *See* Compl. ¶¶2, 5, 64-67, 73-78, 89, 96, 99-100, RE24, PageID#121, 130-35; Iacobelli Indict., RE32-4, PageID#713-14; Iacobelli Plea, RE32-5, PageID#755-57; U.S. Sent'g Memo., RE39-5, PageID#1127-28. These bribes—vacations, rounds of golf, designer clothes, jewelry, expensive meals, premium liquor, furniture, mortgage payments, an Italian shotgun, salaries for fake jobs, and more—were funneled through the UAW-Chrysler Training Center, which was supposed to provide education and training for employees. *See* Iacobelli Indict., RE32-4, PageID#714, 710; Iacobelli Plea, RE32-5, PageID#756; Johnson Plea, RE39-3, PageID#1078-80; U.S. Sent'g Memo., RE39-5, PageID#1131-34.

Fiat paid the bribes to keep the Union, in its words, "fat, dumb, and happy." Iacobelli Indict., RE32-4, PageID#723; U.S. Sent'g Memo., RE39-5, PageID#1128. Specifically, Fiat bribed Union officials to obtain "'benefits, concessions, and advantages for [Fiat] in the negotiation, implementation, and administration of the collective bargaining agreements.'" Compl. ¶¶67, 89, RE24, PageID#130, 133-34; Iacobelli Plea, RE32-5, PageID#757; Johnson Plea, RE39-3, PageID#1077; Brown Plea, RE32-6, PageID#789. Fiat viewed the bribes as an "'investment'": the company "was seeking advantages and concessions in the negotiation and administration of the collective bargaining agreements," and buying off the Union helped "'grease the skids.'" U.S. Sent'g Memo., RE39-5, PageID#1134; Brown Plea, RE32-6, PageID#789. And

7

the bribes were in fact "accessed and used for that purpose." Iacobelli Sent'g Memo., RE39-4, PageID#1113; *see* Compl. ¶¶89, 100, RE24, PageID#134-35.

The corrupting effect that this scheme had on the labor-management relationship at Fiat "cannot be overstated." U.S. Sent'g Memo., RE39-5, PageID#1134-35. The key players in the bribery scheme were the same senior officials who were responsible for negotiating, administering, and resolving grievances under the collective-bargaining agreements—including Fiat's Alphons Iacobelli and Michael Brown, and the Union's General Holiefield, Virdell King, Keith Mickens, and Nancy Johnson. *See* Compl. ¶¶62-63, 66, 73, 75-76, RE24, PageID#129-32; Iacobelli Plea, RE32-5, PageID#755-56; Brown Plea, RE32-6, PageID#787-88; King Plea, RE32-7, PageID#802-03; Mickens Plea, RE32-8, PageID#831-32. These individuals (except Holiefield, who died in 2015) have pleaded guilty to conspiracy to violate the Labor-Management Relations Act. *See* Compl. ¶77, RE24, PageID#132; Iacobelli Plea, RE32-5; King Plea, RE32-7; Mickens Plea, RE32-8; *cf.* Brown Plea, RE32-6 (pleading guilty to misprision of a felony).

But the conspiracy was not confined to them. *See* Compl. ¶¶64-67, 73, 78, 98, 108, 110, RE24, PageID#130-32, 135-37. The indictments and plea agreements repeatedly mention "other" unindicted coconspirators, officials, and employees who were involved. Brown Plea, RE32-6, PageID#788-92; Iacobelli Indict., RE32-4, PageID#713-16, 722-26; Iacobelli Plea, RE32-5, PageID#755-57; King Plea, RE32-7, PageID#801-04; Mickens Plea, RE32-8; PageID#830-34; Johnson Plea, RE39-3,

8

PageID#1072-. Tellingly, "Iacobelli left FCA in June 2015," but the illegal payments still "continued after his departure." U.S. Sent'g Memo., RE39-5, PageID#1133. And the federal investigation into the conspiracy is ongoing. Compl. ¶6, RE24, PageID#122.

Just two weeks ago, the United States indicted Norwood Jewell, "the most senior UAW official in the Chrysler Department," as a coconspirator. *United States v. Jewell*, No. 2:19-cr-20146, RE1, PageID#4. Jewell's indictment is revealing: He was Holiefield's successor at the Union and was not "familiar with any of the co-conspirators from the Holiefield era"; the fact that he joined the conspiracy reveals just how pervasive the Union's "culture of corruption" really was. *Id.*, PageID#8. Jewell's indictment also contradicts the public statements by Fiat and the Union that the conspiracy was confined to just a few bad apples and did not infect the overall bargaining process. *See* Union Letter, RE32-9, PageID#858; Fiat Letter, RE32-12, PageID#884.

## III.    District Court Proceedings

Plaintiffs are dues-paying members of the Union and employees of Chrysler/Fiat (now FCA). Compl. ¶3, RE24, PageID#121. Plaintiffs first learned of the scheme between the Union and Fiat in the summer of 2017, when federal prosecutors publicly indicted Iacobelli and King. *Id.* ¶¶92-94, PageID#134. Plaintiffs filed a timely class-action complaint against the Union and Fiat in January 2018, alleging breaches of the duty of fair representation and the collective-bargaining agreement. RE1. Plaintiffs amended their complaint once as of right and once with consent. RE22. Fiat and the

9

Union each filed a motion to dismiss, RE27; RE28, which the district court granted.
The district court dismissed Plaintiffs' complaint with prejudice. *See* Order, RE37,
PageID#1034.

The district court first held that Plaintiffs have no valid claim under federal labor
law to recover for the defendants' scheme of bribery and collusion. The district court
did not dispute that the Union's misconduct breached the duty of fair representation.[1]
But the court concluded that Fiat's misconduct did not breach "any specific provision
of any collective-bargaining agreement." *Id.*, PageID#1016. Bribery and collusion, the
district court reasoned, are better understood as unfair labor practices within the
exclusive jurisdiction of the National Labor Relations Board. *Id.*, PageID#1016-19. The
district court also characterized Plaintiffs' complaint as a "disguised claim under
§302"—a separate provision of the Labor-Management Relations Act that criminalizes
bribery. *Id.*, PageID#1020. Because §302 already prohibits bribery but does not contain
a private right cause of action, the district court concluded that Plaintiffs cannot sue
over this conduct under *any* cause of action. *Id.*, PageID#1019-21.

The district court further held that Plaintiffs failed to allege "[p]roximate
[c]ause," meaning Plaintiffs did not "allege their specific injuries" or "specify which
provisions of the collective bargaining agreements would have been different absent

---

[1] The district court did reject one allegation in the complaint, regarding Fiat's
purchase of Chrysler shares from the UAW Trust. Order, RE37, PageID#1014-16.
Plaintiffs do not pursue that allegation further on appeal.

10

the [bribes]." *Id.*, PageID#1031-33. The court rejected one of Plaintiffs' requested

remedies—"restitution in the form of return of dues"—as illegitimate. *Id.*,

PageID#1031-32.

The district court next held, alternatively, that Plaintiffs' complaint should be

dismissed for failure to plead exhaustion. The court noted that Plaintiffs did not exhaust

the contractual bargaining process under the collective-bargaining agreement or the

union's internal grievance process under the UAW constitution. *Id.*, PageID#1021-22.

According to the district court, an employee cannot bypass the contractual grievance

process unless he first tries to use it and then "the union engages in unfair

representation *during the grievance process*"—something Plaintiffs do not allege here. *Id.*,

PageID#1024. And an employee cannot bypass the union's grievance procedures

unless that process would be "'futile'"—something Plaintiffs did not sufficiently allege

here, according to the district court. *Id.*, PageID#1025.

Although virtually every court treats exhaustion as an *affirmative defense* that the

defendant must plead and prove, the district court concluded that, in the Sixth Circuit,

exhaustion is a *pleading* requirement. *Id.*, PageID#1025-26 & n.3, 1028 (citing *Chapman

v. UAW Local 1005*, 670 F.3d 677, 683 (6th Cir. 2012) (en banc), and *Pearson v. UAW

Int'l Union*, 694 F. App'x 401, 403 (6th Cir. 2017)). The court then faulted Plaintiffs for

not pleading why exhausting with the Union would be futile when "the conspirators are

no longer in a position to thwart [it]" and when "the UAW Constitution permits

[Plaintiffs] to seek redress before the Public Review Board, which the Sixth Circuit has

11

previously held" is "'impartial' and 'independent.'" *Id.*, PageID#1026. The court also faulted Plaintiffs for not pleading why the Union's process could not redress their class action adequately and without undue delay. *Id.*, PageID#1028.

Lastly, the district court denied Plaintiffs' request for leave to amend their complaint as "futile." *Id.*, Page ID#1029. In its order denying Plaintiffs' motion for reconsideration, the court reiterated that Plaintiffs had not "demonstrated a palpable defect with respect to this Court's conclusion that amendment would be futile." Order Deny'g Reconsid., RE40, PageID#1147.

## SUMMARY OF THE ARGUMENT

Plaintiffs' complaint alleges a scheme of bribery and collusion between the Union and Fiat that deprived employees of their collective-bargaining rights—a conspiracy that lasted a half decade, involved millions of dollars in bribes, and implicated the top brass at both organizations. "Alleges" is putting it lightly. There is *no question* that this conspiracy occurred; several participants pleaded guilty and went to prison for it. The only question is whether the *victims* of this conspiracy can bring a civil action to recover for their injuries.

The answer is emphatically yes. Assume, for a moment, that the Union and Fiat had colluded to deny one employee a promotion and then refused to process his grievance. No one doubts that this employee could sue the Union and Fiat in federal court. Here, however, the Union and Fiat colluded to deny *tens of thousands* of employees their rights in *every* aspect of the bargaining process over an extended period of time.

12

No rational system of law would allow the first case to proceed but shut this case out of court. Yet the district court read federal labor law to require precisely that result. Because its decision contradicts well-established legal principles and binding precedents of this Court, it should be reversed.

**I.**    Plaintiffs stated a valid claim against the Union and Fiat under federal labor law. No one disputes that the defendants' scheme of bribery and collusion violated the Union's duty to fairly represent its members. But this scheme also breached the collective-bargaining agreement between Fiat and its employees. Collective-bargaining agreements, like other contracts, contain implied terms that require employers to act fairly and in good faith—terms that Fiat's misconduct plainly transgressed. It does not matter that the defendants' scheme might have violated other rules of federal labor law as well, so long as it *also* violated the duty of fair representation and the collective-bargaining agreement. It did.

The district court should not have dismissed Plaintiffs' complaint for what it called a lack of "proximate cause." If the district court meant there is no *remedy* for Plaintiffs' claims, that was error. Several remedies exist, including compensatory damages, rescission of the conflicted agreements, and restitution of the dues that Plaintiffs paid to the Union while it was actively undermining their interests. If the district court meant that Plaintiffs failed to allege the *specific ways* that the scheme undermined employees' rights, that was error too. Plaintiffs' allegation that the bribery and collusion negatively affected employees is eminently plausible: That was the entire

13

point of the scheme (as several participants stated in their guilty pleas), and Fiat would not have spent millions of dollars for nearly six years to multiple Union officials unless it was getting results. In all events, the law presumes that a conflicted fiduciary's actions harm the person he owes a duty to, unless *the fiduciary* can prove otherwise. Whether the defendants can do so is a question for summary judgment or trial.

II.     The district court should not have dismissed the complaint for failure to exhaust. Exhaustion is an affirmative defense, not a pleading requirement, so it cannot be a basis to dismiss the complaint unless Plaintiffs pleaded themselves out of court. They did not. It is well-established that collusion between an employer and union excuses the employee's duty to exhaust. And exhaustion is futile here because it could not award Plaintiffs' requested relief, and because the Union and Fiat have already publicly rejected Plaintiffs' claims.

III.     If this Court agrees that Plaintiffs have a valid claim against the Union or Fiat, but thinks their complaint needs to add or subtract certain allegations, it should remand so that Plaintiffs can amend their complaint. Courts freely give leave to amend, and the only reason the district court denied it here was its mistaken legal conclusion that Plaintiffs could not possibly state a valid claim. Because that legal conclusion was wrong, the district court's denial of leave to amend was wrong too.

## ARGUMENT

This Court reviews the dismissal of a complaint de novo, giving the district court no deference. *Wallin v. Norman*, 317 F.3d 558, 561 (6th Cir. 2003). This Court also

14

reviews de novo the denial of leave to amend the complaint, when the denial is based on futility. *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014). To survive a motion to dismiss, a complaint must "'contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). Courts "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.*

Under this standard, Plaintiffs' complaint was improperly dismissed. Plaintiffs alleged viable claims against the Union and Fiat for violating the duty of fair representation and the collective-bargaining agreement. Plaintiffs were not required to plead exhaustion, and exhaustion was futile here anyway. If Plaintiffs' complaint is missing any necessary allegations, this Court should remand with instructions to allow them to amend.

## I.   **Plaintiffs pleaded valid claims against the Union and Fiat.**

In their complaint, Plaintiffs identified an acknowledged, widespread scheme of bribery and collusion between the Union and Fiat. This scheme violated the Union's duty of fair representation. And it breached Fiat's obligations to Plaintiffs under the collective-bargaining agreement. The district court's analysis of what it called "proximate cause" was premature and incorrect.

15

## A.    The Union violated its duty of fair representation.

Plaintiffs plausibly alleged that the Union violated its duty of fair representation. That duty requires a union "'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Air Line Pilots*, 499 U.S. at 74. By accepting bribes and colluding with Fiat to disadvantage its members' interests in the negotiation and administration of labor agreements, the Union plainly violated its duty of fair representation. *See, e.g., Trail v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 542 F.2d 961, 968 (6th Cir. 1976) (union "deliberately served employer interests" in negotiations), *abrogated in other part by Wooddell v. Int'l Bhd. of Elec. Workers*, Local 71, 502 U.S. 93 (1991); *Humphrey v. Moore*, 375 U.S. 335, 343 (1964) (union "deceitfully connived … to deprive … employment rights" in grievance process); *Steffens v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 797 F.2d 442, 445 (7th Cir. 1986) (union "colluded with the [employer] with the intention of depriving [employees] of their contract rights"); *Peterson v. Offshore Div. of Int'l Org. of Masters, Mates & Pilots, Marine Div., Int'l Longshoremen's Ass'n, AFL-CIO*, 851 F.2d 360 (9th Cir. 1988) (table) (union received "kickbacks" under the guise of "vacation pay").

Neither the Union nor Fiat argued otherwise in the district court. Nor could they, as there is no question that the Union breached the duty it owes to its members. As the Eighth Circuit put it, "[c]ollusion would certainly be a form of bad faith and would

16

therefore constitute unfair representation." *Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354, 1357 (8th Cir. 1984).

### B. Fiat breached the collective-bargaining agreement.

Plaintiffs also plausibly alleged that Fiat breached the collective-bargaining agreement. Paying bribes and colluding with the Union breached the rights of Fiat's employees—the "real parties" to the collective-bargaining agreement. *Cummer-Graham*, 279 F.2d at 759. It does not matter that Fiat's conduct also constituted "an unfair labor practice within the jurisdiction of the National Labor Relations Board." *Hines*, 424 U.S. at 562; *see also Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 101 n.9 (1962) ("It is, of course, true that conduct which is a violation of a contractual obligation may also be conduct constituting an unfair labor practice."). Plaintiffs can sue Fiat in federal court so long as Fiat's "unfair labor practice … also violate[d] a collective bargaining contract." *Smith*, 371 U.S. at 197.

It did. While no provision of the collective-bargaining agreement explicitly prohibits bribes or collusion, that prohibition is implied. *See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 311 (1989) ("[C]ollective-bargaining agreements may include implied, as well as express, terms."). Courts interpret collective-bargaining agreements according to "federal [common] law, which [they] fashion from the policy of our national labor laws." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957). This federal common law incorporates "ordinary principles of contract law," *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926, 933 (2015), as often reflected

17

in the Restatement (Second) of Contracts, *see, e.g., Heheman v. E. W. Scripps Co.*, 661 F.2d 1115, 1121-22 (6th Cir. 1981); *United Steelworkers of Am., AFL-CIO-CLC v. N. Bend Terminal Co.*, 752 F.2d 256, 259-61 (6th Cir. 1985). One ordinary principle of contract law is that "[e]very contract imposes … a duty of good faith and fair dealing in its performance and its enforcement." *Restatement (Second) of Contracts* §205 (1981); *see, e.g., Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 599 (9th Cir. 1996) (explaining that, under federal law, "the covenant of good faith and fair dealing … is an implied term of [a] CBA"). Fiat's use of collusion and bribery to undermine employees' rights is the paradigmatic example of conduct that breaches the implied covenant of good faith and fair dealing. *See, e.g., Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) ("A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct," such as "'collusion with third parties where there is no breach of the express terms of the contract.'"); *Vista Outdoor Inc. v. Reeves Family Tr.*, 725 F. App'x 17, 22 (2d Cir. 2018) (similar).

Several explicit terms of the most recent collective-bargaining agreement bolster this conclusion. The first section of the agreement states that its purpose is to "promote … the mutual interest of the Company, *the employees* and the Union"—not the interests of Fiat and the Union alone. O'Brien Decl., RE27-1, PageID#206 (emphasis added). Another section prohibits "anyone in a supervisory capacity or … Management" at Fiat from being represented by the Union—a provision that Fiat effectively circumvented by bribing the Union to represent *Fiat's* interests during bargaining. *Id.*, PageID#208.

18

Yet another section prohibits any "supplemental agreement[s]" that are not reflected in the collective-bargaining agreement itself—which would include the bribery arrangement between the Union and Fiat. *Id.*, PageID#315. Needless to say, a side deal between Fiat and the Union to advance each other's interests at the direct expense of the employees is anathema to these terms, to the agreement's express purpose, and to its implied covenant of good faith and fair dealing.

The district court concluded otherwise, stating that Plaintiffs' complaint "fails to allege a breach of any provision" of the collective-bargaining agreement. Order, RE37, PageID#1016. Plaintiffs respectfully disagree. It is possible for Fiat to breach the collective-bargaining agreement without breaching an "'express'" term. *Id.* And Fiat's misconduct was not limited to "'bad-faith bargaining'" over the formation of collective-bargaining agreements. *Id.*, PageID#1018 (quoting *Martin v. Lake Cty. Sewer Co.*, 269 F.3d 673, 680 (6th Cir. 2001)). Fiat also bribed and colluded with the Union during the "implementation" and "administration" of the agreements. *Supra* 7.

But even if the district court were right that Plaintiffs failed to plead a breach of contract by *Fiat*, that failure would not justify dismissing their claim against *the Union*. As explained, a hybrid claim alleges both a breach of the collective-bargaining agreement by the employer and a violation of the duty of fair representation by the union, but employees can also bring a *standalone* claim against the union for violating the duty of fair representation. *Supra* 4. Because a fair-representation claim is a lesser-included subset of a hybrid claim, courts will treat hybrid claims as fair-representation

19

claims when the complaint "does not allege facts to support a 'colorable claim' under the collective bargaining agreement." *Pratt v. UAW, Local 1435*, 939 F.2d 385, 389 (6th Cir. 1991); *see id.* at 390 n.1 ("'If independent jurisdiction exists in the first instance over a separate claim for failure to represent fairly, then … it also exists even if a judgment has been rendered that the employer did not breach the collective bargaining agreement.'"); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 560-61 (6th Cir. 1990) (citing two Ninth Circuit cases as examples where courts treated hybrid claims as fair-representation claims when the plaintiff failed to demonstrate a breach of the collective-bargaining agreement).

Accordingly, even assuming (counterfactually) that Plaintiffs failed to plead a breach of the collective-bargaining agreement, the appropriate course was not to dismiss their entire complaint, but to dismiss Fiat and treat the complaint as alleging only a fair-representation claim against the Union. The complaint already contains all the necessary allegations to support that claim. *See, e.g.*, Compl. ¶¶105-15, 33, RE24, PageID#136-37, 125 (stating breach of fair representation as a separate count and citing §1337). And the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S.Ct. 346, 346 (2014); *see also id.* (explaining that *Twombly* and *Iqbal* require a plaintiff to plead sufficient facts, not "'set out a legal theory'").

Finally, the district court was wrong to characterize Plaintiffs' complaint as a "disguised §302 claim." Order, RE37, PageID#1019-21. Plaintiffs are not suing under

§302 of the Labor-Management Relations Act, 29 U.S.C. §186, which is a criminal statute that prohibits bribery but does not contain a private cause of action, *see Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018). Plaintiffs instead allege violations of the duty of fair representation and the collective-bargaining agreement, and their claims rise or fall on their ability to prove those violations. Section 302 is not a cause of action alleged in their complaint.

The notion that Plaintiffs' claims should be dismissed as a "disguised §302 claim" assumes that the same conduct cannot violate both §302 and the duty of fair representation or the collective-bargaining agreement. Yet that kind of overlap happens all the time in labor law. *Supra* 4-5. The district court's reasoning also assumes that the absence of a cause of action under §302 somehow circumscribes the long-established causes of action for breaches of collective-bargaining agreements and violations of the duty of fair representation. Yet this Court said the opposite in *Ohlendorf*. After holding that the plaintiffs could not sue their union under §302, the Court assumed that they *could* sue their union for "violat[ing] … [the] duty of fair representation"—indeed, the Court proceeded to analyze that claim on the merits. 883 F.3d at 639, 643-44. The Court also emphasized that plaintiffs can raise violations of §302 in cases alleging a breach of the collective-bargaining agreement, where plaintiffs have an express cause of action under §301. *Id.* at 642-43.

This Court's decision in *Garrish v. UAW* does not support the district court's reasoning. The plaintiffs in *Garrish* brought a hybrid claim alleging that the union

21

extended a strike for two months so that some high-ranking officials could extract "payoffs" from the employer. 417 F.3d 590, 592 (6th Cir. 2005). After concluding that the plaintiffs' claim was untimely, this Court stated, in a single sentence, that the payoffs did not "constitute[] a cause of action *in the instant appeal*—[the employer] did not breach the [collective-bargaining agreement] and the union did not breach its duty of fair representation." *Id.* at 598 (emphasis added). The *Garrish* Court did not cite or discuss §302, nor did it hold that employees can never sue for bribery and collusion.

Of course, it is impossible to know why the *Garrish* Court held that the payoffs did not state a claim "in the instant appeal," since the Court provided no reasoning. But the most likely explanation is that the Court accepted the union's defense that the so-called "payoffs" were not payoffs at all; they were merely settlements with the union officials "in payment of grievances they [had] filed." Pet. for Writ of Cert., *Garrish v. UAW*, 546 U.S. 1094 (No. 05-580), 2005 WL 2985729, at *7. Tellingly, throughout the litigation, the plaintiffs consistently failed to respond to this defense. *See Garrish v. UAW*, 284 F. Supp. 2d 782, 787 (E.D. Mich. 2003) ("[I]t is unclear whether Plaintiffs in fact have conceded that" the payoffs were not "a breach of contract."); *Garrish v. UAW*, 133 F. Supp. 2d 959, 964 n.2 (E.D. Mich. 2001) ("It is not entirely clear to the Court, however, that Plaintiffs allege this payment to have been a breach of contract."). Since *Garrish* was an appeal from a grant of summary judgment—not a motion to dismiss—the plaintiffs' inability to disprove that argument would have been fatal. 417 F.3d at 592. It thus appears that the *Garrish* Court agreed with the defendants that the

22

alleged bribes were not really bribes—a case-specific holding that has no impact on the viability of Plaintiffs' claims here.

### C.  The district court erred by holding that Plaintiffs failed to plead proximate cause.

Under the heading "Proximate Cause," the district court faulted Plaintiffs for not pleading the "harmful effects" of the defendants' misconduct. Order, RE37, PageID#1031. The court concluded that Plaintiffs could not recover damages because their complaint does not "specify which provisions of the collective bargaining agreements would have been different absent the [misconduct]." *Id.* And it concluded that Plaintiffs are not entitled to a refund of their union dues, even though the Union collected those dues without actually providing the good-faith representation that the members paid for. *Id.*, PageID#1031-32. The district court's "proximate cause" analysis is flawed at each step.

Most fundamentally, a complaint cannot be dismissed for failure to plead *remedies*. The Federal Rules require courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Thus, a court cannot "dismiss a meritorious … claim because the complaint seeks one remedy rather than another plainly appropriate one." *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65 (1978); *accord Pension Ben. Guar. Corp. v. E. Dayton Tool & Die Co.*, 14 F.3d 1122, 1127 (6th Cir. 1994). Dismissal is not appropriate unless the complaint fails to

23

"'state a claim on which *some* relief, not limited by the request in the complaint, can be granted.'" *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985).[2]

That test is necessarily satisfied if Plaintiffs prove their claims. "If a breach of duty by the union and a breach of contract by the employer are proven, the court *must* fashion an appropriate remedy." *Vaca*, 386 U.S. at 187 (emphasis added). The "usual judicial remedies" are available, including equitable relief and money damages. *Steele*, 323 U.S. at 207. For example, a court could rescind the collusive agreements that Fiat and the Union negotiated during the conspiracy. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1412 (11th Cir. 1994); *Restatement (Third) of Restitution and Unjust Enrichment* §37 (2011). Or a court could award damages measured by, for example, "the value of the concessions that the Union negotiators would have extracted from [Fiat]" absent the bribes and collusion, *Cox*, 17 F.3d at 1413, or the value of the training and education programs that were taken from the employees and given to the Union.

---

[2] Unlike remedies, a plaintiff does need to allege injury, since injury is a necessary component of Article III standing. But the district court never disputed that Plaintiffs have standing here. A violation of the duty of fair representation or a breach of the collective-bargaining agreement is a cognizable injury, whether or not the breach caused individual harm. *See Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 207 (1944); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 609-10 (6th Cir. 2007); *Nicholas v. N. Philadelphia Health Sys.*, 2016 WL 5791703, at *2 (E.D. Pa. Oct. 4, 2016). And the breaches here did cause individual harm, in the form of decreased bargaining rights and overpaid union dues. A court could remedy this harm by awarding Plaintiffs the relief they request in the complaint. *See Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 731 (6th Cir. 2016) ("'Redressability does not require that the plaintiff actually be entitled to the relief sought; it is enough that the requested relief, if granted, would redress the plaintiff's injury.'").

A court could also order a restitutionary remedy, such as refunding all or part of Plaintiffs' dues. Plaintiffs paid thousands of dollars in dues to the Union while it was actively colluding with Fiat to undermine their interests. Compl. ¶56, RE24, PageID#129. Plaintiffs expected the Union to spend that money on good-faith, arm's-length bargaining on their behalf, in accordance with the Union's fiduciary duties. *Id.* ¶¶21, 79-80, 114, PageID#124, 132, 137. But the Union instead breached its duty and colluded with Fiat to benefit the company and union officials at the expense of the employees. *Id.* ¶¶90, 102-03, 113-14, PageID#134-37. It is absurd to suggest that Plaintiffs were obligated to finance the Union's activities while it was actively working to undermine their interests, and there is a well-established remedy for this precise situation. An individual "who obtains a benefit … in breach of a fiduciary" or "equivalent duty" is "liable in restitution to the person to whom the duty is owed." *Restatement (Third) of Restitution and Unjust Enrichment* §43; *cf. Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 541 (1943). Restitution is particularly appropriate in cases, like this one, where traditional damages are hard to prove. *Restatement (Third) of Restitution and Unjust Enrichment* §3 cmt. b.

Refunding Plaintiffs' dues would not be unduly "punitive" to the Union. *Addington v. U.S. Airline Pilots Ass'n*, 2009 WL 856334, at *2 (D. Ariz. Mar. 26, 2009), *remanded for lack of jurisdiction*, 606 F.3d 1174, 1176 (9th Cir. 2010). Since the Union "acted in conscious disregard of [Plaintiffs'] rights," the law treats "the whole of the resulting gain … as unjust enrichment." *Restatement (Third) of Restitution and Unjust Enrichment* §3

25

cmt. c. A court could also award only "the net profit attributable to the underlying wrong." *Id.* §51; *cf. Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 775 (1961). In other words, a court could require the Union to return a percentage of Plaintiffs' dues, reflecting the amount they overspent while the conspiracy was ongoing. This would "eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." *Restatement (Third) of Restitution and Unjust Enrichment* §51(4).

The district court was also wrong to hold that Plaintiffs must "specify" how exactly the defendants' bribery and collusion disadvantaged the employees—identifying precisely what concessions Fiat extracted, what rights the Union bargained away, what grievances the Union let slide, and so on. Order, RE37, PageID#1031. No such allegations are required at the pleadings stage. Fiat breached the collective-bargaining agreement the moment it made a deal to pay the Union for labor concessions. *Supra* I.B. And the Union violated its duty of fair representation the moment it took the bribes from Fiat. *See United States v. Baldinger*, 838 F.2d 176, 181 (6th Cir. 1988) (explaining that a union official breaches his fiduciary duty to the members "by accepting a bribe for himself"); *Skilling v. United States*, 561 U.S. 358, 407 & n.41 (2010) (similar). The *extent* to which these breaches harmed Fiat's employees goes to the scope of Plaintiffs' ultimate relief, not whether they have stated a claim.

The district court's demand for specificity also overstates the "modest" federal pleading standard. *Acosta v. Min & Kim, Inc.*, ___ F.3d ___, 2019 WL 1234259, at *5 (6th Cir. Mar. 18, 2019). Even after *Twombly* and *Iqbal*, "[s]pecific facts are not necessary;

Case: 18-2503    Document: 32-6    Filed: 05/29/2019    Page: 36

the [complaint] need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("[I]t would be inaccurate to read *Twombly* and *Iqbal* so narrowly as to be the death of notice pleading" (cleaned up)). The Federal Rules do not require "fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility "occupies that wide space between 'possibility' and 'probability.'" *Keys*, 684 F.3d at 610. It exists if the complaint alleges enough facts that "a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that something illegal happened. *Id.*

It is certainly plausible to infer from Plaintiffs' complaint that, when the Union was accepting bribes from Fiat, it was also making concessions to Fiat, failing to press for new benefits, favoring Fiat in the grievance process, or taking other actions that disadvantaged employees. In fact, it is implausible to think that this *didn't* happen. The whole point of bribing a union is to gain employer-friendly concessions. Compl. ¶¶88-89, 99-100, RE24, PageID#133-35. Nearly half a dozen high-ranking officials from Fiat and the Union confessed that was their *precise* goal—that the bribes were given to obtain "'benefits, concessions, and advantages for [Fiat] in the negotiation, implementation, and administration of the collective bargaining agreements.'" *Id.* ¶¶67, PageID#130; Iacobelli Plea, RE32-5, PageID#757; Johnson Plea, RE39-3, PageID#1077; Brown Plea, RE32-6, PageID#789. The federal government certainly thought it was plausible

27

to conclude that this scheme undermined "the integrity of contracts negotiated during [its] course." DOJ Press Release, RE32-3, PageID#705.

The government was correct. "[A]lthough there may be no direct evidence that the Union negotiators made concessions" to Fiat, "there is a great deal of circumstantial evidence that could lead a reasonable jury to that conclusion"—and certainly enough to draw that inference at the pleadings stage. *Cox*, 17 F.3d at 1400; *accord Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 620 (6th Cir. 2004). Fiat's bribes must have been successful in extracting concessions from the Union, since Fiat paid them continuously for more than six years, spent millions of dollars on them, and maintained them even as the Union's leadership changed. "It strains credulity to suggest that a company committed to the profit motive" would "give away" millions of dollars for six years "for nothing in return." *Cox*, 17 F.3d at 1402. Also, "much may be inferred" from the fact that Fiat and the Union "went to such great lengths to hide" their scheme "from the light of day." *Id.* And basic "behavioral psychology" tells us that "'[i]t is generally, if not always, humanly impossible'" for a fiduciary to accept payments from the person "'competing with the beneficiary'" and also resist the "temptation" to "'make decisions which favor [that] person.'" *Fulton Nat. Bank v. Tate*, 363 F.2d 562, 571 (5th Cir. 1966) (quoting Bogert, *Trusts and Trustees* §543, at 475-76 (2d ed. 1960)).

Of course, only the Union and Fiat know exactly how their conspiracy affected the bargaining process; Plaintiffs are necessarily left with circumstantial evidence. But circumstantial evidence should be enough in this case. "Rational people, after all, do

28

not conspire in the open, and a plaintiff is very unlikely to have factual information that would exclude the possibility of non-conspiratorial explanations *before* discovery." *Erie Cty. v. Morton Salt, Inc.*, 702 F.3d 860, 869 (6th Cir. 2012); *accord Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976) ("[W]here the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." (cleaned up)). The pleading standard is "'context-specific'" and can "adjust" for such "economic or logistical circumstances that prevent the plaintiff from obtaining evidence supporting his claim." *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 735 (6th Cir. 2015) (cleaned up).

But no adjustment in the pleading standard is even needed here because the substantive law already accounts for this scenario. According to the Supreme Court, a union's duty of fair representation is "akin to the duty owed by other fiduciaries to their beneficiaries"—including attorneys to their clients, trustees to their beneficiaries, and corporate officers to their shareholders. *Air Line Pilots*, 499 U.S. at 74-75. When a trustee, attorney, or corporate officer accepts bribes from the opposing side, the law "presumes that the fiduciary acted disloyally." *Fulton Nat. Bank*, 363 F.2d at 571. It is "unnecessary to show that the fiduciary succumbed to th[e] temptation" or that "the beneficiary was harmed." *Id.*

In other words, once there is a plausible allegation of bribery or collusion, "the burden" is on the fiduciary to "prove the good faith of the transaction" and "show its inherent fairness from the viewpoint of … an arm's length bargain." *Pepper v. Litton*, 308

29

U.S. 295, 306-07 (1939); *accord Phelan v. Middle States Oil Corp.*, 220 F.2d 593, 600 (2d Cir. 1955) (explaining that "the burden" is on the fiduciary "to prove that [plaintiffs] had suffered no actionable loss by any of his acts or decisions in which he could have been actuated by a personal interest that conflicted with his duty to them"). Because Fiat and the Union decided to "hid[e] [the] failure of duty and the personal profit" under a "cloak of secrecy," the law requires *them* to "prove that nothing is amiss." *Ohio Drill & Tool Co. v. Johnson*, 498 F.2d 186, 195 (6th Cir. 1974). And that, of course, is a question that is manifestly unsuited for resolution at the pleadings stage.

## II.    Plaintiffs' complaint cannot be dismissed for failure to exhaust.

Apart from the merits, the district court concluded that Plaintiffs' complaint should be dismissed for failing to plead exhaustion. The district court reasoned that Plaintiffs' complaint must be dismissed for failure to exhaust both the Union's internal grievance procedures, Order, RE37, PageID#1022-25, and the grievance procedures in the collective-bargaining agreement with Fiat, *id.*, PageID#1025-28. The district court was wrong on both counts.

### A.    Union Grievance Procedures

As noted, a union can defend against a claim that it violated the duty of fair representation by arguing that the employee failed to exhaust the union's internal grievance procedures. But "courts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton*, 451 U.S. at 689. It is "well settled" that "futility is an excuse for failure to exhaust internal union remedies." *United Transp.*

30

*Union, Local 74 v. Consol. Rail Corp.*, 881 F.2d 282, 289 (6th Cir. 1989), *vacated*, 494 U.S. 1051 (1990), *reinstated*, 902 F.2d 36 (6th Cir. 1990). The Supreme Court has recognized "at least three" reasons why exhaustion would be futile: hostility, inadequacy, and delay. *Clayton*, 451 U.S. at 689. All three factors are present here.

Most obviously, the Union's internal procedures "would be inadequate" because they cannot "award [Plaintiffs] the full relief [they] seek[]." *Id.* Given the sprawling nature of the conspiracy between the Union and Fiat, its effects were widespread; it violated the rights of every person employed by Fiat and represented by the Union— tens of thousands of employees. Compl. ¶¶74-75, RE24, PageID#132. Because the injured employees are so numerous, but each one suffered a relatively small loss, only a class action can provide meaningful relief. *Id.* ¶¶17-29, PageID#123-25. Plaintiffs seek classwide relief here, but nothing in the Union's constitution allows the grievance process to award that kind of relief. *See* UAW Const., RE39-2, PageID#1057-69; *Brown v. UAW*, 512 F. Supp. 1337, 1353 (W.D. Mich. 1981). "To expect a class of 1,000"— or here, tens of thousands—"to seek voluntary monetary compensation from [the Union] before initiating suit is a remarkable proposition." *Brown*, 512 F. Supp. at 1353. At the very least, requiring Plaintiffs to wait until all those employees make it through the grievance process "would unreasonably delay [their] opportunity to obtain a judicial hearing on the merits of [their] claim[s]." *Clayton*, 451 U.S. at 689; *see also id.* at 693 (stressing "the important federal polic[y]" of promoting "the 'relatively rapid disposition of labor disputes'").

31

Separately, the Union is "so hostile" to employees that Plaintiffs "could not hope to obtain a fair hearing on [their] claim." *Id.* at 689. Plaintiffs have alleged a multi-year scheme of bribery and collusion between Fiat and the Union, spanning several generations of Union leadership and involving countless unknown coconspirators; in fact, the number of conspirators continues to grow each day as federal prosecutors file more indictments. The nature of this scheme, moreover, was a willful effort by the Union to sell out the rights of its members at all phases of the bargaining process.

This is a classic case of union hostility. Given the "the allegation of collusion between the employer and the union," it "would be pointless to require exhaustion of contractual remedies" or "internal union remedies." *Marlowe v. Fisher Body*, 489 F.2d 1057, 1065 (6th Cir. 1973); *accord Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 790 (6th Cir. 2012) (recognizing an "exception" to "exhaustion" when "pursuing arbitral mechanisms would be futile due to collusion between the union and employer"). If the law required employees to exhaust a claim that the Union was "acting in concert" with the employer to deny their rights, then the Union would be asked to "pass on claims by the very employees whose rights they have been charged with neglecting and betraying" and the employees would be asked to "submit their controversy to a group which is in large part chosen by the defendants against whom their real complaint is made." *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330-31 (1969). This charade is "wholly futile" and "would only serve to prolong the [employees'] deprivation of rights." *Id.* at 331.

While "alleged collusion between the [employer] and union" is already sufficient to make exhaustion "futile," *Emswiler*, 691 F.3d at 791, there is more here. Exhaustion is also "futile" when "the position of the union is clearly 'hardened' against" the employees' claim. *United Transp.*, 881 F.2d at 289. For example, employees need not waste their time exhausting when the union or employer has already reached "a settled position" on the controversy, as reflected by a "written document" or a long period of inaction. *Geddes v. Chrysler Corp.*, 608 F.2d 261, 265 (6th Cir. 1979). That is the case here. Before Plaintiffs filed this suit, both Fiat and the Union wrote letters insisting that the conspiracy was limited to a few isolated actors and had no effect on employees' rights. *See* Union Letter, RE32-9, PageID#858 (minimizing the conspiracy to one "bad actor" and asserting that "it was NOT possible for General Holiefield to compromise or otherwise affect the … collective bargaining agreements"); Fiat Letter, RE32-12, PageID#884 (minimizing the conspiracy to "an isolated few" and asserting that it had "nothing whatsoever to do with the collective bargaining process"). Once Fiat and the Union took the position (publicly and in writing) that the conspiracy had no impact on bargaining, it was clear that the grievance process would not provide Plaintiffs any relief and that exhaustion was futile.[3]

---

[3] At one point, the district court suggested that an employee cannot prove that the union's grievance procedures are futile unless it first *tries* to use them. Order, RE37, PageID#1027-28. That is not the law. A plaintiff is not "required to go through meaningless grievance procedures." *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1106 (6th Cir. 1981); *accord Geddes*, 608 F.2d at 264 (explaining that, when exhaustion is excused,

The district court nevertheless disagreed that the Union was hostile to Plaintiffs' claims. It reasoned that "the conspirators" who accepted bribes and colluded with Fiat "are no longer" with the Union. Order, RE37, PageID#1026. And it reasoned that Plaintiffs could "seek redress before the Public Review Board," a supposedly independent and impartial body. *Id.* The district court faulted Plaintiffs for not pleading otherwise in their complaint. *Id.*, PageID#1025-26, 1028.

The district court's reasoning "failed to give heed to a basic principle of federal civil procedure: a plaintiff is not required to plead facts necessary to defeat an affirmative defense." *In re Fair Fin. Co.*, 834 F.3d 651, 678 (6th Cir. 2016). Failure to exhaust is an "affirmative defense." *Chapman*, 670 F.3d at 683; *Clayton*, 451 U.S. at 683; *see also Jones v. Bock*, 549 U.S. 199, 212 (2007) ("[T]he usual practice under the Federal Rules is to regard exhaustion as an affirmative defense."). Exhaustion is not an *element* of a plaintiff's claim; it is a defense that the defendant can forfeit or waive. *See, e.g.*, *Local 594, UAW v. NLRB*, 776 F.2d 1310, 1314 (6th Cir. 1985). Even when the exhaustion "defense may well prove … decisive" and is the union's "strongest argument," "it is relied upon prematurely" at the motion-to-dismiss stage. *Trail*, 542 F.2d at 968-69.

---

plaintiffs are not "required to resort to those remedies before turning to the courts for help"; "[s]uch a requirement is indeed more likely to exhaust the plaintiffs than the remedies"). The district court's rigid rule is inconsistent with the Supreme Court's refusal to "impose a universal exhaustion requirement" and its insistence that "courts have discretion to decide whether to require exhaustion." *Clayton*, 451 U.S. at 689.

The district court concluded that exhaustion was a pleading requirement based on this Court's decision in *Chapman*, which the court read as creating a circuit split with the Second, Ninth, and Tenth Circuits. *See* Order, RE37, PageID#1026 n.3, 1028. But *Chapman* was a summary-judgment case, not a motion-to-dismiss case, and all it held was that exhaustion is generally required. *See* 670 F.3d at 680, 683-85. It did not hold that plaintiffs have the burden to prove exhaustion, much less that exhaustion is a pleading requirement or an element of the plaintiff's claim. In fact, it reiterated that exhaustion is an "affirmative defense." *Id.* at 683.

Because it is an affirmative defense, exhaustion is not a basis to dismiss a complaint unless the plaintiff "plead[s] itself out of court." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); *accord Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014). In other words, it must be "clear[]"—looking only at the "face of the complaint," accepting its allegations "as true," and drawing all reasonable inferences in the plaintiff's favor—that the plaintiff "has not exhausted" and "is without a valid excuse." Wright & Miller, 5B Fed. Prac. & Proc. Civ. §1357 (3d ed.); *Jones*, 549 U.S. at 215; *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). This will be true "only in rare cases." *Aquilar-Avellaveda*, 478 F.3d at 1225.

It is not true here. Plaintiffs did not plead that "the conspirators" who accepted bribes and colluded with Fiat "are no longer" with the Union. Order, RE37, PageID#1026. Quite the opposite: Plaintiffs pleaded that several others were involved in the conspiracy, beyond the individuals identified by name. *See* Compl. ¶¶64-67, 73,

35

98, 108, 110, RE24, PageID#130-32, 135-37. These allegations are confirmed by the indictments and guilty pleas, which mention many other unindicted coconspirators. *Id.* ¶78, PageID#132. In fact, even after Iacobelli and Holiefield left—the two bad apples, according to the Union and Fiat—the bribes continued apace. The United States' criminal investigation is still ongoing, moreover, and new conspirators (like Jewell) are being exposed on a regular basis. Compl. ¶¶8-9, RE24, PageID#122. The district court thus had no basis to conclude that all the bad actors are gone. More importantly, the district court had to accept the Plaintiffs' contrary allegations as true at this stage of the case.

There was also nothing in the complaint suggesting that the "Public Review Board" could somehow cure the Union's hostility. Order, RE37, PageID#1026. Plaintiffs did not discuss the Public Review Board at all—and for good reason. If Plaintiffs had filed a grievance with the Union, the grievance would have argued that the Union had an official (though clandestine) policy of taking bribes from Fiat in exchange for employer-friendly concessions during collective bargaining. The Public Review Board could not hear this claim because it "[i]n no event … under … any … article" has "jurisdiction to review in any way an official collective bargaining policy" of the Union. UAW Const. Art. 33, §3(f), RE39-2, PageID#1068. Thus, Plaintiffs' internal appeals process would have stopped with the International Executive Board, which is not independent from the Union. *See id.* §2(b), PageID#1065. The district court missed this fact because it "jump[ed] the gun" and tried to resolve the Union's exhaustion

defense based on the complaint alone. *Rembisz*, 590 F. App'x at 504. It erred by

dismissing the complaint based on "its determination that [Plaintiffs] had failed to plead

facts" that would "defeat [an] affirmative … defense." *Fair Fin.*, 834 F.3d at 678.

## B.  Contractual Grievance Procedures

Employers can defend against a claim for breach of the collective-bargaining

agreement by arguing that the employee failed to exhaust the contractual grievance

process. But, as explained, this defense does not work against hybrid claims, since the

union's violation of the duty of fair representation excuses the employee's failure to

exhaust the contractual grievance process. *Adkins*, 769 F.2d at 336. Disagreeing, the

district court held that exhaustion is not excused unless the union "engages in unfair

representation *during the grievance process*." Order, RE37, PageID#1024. Other violations

of the duty of fair representation do not count, it reasoned. *Id.*

The district court was mistaken. True, most cases involving hybrid claims involve

the scenario that the district court described—the employer breaches the collective-

bargaining agreement, the employee asks the union to grieve the claim, and the union

either refuses or inadequately represents the employee during the grievance process. *See

id.*, PageID#1022-24 (discussing examples). But to conclude that this type of unfair

representation is the *only* kind that can excuse exhaustion is to forget the Supreme

Court's reminder that the

> words of our opinions are to be read in the light of the facts of the case
> under discussion. To keep opinions within reasonable bounds precludes
> writing into them every limitation or variation which might be suggested

by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading.

*Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

Indeed, this Court has explained that, while "the *typical* hybrid claim is based on the union's failure to properly process a grievance," the "union's alleged breach of duty" can also occur "in a nongrievance context." *Adkins*, 769 F.2d at 336 (emphasis added). After all, a union's duty of fair representation "arises both before and after the execution of a collective bargaining agreement" and "applies to all union activity," not just grievance processing. *Farmer*, 660 F.2d at 1106; *Air Line Pilots*, 499 U.S. at 67.

While not every instance of unfair representation by the union outside the grievance context will excuse the contractual exhaustion requirement, collusion with the employer certainly does. *See Glover*, 393 U.S. at 330-31; *Marlowe*, 489 F.2d at 1065; *Emswiler*, 691 F.3d at 790. The "critical question" is "whether there was collusion," not whether the Union fairly represented the plaintiff in the grievance process. *Emswiler*, 691 F.3d at 791. When "the employer and the union [have] acted in collusion to deprive [an employee] of his rights," the "conspiracy" renders the grievance process "futile" and reasonably "deter[s] him from filing such a grievance." *Desrosiers v. Am. Cyanamid Co.*, 377 F.2d 864, 870-71 (2d Cir. 1967).

In sum, given that "the union itself was involved in the alleged wrongdoing," the "use of the contractual remedies would lead to the anomalous result that … the employees' grievances would depend on the union aggressively proving its own

38

misconduct." *Parker*, 657 F.2d at 269 (cleaned up). The collusion *itself* thus makes clear that "the Union and the Company would have presented a unified front in opposition to these plaintiffs in any grievance procedure." *Id.* (cleaned up).

*    *    *    *

Two final points on exhaustion. First, failure to exhaust the contractual grievance process is a defense to a hybrid claim, but not to a standalone claim against the union for violating the duty of fair representation. *Pratt*, 939 F.2d at 390. So if the Court concludes that Plaintiffs did not allege a breach of the collective-bargaining agreement, but did allege a breach of the Union's duty of fair representation, *supra* 19, then Plaintiffs' failure to exhaust the contractual grievance process is entirely irrelevant.

Second, this Court cannot affirm the district court's decision on exhaustion alone. The district court ruled against Plaintiffs on the merits, and it dismissed their complaint with prejudice. But a dismissal based solely on exhaustion must be "without prejudice." *Chapman v. City of Detroit*, 808 F.2d 459, 462 (6th Cir. 1986). This distinction is important to Plaintiffs because it preserves their right to exhaust and refile—a right that has not yet expired because Plaintiffs have powerful arguments for equitably tolling any deadlines. Further, if this Court thinks exhaustion is a close call but ultimately disagrees with Plaintiffs' arguments, it could order the district court to "stay the present lawsuit" and "allow [Plaintiffs] to exhaust [their] administrative remedies." *LaPerriere v. UAW*, 348 F.3d 127, 131 (6th Cir. 2003).

39

### III.    Plaintiffs should at least be allowed to amend their complaint.

Because it concluded that Plaintiffs cannot sue for bribery and collusion under the federal labor laws, the district court thought that their request for leave to amend the complaint was futile. For the reasons just given, the district court was wrong about Plaintiffs' ability to sue over the misconduct alleged here. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 626 (6th Cir. 2002) ("The district court erred in refusing to allow the amendment based on its incorrect view of the [law], and we therefore reverse the district court's order denying leave to file a third amended complaint."). Plaintiffs have valid claims, and their complaint already contains enough factual detail to make those claims plausible and to put the defendants on notice.

But if this Court disagrees—if it concludes that Plaintiffs have a valid claim but need to make some additions or subtractions to the complaint before they can state it— then the Court should remand with instructions to give Plaintiffs leave to amend. Leave to amend is "freely give[n]" under the Federal Rules. Fed. R. Civ. P. 15(a)(2). "[I]t is necessary to permit the liberal amendment of complaints in order to adhere to the principle that cases should be tried on their merits rather than on the technicalities of pleading." *Fisher v. Roberts*, 125 F.3d 974, 977-78 (6th Cir. 1997) (cleaned up). Thus, the district court would abuse its discretion if it did not allow Plaintiffs to amend their complaint to "state an alternative theory for recovery," *Foman v. Davis*, 371 U.S. 178, 182 (1962), or to push it across the finish line with "more specific factual allegations,"

40

*Fisher*, 125 F.3d at 978. Such amendments would be particularly appropriate here, since new indictments and other details about the conspiracy continue to roll in.

## CONCLUSION

For all these reasons, this Court should reverse the district court's dismissal of Plaintiffs' complaint.

Respectfully submitted,

  */s/ Jeffrey M. Harris*

Raymond J. Sterling                     Jeffrey M. Harris
James Christian Baker                   Cameron T. Norris
Brian J. Farrar                         CONSOVOY MCCARTHY PARK PLLC
STERLING ATTORNEYS AT LAW, P.C.         3033 Wilson Blvd., Ste. 700
33 Bloomfield Hills Pkwy., Ste. 250     Arlington, VA 22201
Bloomfield Hills, MI 48304              (703) 243-9423
(248) 644-1500                          jeff@consovoymccarthy.com
rsterling@sterlingattorneys.com         cam@consovoymccarthy.com
jbaker@sterlingattorneys.com
bfarrar@sterlingattorneys.com

41

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 10,635 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1). This brief also complies with Fed. R. App. P. 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

 */s/ Jeffrey M. Harris*
Counsel for Appellants
Dated: March 29, 2019

42

## CERTIFICATE OF SERVICE

I certify that on March 29, 2019, a true and correct copy of this brief was filed

with the Clerk of this Court via the CM/ECF system, which will notify all counsel who

are registered CM/ECF users.

/s/ Jeffrey M. Harris

Counsel for Appellants
Dated: March 29, 2019

43

**Designation of Relevant Documents**

| Record Entry | Description | PageID# |
|---|---|---|
| 24 | Second Amended Complaint | 120 |
| 27 | Fiat's Motion to Dismiss | 146 |
| 27-1 | Declaration of David O'Brien | 187 |
| 28 | Union's Motion to Dismiss | 544 |
| 32 | Plaintiffs' Response to Motions to Dismiss | 625 |
| 32-3 | DOJ Press Release | 703 |
| 32-4 | Iacobelli Indictment | 707 |
| 32-5 | Iacobelli Plea | 750 |
| 32-6 | Brown Plea | 784 |
| 32-7 | King Plea | 799 |
| 32-8 | Mickens Plea | 828 |
| 32-9 | Union Letter | 857 |
| 32-12 | Fiat Letter | 883 |
| 34 | Fiat's Reply iso Motion to Dismiss | 889 |
| 35 | Union's Reply iso Motion to Dismiss | 957 |
| 37 | Order Granting Motions to Dismiss | 1007 |
| 39 | Plaintiffs' Motion for Reconsideration | 1038 |
| 39-2 | UAW Constitution | 1057 |
| 39-3 | Johnson Plea | 1070 |
| 39-4 | Iacobelli Sentencing Memorandum | 1100 |
| 39-5 | U.S. Sentencing Memorandum | 1126 |
| 40 | Order Denying Reconsideration | 1144 |
| 41 | Notice of Appeal | 1148 |

1a