**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE STELLANTIS N.V. SECURITIES LITIGATION | : : : : : : | 19-CV-6770 (EK) (VMS) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND**
**<u>APPROVAL TO PROVIDE NOTICE TO THE CLASS</u>**

00620769;V1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

I.    FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

    A.    Procedural History .................................................................................................3

    B.    Negotiations and the Terms of the Proposed Settlement ........................................5

II.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)......................6

    A.    Preliminary Approval Should Be Granted, and Class Notice Given, if a
         Settlement is "Fair, Reasonable, and Adequate" .......................................................6

    B.    A Settlement Should Be Preliminarily Approved if it is Procedurally and
         Substantively Fair .....................................................................................................7

    C.    Public Policy Favors Settlement of Securities Class Actions ...............................7

III.  ARGUMENT ...................................................................................................................8

    A.    The Proposed Settlement Warrants Preliminary Approval......................................8

         1.    The Settlement is Fair, Reasonable, and Adequate Pursuant to Rule
                23(e)(2) and the *Grinnell* Factors ............................................................. 8

                a)  Lead Plaintiff and Lead Counsel Adequately Represented the
                    Class ................................................................................................. 8

                b)  The Settlement Was Negotiated at Arm's Length ............................... 9

                c)  The Settlement Is an Excellent Result in Light of the Benefits of
                    the Settlement and the Risks of Continued Litigation ........................ 10

                    (i)   Risks of Proving Liability ................................................. 11

                    (ii)  Risks Relating to Loss Causation and Damages...............12

                    (iii) Effective Process for Distributing Relief.........................13

                    (iv)  The Anticipated Attorney's Fees are Reasonable.............15

                    (v)   Disclosure of Other Agreements.......................................15

                  d)  Class Members Are Treated Equitably Relative to One Another ........ 16

                  e)  The Remaining *Grinnell* Factors Support Preliminary Approval ........ 16

                      (i)   The stage of the proceedings and the amount of
                           discovery completed .........................................................16

                    (ii)  The Defendants' ability to withstand a greater
                           judgment .........................................................................17

    B.    Certification of the Settlement Class for Settlement Purposes is
         Appropriate ...............................................................................................................17

1.    The Settlement Class Meets the Requirements of Rule 23(a) .................. 18

      a) Rule 23(a)(1): Numerosity .................................................................. 18

      b) Rule 23(a)(2): Questions of Law or Fact Are Common ...................... 18

      c) Rule 23(a)(3): Lead Plaintiff's Claims are Typical............................. 19

      d) Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative .............. 20

2.    The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority ................................................................ 21

      a) Common Legal and Factual Questions Predominate .......................... 21

      b) Class Action is Superior to Other Methods of Adjudication .............. 22

3.    The Court Should Appoint Lead Counsel as Counsel for the Class ........ 23

C.    The Notice Program Satisfies Rule 23, Due Process and the PSLRA ................... 23

D.    Proposed Settlement Schedule ............................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ................................................................................................ 22

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................. 17, 21, 23

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ................................................................................................ 22

*Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................... 21

*Bourlas v. Davis Law Assocs.*,
237 F.R.D. 345 (E.D.N.Y. 2006) ........................................................................ 18

*Burns v. Falconstor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ................................................. 15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ................................................................................. 19

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................... 14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................ 7, 17

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 153 (E.D.N.Y. 2009) ........................................................................... 7

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ................................................................................... 18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................................... 10

*Darquea v. Jarden Corp.*,
2008 WL 622811 (S.D.N.Y. Mar. 6, 2008) ....................................................... 23

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ................................................................................. 17

*Ferrick v. Spotify USA Inc.*,
    2018 WL 2324076 (S.D.N.Y. 2018), *appeal dismissed sub nom.*
    *Ferrick v. Diable*, 2018 WL 6431410 (2d Cir. Oct. 9, 2018) .................................................. 25

*Fishoff v.* Coty Inc.,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)*, aff'd,*
    634 F.3d 647 (2d Cir. 2011) (2d Cir. 2011)................................................................ 12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 17, 24

*In re Agent Orange Prod. Lia*b. Litig.,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .................................. 10

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) ................................................................ 6

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016), *amended in part*,
    2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) ................................................ 15, 16

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ................................................................ 6

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ................................................................ 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................................ 8

*In re Gentiva Sec. Litig.*,
    971 F. Supp. 2d 305 (E.D.N.Y. 2013) ................................................................ 13

*In re Gilat Satellite Networks, Ltd.*,
    2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ................................................................ 16

*In re Globalstar Sec. Litig.*,
    2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ................................................................ 18, 19

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................ 17

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................ 7

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................ 18

*In re Luxotica Grp. S.p.A. Sec. Litig.*,
    2005 WL 3046686 (E.D.N.Y. Nov. 15, 2005) ................................................................. 25

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................... 17, 19, 21, 22

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................. 16, 24

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................................. 11

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................. 10

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................. 17

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ................................................................. 13

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) ................................................................. 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................. 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................. 15

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................. 18, 19

*In re Platinum & Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................................. 7

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................. 8, 20

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................. 18, 19, 20

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................................. 16

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    2005 WL 1635158 (S.D.N.Y. July 8, 2005) ................................................................. 6

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ................................................................ 20

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ...................................................................... 21

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd*,
    838 F.3d 223 (2d Cir. 2016)............................................................................. 19

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ...................................................................... 23

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ............................................................................. 21

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................. 20

*Stefaniak v. HSBC Bank USA, N.A.*,
    2008 WL 7630102 (W.D.N.Y. June 28, 2008).................................................. 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................. 7, 8, 10, 24

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ............................................................................... 17

**Rules**

Fed. R. Civ. P. 23(a)(1).......................................................................................... 18

Fed. R. Civ. P. 23(a)(2).......................................................................................... 18

Fed. R. Civ. P. 23(a)(3).......................................................................................... 19

Fed. R. Civ. P. 23(a)(4).......................................................................................... 20

Fed. R. Civ. P. 23(b)(3)............................................................................... 21, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 23, 25

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................................... 6

Fed. R. Civ. P. 23(e)(2).................................................................................... *passim*

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................... 9

00620769;V1                           -vi-

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................... 10

Fed. R. Civ. P. 23(g) ........................................................................................................ 21, 23

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................................. 23

**Other Authorities**

*Manual for Complex Litigation* §21.633 ................................................................................. 25

William B. Rubenstein, 4 *Newberg on Class Actions* § 13:44 (5th ed. 2020)................................ 7

Lead Plaintiff Nicholas S. Panitza (Lead Plaintiff), on behalf of himself and all others similarly situated, respectfully submits this memorandum in support of his unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated May 14, 2021 (the "Stipulation") filed contemporaneously herewith[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; and (iv) the scheduling of a hearing date ("Settlement Fairness Hearing") at which the Court will consider (a) final approval of the Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses and award of costs to Lead Plaintiff relating to his representation of the Class.

## PRELIMINARY STATEMENT

Defendant Stellantis N.V. f/k/a Fiat Chrysler Automobiles N.V. ("FCA" or the "Company") has agreed to pay $5 million to settle all claims in this Action on behalf of all Defendants (the "Settlement"). Lead Plaintiff respectfully submits that the Settlement is an excellent resolution of this Action.

By the time the Settlement was reached, Lead Plaintiff and Lead Counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of FCA's filings with the U.S. Securities and Exchange Commission ("SEC), public reports and news articles concerning FCA, public reports and court filings concerning the United States Department

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation.

of Justice's (the "DOJ") ongoing investigation into a bribery scheme between FCA and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), transcripts of FCA's investor calls, and consultation with a damages expert; (ii) drafted the First Amended Class Action Complaint for Violation of the Federal Securities Laws ("First Amended Complaint"), based on the investigation; (iii) opposed Defendants' motion to dismiss the First Amended Complaint; (iv) engaged in negotiations regarding the terms of the proposed Settlement; (v) reviewed hundreds of pages of documents produced by Defendants in furtherance of settlement negotiations; and (vi) drafted the Second Amended Complaint for Violation of the Federal Securities Laws ("the Second Amended Complaint") following news that FCA U.S. reached an agreement with the DOJ to resolve the DOJ's investigation into FCA's former employees and the bribery scheme at the Fiat-Chrysler National Training Center (the "NTC").

Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel, represents a favorable recovery that falls well within the range of approval, and is very likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent. Accordingly, Lead Plaintiff requests that the Court preliminarily approve the Settlement and (a) preliminarily approve the proposed settlement class ("Settlement Class"); (b) preliminarily approve the form, manner, and content of the notice of the Settlement to the Settlement Class (the "Notice Plan"); (c) preliminarily approve the plan to allocate the Settlement proceeds ("Plan of Allocation'); and (d) set relevant dates for disseminating the Notice, for Settlement Class Members to file claims, opt out of, or object to the Settlement, and to set a date for a hearing on final approval of the Settlement.

Entry of the proposed Preliminary Order will begin the process of considering final approval by authorizing notice of the Settlement to members of the Settlement Class. A final Settlement Hearing will then be conducted, after the Settlement Class has been given an opportunity to object or seek exclusion, so that the Court can make a final determination as to whether the Settlement is fair, reasonable, and adequate.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Beginning in December 2019, two class action complaints were filed in the United States District Court for the Eastern District of New York (the "Court"). The first, filed on December 2, 2019, was styled *Kong v. Fiat Chrysler Automobiles N.V., et al.*, No. 1:19-cv-06770-FB-VMS (ECF No. 1). The second, filed on January 10, 2020, was styled *Tan v. Fiat Chrysler Automobiles N.V., et al.*, No. 1:20-cv-00202 (Dkt. No. 1). Pursuant to the procedures of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), by Order dated March 10, 2020, the Court consolidated the actions, styled *In re Fiat Chrysler Automobiles N.V. Securities Litigation*, No., 1:19-cv-677 (EK) (VMS), and appointed Nicholas S. Panitza as Lead Plaintiff and Bernstein Liebhard LLP as Lead Counsel (ECF No. 21).

On June 1, 2020, Lead Plaintiff filed the First Amended Complaint, asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and alleging violations of Section 20(a) of the Exchange Act on behalf of all persons and entities that purchased FCA securities between February 26, 2016 and November 20, 2019 (ECF No. 29).

Plaintiff's allegations center on the DOJ's investigation into the bribery scheme at the NTC and the effects of the scheme on the collective bargaining process and the 2015 collective bargaining agreement ("CBA") entered into by FCA and the UAW. Specifically, the First

00620769;V1                                    -3-

Amended Complaint alleged that the Defendants misled investors by asserting that FCA was a "victim" of the bribery scheme that was carried out by former "rouge" FCA employees, when others at FCA, including FCA's former CEO, Sergio Marchionne ("Marchionne"), were not only aware of the scheme, but orchestrated it.  Additionally, the First Amended Complaint alleged that FCA misled investors by falsely claiming that the bribery scheme did not impact the 2015 CBA negotiated between FCA and the UAW.  Lead Plaintiff alleged that the truth began to emerge on November 20, 2019, when General Motors ("GM") filed a federal racketeering lawsuit against FCA, alleging that FCA's bribery scheme corrupted the collective bargaining process and that Marchionne had orchestrated the scheme to obtain a labor cost advantage over GM in the hopes of forcing a merger (the "GM Complaint").  As a result of the allegations in the GM Complaint, FCA common stock fell approximately 3.72% on November 20, 2019.

On August 21, 2020, Defendants moved to dismiss the First Amended Complaint (ECF No. 32).  On October 21, 2020, Lead Plaintiff filed his Opposition to Defendants' Motion to Dismiss (ECF No. 35).  On December 14, 2020, Defendants filed their Reply (ECF. No. 36).

On January 16, 2021, FCA completed a merger with Peugeot S.A., with FCA as the surviving company. The following day, on January 17, 2021, FCA changed its name to Stellantis N.V.  On January 25, 2021, the Court amended the case caption to *In re Stellantis N.V. Securities Litigation* (ECF No. 39).

On January 27, 2021, FCA U.S. issued a press release announcing that it reached an agreement with the DOJ to resolve the investigation into FCA's former employees and the bribery scheme at the NTC.  As part of the settlement, FCA U.S. agreed to plead guilty to one count of conspiracy to violate the Labor Management Relations Act and to pay a $30 million fine.  FCA U.S. also agreed to implement an independent compliance monitor for three years with respect to

the dissolution of the NTC and internal controls as they relate to the trusts being implemented to replace the NTC.

On January 28, 2021, Lead Plaintiff filed the Second Amended Complaint to include FCA's settlement with the DOJ and expanded the class period to February 26, 2016 through January 27, 2021 (the "Class Period") (ECF No. 42).

### B.      Negotiations and the Terms of the Proposed Settlement

In late-December 2020, following briefing on Defendants' Motion to Dismiss, Lead Counsel and Defendants began preliminary discussions regarding the possibility of a potential resolution of the Action. The Parties agreed that attempting to reach a resolution prior to a ruling on Defendants' Motion to Dismiss could be beneficial to all parties.

In furtherance of the Parities' settlement discussions, Defendants agreed to allow Lead Counsel to review hundreds of pages of documents and other information concerning the criminal investigation of FCA U.S. by the DOJ.  Between late-December 2020 and early-January 2021, Defendants produced, and Lead Counsel reviewed, over 1,600 pages of documents related to the alleged bribery scheme, the DOJ's investigation, and Lead Plaintiff's claims.

During subsequent negotiations, a settlement in principle was reached to resolve the Action. Thereafter, the Parties negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims ("Released Claims"), in return for a cash payment by Stellantis N.V. (on behalf of all Defendants) of $5,000,000 (the "Settlement Amount"), for the benefit of the Settlement Class.

## II.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

### A.    Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, and Adequate"

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc., Bond Litig.*, 296 F.R.D. 147, 153 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D 459, 464 (S.D.N.Y. 2013). Preliminary approval is merely the prerequisite for disseminating notice to class members so that they may decide whether to approve or reject the settlement. *See* Fed. R. Civ. P. 23(e)(1)(A); *see also In re Stock Exchs. Options Trading Antitrust Litig.,* 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Rule 23(e)(2) sets forth the following factors for the Court to consider:

(A)    have the class representative and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitable relative to each other.

Rule 23(e)(2) overlaps, in part, with many of the *"Grinnell"* factors traditionally considered by the Second Circuit when evaluating the fairness of proposed class action

settlements.[2]  Accordingly, any non-duplicative *Grinnell* factors must also be considered.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  As discussed below, the proposed Settlement readily satisfies both Rule 23(e) and the non-duplicative *Grinnell* factors.

**B.    A Settlement Should Be Preliminarily Approved if it is Procedurally and Substantively Fair**

When evaluating a settlement for preliminary approval, a court should consider both the "negotiating processes leading up to the settlement, *i.e.,* procedural fairness, as well as the settlement's substantive terms, *i.e.,* substantive fairness."  *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Cohen v. J.P. Morgan & Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

**C.    Public Policy Favors Settlement of Securities Class Actions**

The law favors settlement, particularly in class actions and other complex cases.  William B. Rubenstein, 4 *Newberg on Class Actions* § 13:44 (5th ed. 2020) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *see also Wal-Mart Stores,*

---

[2] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the reasonableness of the settlement fund in light of the best possibly recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

*Inc., v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context."). Due to this presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

## III.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

#### 1.   The Settlement is Fair, Reasonable, and Adequate Pursuant to Rule 23(e)(2) and the *Grinnell* Factors[3]

##### a)   Lead Plaintiff and Lead Counsel Adequately Represented the Class

Lead Plaintiff and Lead Counsel have adequately represented the interests of the Class for purposes of Rule 23(e)(2)(A). Throughout the litigation, and in connection with the Settlement, the interests of Lead Plaintiff have been fully aligned with the Class. *Wal-Mart*, 396 F.3d at 106-07 (allowing class-wide settlement where class members' claims share the same integral facts as settled claims). Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Lead Plaintiff's interests in obtaining the largest recovery possible is aligned with other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2009) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Further, Lead Plaintiff has actively contributed to the Action by overseeing the litigation, communicating with counsel, and participating in settlement discussions with Lead Counsel.

---

[3] Only two of the *Grinnell* factors that are relevant to preliminary approval are not encompassed by Rule 23(e)(2): (1) the stage of the proceedings and the amount of discovery completed at the time of the settlement; and (2) the ability of the defendants to withstand a greater judgment.

Lead Counsel is well-versed in shareholder class action litigation and securities fraud cases and is among the most experienced firms in the securities litigation field. *See* Bernstein Liebhard LLP Firm Resume, attached as Exhibit 1 to the Declaration of Stephanie M. Beige (the "Beige Decl."). Lead Counsel vigorously litigated the Action since its inception by, among other things: (i) representing Lead Plaintiff in the initial consolidation and lead plaintiff appointment process; (ii) conducting a thorough investigation of the facts underlying the First Amended Complaint, that included the review of publicly available information regarding the Company; (iii) reviewing voluminous court filings by the DOJ and associated press reports regarding the DOJ's investigation into the alleged bribery scheme; (iv) preparing the First Amended Complaint; (v) opposing Defendants' motion to dismiss; (vi) engaging in settlement negotiations; (vii) reviewing documents in connection with settlement negotiations; (viii) preparing the Second Amended Complaint; and (ix) engaging and consulting with an expert concerning damages and loss causation. Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims.

### b)  The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Here, the Settlement was result of lengthy negotiations between Lead Counsel and Defendants' Counsel over several months. The Parties first discussed the potential for settlement towards the end of December 2020 and continued negotiations until the execution of the Stipulation on May 14, 2021. Lead Counsel and Defendants' Counsel are experienced in complex securities class action litigation. Further, as discussed below, prior to agreeing to the Settlement, Lead Counsel reviewed hundreds of pages of non-public documents relating to the DOJ's investigation of FCA U.S. Accordingly, given the depth of their investigation and analysis, Lead Counsel was in an excellent position to evaluate the strength of the Settlement Class's claims and

00620769;V1                                    -9-

reach a fair and reasonable settlement.  Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable if it is reached by experienced counsel after arm's-length negotiations. *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001); *Wal-Mart,* 396 F.3d at 116; *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).

### c)  The Settlement Is an Excellent Result in Light of the Benefits of the Settlement and the Risks of Continued Litigation

When evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  The adequacy of the settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides a cash payment of $5,000,000 for the benefit of the Settlement Class.  This is an excellent result in light of the significant risks of continued litigation. The Settlement Amount provides a favorable recovery as a proportion of estimated damages for this Action.  According to Lead Plaintiff's damages expert, under the plan of allocation, the Settlement represents approximately 6.84% of the $73 million in maximum estimated damages. This percentage is above the median settlement amount as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements.  According to Cornerstone Research, the median settlement was 4.7% of damages for cases settling during a pending motion to dismiss. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2019 Review and Analysis*, Cornerstone Research (the "Cornerstone Report)

attached as Exhibit 2 to the Beige Decl. at 14. Courts in the Second Circuit have approved settlements that recovered a similar percentage of maximum damages. *See e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (finding a settlement for 6.1% of the maximum potentially recoverable damages to be "within the reasonable percentage of recoveries"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding a settlement of approximately 6.25% of estimated damages "at the higher end of the range of reasonableness of recovery in class action securities litigations.").

The $5,000,000 Settlement Amount is also favorable when compared to the median settlement amounts of similar securities class action settlements that are resolved during the motion to dismiss stage. According to the Cornerstone Report, the median settlement amount for court-approved securities class action settlements for cases settling within two years of filing was $3.3 million and the median amount for settlements during a pending motion to dismiss was $4.9 million. *See* Beige Decl., Exhibit 2 at 13-14.

### (i) Risks of Proving Liability

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation posed real risks that substantially less or no recovery at all might be achieved. At the time of the Settlement, Defendants' Motion to Dismiss the First Amended Complaint had been fully briefed.[4] While Lead Plaintiff believes the First Amended Complaint (and the Second Amended Complaint) should have been sustained, risks were shown through Defendants' motion. For example, Defendants

---

[4] If the Settlement had not been reached, Defendants would have likely moved to dismiss the Second Amended Complaint based on similar defenses asserted in their Motion to Dismiss the First Amended Complaint.

have strenuously argued, and would continue to argue, that their challenged statements were not false and misleading because the bribery scheme was orchestrated and carried out by former FCA employees and that even if the bribes were intended to impact the Company's CBA negotiations with the UAW, there is no proof that they actually did. Further, Defendants would have continued to argue that even if Lead Plaintiff could establish a material misstatement or omission, there is no evidence upon which Lead Plaintiff could prove the requisite mental state of scienter – *i.e.,* that Defendants misled investors intentionally or with extreme recklessness. The scienter requirement is regarded as the most difficult element to prove in a securities fraud claim. *See e.g., Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd* 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."). Here, Defendants are adamant that they had no knowledge of the bribery scheme nor any intent to deceive.

If the Second Amended Complaint was sustained in full (or in part), there was still the risk that a class would not be certified for all potential class members. Defendants would also likely have sought summary judgment and there was no guarantee that Lead Plaintiff would prevail against Defendants' challenges. Even if he did, there were risks regarding how the Court's rulings would affect damages or how the case would be presented to the jury.

These risks aside, discovery would have been protracted and the trial of Lead Plaintiff's claims would inevitably be long and complex and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process.

### (ii) Risks Relating to Loss Causation and Damages

Defendants have also strongly contested loss causation. Lead Plaintiff alleges losses corresponding with the filing of the GM Complaint on November 20, 2019 (a complaint which has since been dismissed), which alleged that FCA's former CEO, Defendant Marchionne, was

00620769;V1                                    -12-

complicit in the Company's bribery scheme and that FCA's bribery of UAW officials in fact influenced the terms of the CBA. Defendants contend that the allegations in the GM Complaint are immaterial as a matter of law, and thus cannot serve as a corrective disclosure. *In re Gentiva Sec. Litig.*, 971 F. Supp. 2d 305, 322 (E.D.N.Y. 2013).  Defendants have also argued that even if the allegations in the GM Complaint are material, the complaint did not reveal any "new" information because it was based on information derived from the DOJ's investigation – information which has been in the public realm for years. *See In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (a corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentation alleged in the complaint").

If Defendants were to prevail on any of the loss causation arguments, the amount of potentially recoverable damages would be severely reduced, or even cut to zero.  Even if Lead Plaintiff overcame each of these significant risks and prevailed at trial, such a victory would not guarantee the Settlement Class an ultimate recovery larger than the $5,000,000 Settlement.

In sum, the Parties disagreed on numerous complex issues of fact and law. While Lead Plaintiff and Lead Counsel believe that this case has merit, it is nevertheless true that Defendants had serious defenses that, if successful, would have resulted in the Settlement Class recovering far less than the proposed Settlement or nothing at all.  In the context of these risks, Lead Plaintiff and Lead Counsel believe that $5,000,000 is an excellent result of the Settlement Class.

### (iii) Effective Process for Distributing Relief

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  The Claims Administrator selected by Lead Counsel (subject to Court approval), JND Legal Administration, is an experienced claims administrator that will process claims under the guidance of Lead Counsel. Potential class

members will submit the Claim Form through the Settlement website or by hardcopy, if necessary. Based upon the trading information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation. Lead Plaintiff's claim will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection and cure deficiencies. Any claim disputes that cannot be resolved will be presented to the Court for determination. This claims process is similar to that typically used in securities class action settlements. *See Christine Asia Co., Ltd v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. 2019 Oct. 16, 2019) (finding a nearly identical distribution method the "type of claims processing and method for settlement proceeds is standard in securities and other class actions and is effective.").

After the Settlement reaches its Effective Date (*see* Stipulation ¶ 33) and all applicable deadlines have passed, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise) after at least six (6) months from the initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable an economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s), after payment of outstanding Notice and Administration Expenses, Taxes, and attorney's fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest. *See* Notice at ¶ 75.

**(iv) The Anticipated Attorney's Fees are Reasonable**

As set forth in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33 1/3% to compensate them for the services they have rendered to the Settlement Class.[5] The proposed attorneys' fee is reasonable in light of the work performed and the result obtained. It is also consistent with awards in similar complex class actions within the Second Circuit. *See Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *8 (E.D.N.Y. Apr. 11, 2014) (finding counsel's request of 33.3% of the settlement reasonable noting that "[c]ourts in this circuit routinely grant attorneys' fees of 30% to 33-1/3% in class action cases"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (noting that is "very common" to see 33% contingency fees in settlements less than $10 million); *Stefaniak v. HSCB Bank USA, NA.*, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (collecting cases, awarding 33% and finding it "typical in class action settlements in the Second Circuit"). The basis of Lead Counsel's fee and expense request will be detailed in their upcoming motion requesting fees and expenses.

**(v) Disclosure of Other Agreements**

The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of FCA common stock request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (noting that

---

[5] Lead Counsel will also be seeking reimbursement of Litigation Expenses of no more than $100,000 and an award of reasonable costs to Lead Plaintiff in an amount not to exceed $5,000 directly related to his representation of the Settlement Class.

"opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack the settlement in his or her own self-interest"), *amended in part* 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

### d)    Class Members Are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D). Each Authorized Claimant, including Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation, and Lead Plaintiff will be subject to the same formula for distribution of the Settlement as other Settlement Class Members on a *pro rata* basis. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13-14 (S.D.N.Y. July 21, 2020) (finding the Plan of Allocation reasonable where it distributed the Net Settlement Fund on a *pro rata* basis); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-146 (S.D.N.Y. 2010) (approving the Plan of Allocation as equitable where the Net Settlement Fund "will be allocated to Class members on a *pro rata* basis").

### e)    The Remaining *Grinnell* Factors Support Preliminary Approval

#### (i)    The stage of the proceedings and the amount of discovery completed

Lead Counsel conducted an exhaustive investigation into the DOJ's case against former FCA and UAW employees implicated in the multi-year bribery scheme, reviewing thousands of pages of publicly available information relevant to Lead Plaintiff's claims. Additionally, prior to agreeing to the Settlement, Lead Counsel reviewed hundreds of pages of non-public documents from the Defendants relating to the DOJ's investigation of FCA. The mere fact that the Settlement has been achieved before formal discovery does not weigh against preliminary approval. *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007)

("Although little formal discovery has been completed, Lead Counsel … has obtained a number of internal documents, and all parties have conducted extensive research. . . .").

### (ii)  The Defendants' ability to withstand a greater judgment

A defendant's ability to withstand a judgement greater than that secured by settlement, generally, is not one of the determining factors.  *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'").  Here, the Settlement was not driven by any concern about FCA's ability to pay.  Where "ability to pay is not a factor in the settlement," it "does not weigh either for or against approval." *Id.* at 340.

### B.    Certification of the Settlement Class for Settlement Purposes is Appropriate

As part of the Settlement, Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class (as defined in ¶ 1(nn) of the Stipulation).  The Second Circuit has long acknowledged that certifying a class solely for the purposes of a class action settlement is proper.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements, involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (citations omitted).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denny v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). However, "whether trial would present intractable management problems … is not a consideration when settlement-only certification is requested." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593

00620769;V1                                     -17-

(1997).

### 1.     The Settlement Class Meets the Requirements of Rule 23(a)

#### a)       Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joiner of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  In the Second Circuit, numerosity is presumed when a class consists of 40 or more members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009).  "While 'a precise quantification of [the] class is not required, some evidence … or [a] reasonabl[e] estimate [of] the number of class members' must be provided."  *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006) (ellipses and alterations in original).  "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by showing that a large number of shares were outstanding and traded during the relevant period."  *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class is comprised of purchasers of FCA and STLA common stock, which traded actively on the New York Stock Exchange ("NYSE") under the ticker symbols "FCAU" and "STLA" during the Class Period.  According to the Company's 2019 Annual Report issued on February 25, 2020, FCA had 1,567,519,274 shares of common stock outstanding. These shares were purchased by thousands of investors, making joinder impracticable.

#### b)       Rule 23(a)(2): Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In securities fraud cases, the commonality requirement is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentation and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *In re Globalstar Sec. Litig.*, 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact

in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues.").

Here, the central questions of whether the alleged misstatements and omissions regarding the scope of the bribery scheme, whether FCA obtained favorable labor concessions because of the scheme, and whether Defendants acted with the requisite mental state, are the same for all members of the Settlement Class. Accordingly, questions of law and fact are common to all Settlement Class members. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

<strong>c)      Rule 23(a)(3): Lead Plaintiff's Claims are Typical</strong>

Rule 23(a)(3) requires that the claims of the class representative be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "each class member's claim arises from the same course of events, and each class member make similar legal argument to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *accord Pfizer,* 282 F.R.D. at 44; *Sadia*, 269 F.R.D. at 304-05. "Typical" does not mean "identical." *Marsh & McLennan,* 2009 WL 5178546, at *10. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.*

Here, Lead Plaintiff's claims are typical of those of the Settlement Class. Like other Settlement Class Members, Lead Plaintiff purchased public traded FCA or STLA common stock during the Class Period on a U.S. Exchange and claims to have suffered damages based on the alleged misrepresentations and omissions that Defendants made to the investing public during the

00620769;V1                                            -19-

Class Period.  Thus, any Settlement Class Member's claim arising from these misrepresentations will rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

### d)      Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by: (i) whether the claims of the proposed class representatives conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.,* 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014); *Sadia*, 269 F.R.D. at 305. Both prongs of the adequacy test are met here.

First, Lead Plaintiff has and will continue to represent the interests of the Settlement Class fairly and adequately.  There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class. Lead Plaintiff and Settlement Class Members  purchased FCA and/or STLA common stock during the Class Period and were injured by the same alleged false statements and omissions.  Thus, Lead Plaintiff and the Settlement Class's interests are aligned as they share the common objective of maximizing their recovery from Defendants. *See In re Polaroid*, 240 F.R.D. at 77 ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representative and other class members.").

Second, Lead Plaintiff has proved his adequacy by retaining qualified counsel. Lead Counsel has extensive experience in complex securities litigation and class action proceedings

00620769;V1                                                    -20-

throughout the United States. Lead Counsel is well qualified and able to conduct the Action and have ably and effectively represented Lead Plaintiff and the proposed Settlement Class throughout the Action.[6]

### 2. The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority

#### a) Common Legal and Factual Questions Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "readily met" in securities class action claims. *Amchem*, 521 U.S. at 625.  Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citations omitted).  In making this determination "a court's inquiry is directed toward whether the issue of liability is common to members of the class." *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) (quoting *Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999).  "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." 235 F.R.D. at 240.  Thus, "if the liability issue is common to the class, common questions are held to predominate over individual questions." *Marsh & McLennan*, 2009 WL 5178546, at *11.

Here, common questions of law and fact predominate over individual questions because the alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (*i.e*. through public statements made to the market). "[T]hese issues [are] susceptible of

---

[6] Accordingly, Lead Counsel satisfies the Class Counsel requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See* ECF No. 21.

generalized proof and, accordingly the predominance requirement of Rule 23(b)(3) is satisfied."
*Marsh & McLennan*, 2009 WL 5178546, at *11.

Moreover, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims are predicated upon omissions of material fact which there was a duty to disclose, or alternatively based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson,* 485 U.S. 224, 241-42 (1988). Applying the *Affiliated Ute* or *Basic* presumptions dispenses with the requirement that each Settlement Class Member prove individual reliance on the alleged misstatements or omissions. *See id.* Here, where FCA and STLA common stock was traded on the NYSE, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. *See* Second Amended Complaint ¶ 280.

### b) Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method if litigation: "(A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P 23(b)(3).

Here, there is no evidence that putative class members' desire to bring separate individual actions, and the Parties are unaware of any individual securities fraud litigation involving the same issues. Further, resolution of this case through a class action is far superior to litigating (and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 187 (S.D.N.Y. 2008) (finding a

00620769;V1                                          -22-

class action to be superior in securities actions because "multiple lawsuits would be inefficient and costly" where the "number of potential plaintiffs is high, but the amount of potential recovery per plaintiff is not so high as to ensure that each plaintiff could or would bring an action individually."); *see also Darquea v. Jarden Corp.*, 2008 WL 622811, at \*5 (S.D.N.Y. Mar. 6, 2008) ("Securities suits easily satisfy the superiority requirement.").[7]

### 3.    The Court Should Appoint Lead Counsel as Counsel for the Class

A court that certifies a class must also appoint class counsel pursuant to Fed. R. Civ. P. 23(g).  Rule 23(g) directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigations, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Lead Counsel has done considerable work identifying and investigating potential claims in this matter, as evidenced by the First and Second Amended Complaints. The firm has also devoted substantial time, effort, and resources to the prosecution of this Action.  For these reasons, among others, Lead Plaintiff respectfully requests that the Court appoint Lead Counsel to serve as Class Counsel.

### C.    The Notice Program Satisfies Rule 23, Due Process and the PSLRA

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are

---

[7] Since this is a request for class certification for settlement purposes only, the Court need not perform the Rule 23(b)(3). inquiry into whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

open to them in connection with the proceedings. *Wal-Mart,* 396 F.3d at 114.

Lead Counsel proposes to provide Settlement Class Members notice by (i) mailing a copy of the Postcard Notice to all potential Settlement Class Members who can reasonably be identified and located using information provided by FCA's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily*; (iii) dissemination of the Summary Notice on the internet using *PR Newswire*; and (iv) posting the Internet Notice on both the Settlement website and Lead Counsel's website. Sending the Postcard Notice by first-class mail, combined with the publication of the Summary Notice in a major publication and posting the Internet Notice on the Claims Administrator's website is typical of the notice provided in other class actions and satisfies the requirements of Rule 23 and due process. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. at 145; *In re Advanced Battery*, 298 F.R.D. at 183 n.3 ("[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."). Accordingly, the proposed notice program is reasonably calculated to apprise Class Members of the pendency of the Action and afford them an opportunity to present their objections.

In addition to the proposed methods of providing notice, the form and substance of the notice program are also sufficient. The proposed forms of notice describe the terms of the Settlement; the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and litigation expenses that may be sought; the procedure for requesting exclusion from the Settlement Class, objecting and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Fairness Hearing.

The Internet Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable even if Lead Plaintiff prevailed on each of his claims; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis); (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; (v) the reasons why the Parties are proposing the Settlement; and (vi) other information as may be required by the Court. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).[8]

Thus, the proposed Notice provides the information required under the PSLRA and courts have found notice substantially similar to that provided for in this Settlement constituted the "best notice practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B). *See Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *3 (S.D.N.Y. 2018), *appeal dismissed sub nom. Ferrick v. Diable*, 2018 WL 6431410 (2d Cir. Oct. 9, 2018) (finding notice that included, *inter alia*, mailing, publication, a press release, and a settlement website satisfied Rule 23); *In re Luxottica Grp. S.p.A., Sec. Litig.,* 2005 WL 3046686, at *2 (E.D.N.Y. Nov. 15, 2005) (approving notice program consisting of mailing notice and publication of summary notice); *see also general Manual for Complex Litigation* §21.633.

Lead Counsel has carefully drafted the notice provision of the Settlement to provide the best notice practicable to the Settlement Class. Accordingly, Lead Counsel respectfully submits that the Internet Notice, the Postcard Notice, and the Summary Notice, as well as the Claim Form

---

[8] Lead Plaintiff also requests that the Court appoint JND Legal Administration as the Claims Administrator to provide all notices approved by the Court to the Settlement Class Members, to process Claims Forms, and to administer the Settlement.

(Exhibits 1 - 4 to the proposed Preliminary Approval Order), are adequate.

**D.     Proposed Settlement Schedule**

The Court's entry of the proposed Preliminary Approval Order would, among other things, (i) certify, for settlement purposes, this Action as a class action; and (ii) direct notice of the Proposed Settlement to all members of the Class.  As such, the Preliminary Approval Order sets a proposed schedule for issuing notice, and deadlines for submitting claims and/or objecting to the Settlement or opting out of the Settlement Class.

Lead Plaintiff proposes the following schedule for notice, final approval hearing and related dates:

| Event | Proposed Timing |
|---|---|
| Mailing of the Postcard Notice to Settlement Class Members (Preliminary Approval Order, ¶ 7(b) and (c)) and the posting of Internet Notice and Proof of Claim Form on a website dedicated to the Settlement. | Within 20 business days after entry of the order preliminarily approving the Settlement (the "Notice Date") |
| Summary Notice published (Preliminary Approval Order, ¶ 7(d)) | Within 10 business days after the Notice Date |
| Settlement Fairness Hearing (Preliminary Approval Order, ¶ 5) | To be determined by the Court, a date not less than 120 calendar days from the entry of the order preliminarily approving the Settlement |
| Deadline to request exclusion from the Settlement Class (Preliminary Approval Order, ¶ 13) | 21 calendar days prior to the Settlement Fairness Hearing |
| Deadline to submit Claim Forms (Preliminary Approval Order, ¶ 10) | 90 calendar days after the Notice Date |
| Deadline for Lead Plaintiff to file papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 27) | 35 calendar days prior to Settlement Fairness Hearing |
| Deadline for Objections to the Settlement, Plan of Allocation, Attorneys' Fees and Lead Plaintiff Award (Preliminary Approval Order, ¶ 16) | 21 calendar days prior to the Settlement Fairness Hearing |

| Deadline for Lead Plaintiff to file reply papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 27) | 7 calendar days prior to the Settlement Fairness Hearing |
|---|---|

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) holding that the manner and forms of notice satisfy due process and prove the best notice practicable under the circumstances, and ordering that the Notice be provided to the Settlement Class; (iii) setting a date for the Settlement Fairness Hearing; (iv) appointing JND Legal Administration as Claims Administrator; (v) preliminarily certifying the Settlement Class and appointing Lead Counsel as Class Counsel; (vi) granting such other and further relief as may be required.

DATED: May 14, 2021                    Respectfully submitted,

**BERNSTEIN LIEBHARD LLP**

By: /s/ Stephanie M. Beige
　　Stanley D. Bernstein
　　Stephanie M. Beige
　　Peter J. Harrington
　　10 East 40th Street
　　New York, NY  10016
　　Telephone: (212) 779-1414
　　Facsimile: (212) 779-3218
　　bernstein@bernlieb.com
　　beige@bernlieb.com
　　pharrington@bernlieb.com

　　*Lead Counsel for Lead Plaintiff and the Proposed Class*

00620769;V1                    -27-