## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| : |  |
| IN RE STELLANTIS N.V. | 19-CV-6770 (EK) (VMS) |
| SECURITIES LITIGATION : |  |
| : |  |
| : |  |
| : |  |

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

This Stipulation and Agreement of Settlement, dated May 14, 2021 (the "Stipulation"), is entered into by and among (i) Court-appointed Lead Plaintiff Nicholas S. Panitza ("Lead Plaintiff"), on behalf of himself and the other members of the Settlement Class (as defined below in ¶ 1(nn)), and (ii) Defendants Stellantis N.V. f/k/a Fiat Chrysler Automobiles N.V. ("FCA," "FCA NV," or the "Company"), Roland Iseli and Alessandro Baldi, as Co-Executors for the Estate of Sergio Marchionne, Michael Manley and Richard K. Palmer (the "Individual Defendants"; collectively, "Defendants"; together with Lead Plaintiff, on behalf of himself and the other members of the Settlement Class, the "Parties"), by and through their respective counsel, and embodies the terms and conditions of the settlement of the above-captioned action ("Action").[1] Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally and forever compromise, settle, release, resolve and dismiss with prejudice the Action and all Released Plaintiffs' Claims (defined below) against the Defendants' Releasees (defined below).

---

[1] All terms with initial capitalization not otherwise defined in this paragraph shall have the meanings ascribed to them in ¶ 1 herein.

WHEREAS:

A.     On December 2, 2019, Jung Kyoon Kong filed a putative class action in this Court against Defendants alleging violations of the federal securities laws, styled *Kong* v. *Fiat Chrysler Automobiles N.V., et al.* (the "*Kong* Action").

B.     On January 13, 2020, Jennifer H. Tan filed a putative class action in this Court against Defendants alleging violations of the federal securities laws, styled *Tan* v. *Fiat Chrysler Automobiles N.V., et al.* (the "*Tan* Action").

C.     On January 31, 2020, Lead Plaintiff filed a Motion to Consolidate Related Actions, for Appointment as Lead Plaintiff and Approval of Counsel, seeking (i) to consolidate the *Kong* Action and the *Tan* Action, (ii) to be appointed as Lead Plaintiff, and (iii) to appoint Bernstein Liebhard LLP as Lead Counsel.

D.     On March 10, 2020, the Court issued an Order consolidating the *Kong* Action and the *Tan* Action and, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, appointing Nicholas S. Panitza as Lead Plaintiff and Bernstein Liebhard LLP as Lead Counsel in the consolidated action, styled *In re Fiat Chrysler Automobiles N.V. Securities Litigation*, No. 1:19-cv-6770 (E.D.N.Y.) (EK) (VMS).

E.     On March 27 and April 21, 2020, the Court entered Orders setting a schedule for Lead Plaintiff to file an amended complaint and for Defendants to answer, move to dismiss or otherwise respond to the amended complaint.

F.     On June 1, 2020, Lead Plaintiff filed the First Amended Class Action Complaint for Violation of the Federal Securities Laws (the "First Amended Complaint") alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5

promulgated thereunder against Defendants, and alleging violations of Section 20(a) of the Exchange Act against the Individual Defendants.

G.      On August 21, 2020, Defendants filed their Motion to Dismiss the First Amended Complaint.  On October 21, 2020, Lead Plaintiff filed his Opposition, and Defendants filed their Reply on December 14, 2020.

H.      In December 2020, following the completion of briefing of Defendants' Motion to Dismiss, Lead Counsel and counsel for Defendants commenced preliminary discussions regarding a potential resolution of the Action.  As part of those discussions, for settlement purposes only, Defendants provided Lead Counsel with hundreds of pages of documents and other information Lead Counsel requested regarding the criminal investigation of FCA's U.S. affiliate, FCA US LLC ("FCA US"), by the U.S. Department of Justice ("DOJ").

I.      On January 16, 2021, the previously announced merger transaction between Peugeot S.A. and FCA NV was completed, with FCA NV as the surviving company.  On January 17, 2021, FCA NV changed its name to Stellantis N.V.

J.      On January 25, 2021, the Court granted Defendants' application to amend the case caption to "*In re Stellantis N.V. Securities Litigation*."

K.      On January 27, 2021, FCA US pleaded guilty to one count of conspiracy to violate the Labor Management Relations Act, 18 U.S.C. § 371, 29 U.S.C. §§ 186(a)(2) & (d)(1).  The terms of the Plea Agreement included, among other things, a $30 million fine and a three-year monitorship.

L.      On January 28, 2021, Lead Plaintiff filed the Second Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Second Amended Complaint") alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder

against Defendants, and alleging violations of Section 20(a) of the Exchange Act against the Individual Defendants.

M. Thereafter, following additional analysis, discussions and negotiations, the Parties reached agreement on the terms of a resolution of the Action and the Released Plaintiffs' Claims against the Defendants' Releasees.

N. The Parties to this Stipulation have fully considered and discussed at length the factors described above, among others—including, for example, the strengths and weaknesses of Defendants' dismissal arguments as they apply to the Second Amended Complaint in light of FCA US's guilty plea—and have made a calculated decision that, in recognition of the inherent risks and costs of continued litigation and the benefits of resolving this litigation, including to the Settlement Class, the Parties desire to settle and resolve the Action and the Released Plaintiffs' Claims against the Defendants' Releasees.

O. This Stipulation (together with the exhibits hereto and the Supplemental Agreement) reflects the final and binding agreement between the Parties, and is intended to be enforceable and binding upon the Parties immediately upon execution, notwithstanding any future Court approvals contemplated herein.

P. Lead Plaintiff, through his counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the other Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company and the other Defendants; (v) documents and

information regarding the DOJ's criminal investigation of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), the National Training Center, FCA US, and former FCA US employees; (vi) pleadings filed in other litigations concerning the events underlying the Second Amended Complaint; (vii) documents produced by the Defendants regarding the DOJ's investigation of FCA US; (viii) FCA US's guilty plea; and (ix) the applicable law governing the claims and potential defenses. Based upon their investigation, Lead Plaintiff and his counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiff and the Settlement Class, and in their best interests. Based on Lead Plaintiff's direct oversight of the prosecution of this matter and with the advice of his counsel, Lead Plaintiff has agreed to settle and release the Released Plaintiffs' Claims (as defined below in ¶ 1(ii)) pursuant to the terms and provisions of this Stipulation, after considering, among other things: (i) the financial benefit that members of the Settlement Class will receive under the proposed Settlement; and (ii) the significant risks and costs of continued litigation, including as a result of Defendants' dismissal arguments.

Q.     This Stipulation constitutes a compromise of all matters that are in dispute between the Parties. The Parties are entering into this Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation. All of the Defendants deny, and continue to deny, any and all allegations of fault, liability, wrongdoing or damages whatsoever, including, without limitation, any allegation that they have committed any act or omission giving rise to any liability under the Exchange Act or Rule 10b-5 promulgated thereunder. Specifically, Defendants have expressly denied, and continue to deny, that Lead Plaintiff has asserted any valid claims against them, including, without limitation, any liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. Defendants have also denied,

and continue to deny, among other allegations, the allegations that Lead Plaintiff or the members of the Settlement Class have suffered any damages, or that Lead Plaintiff or the Settlement Class were harmed by the conduct alleged in the Action or that they could have alleged as part of the Action. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

R.      As set forth below, neither the Settlement nor any of the terms of this Stipulation shall be construed or deemed to be evidence of or an admission, concession or finding on the part of any of the Defendants with respect to any claim or allegation of any fault, liability, wrongdoing or damages whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

S.      Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of Defendants' defenses to liability had any merit. Each of the Parties recognizes and acknowledges that the Action has been initiated, filed and prosecuted by Lead Plaintiff in good faith and defended by Defendants in good faith, and that the Action is being voluntarily settled with the advice of counsel. Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted. However, Lead Plaintiff and his counsel recognize the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Lead Counsel is also mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action. Based on their

evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation is in the best interests of the Settlement Class.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Lead Plaintiff (individually and on behalf of all members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendants' Releasees and all Released Defendants' Claims as against the Plaintiffs' Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

## **DEFINITIONS**

1.      As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)      "Action" means *In re Stellantis N.V. Securities Litigation*, No. 1:19-cv-6770-EK-VMS, pending in the U.S. District Court for the Eastern District of New York before the Honorable Eric R. Komitee.

(b)      "Alternative Judgment" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Stipulation.

(c)      "Authorized Claimant" means a Settlement Class Member who or which submits to the Claims Administrator a Claim Form that is approved by the Court for payment from the Net Settlement Fund.

(d)      "Claim" means a paper claim submitted on a Proof of Claim Form or an electronic claim that is submitted to the Claims Administrator.

(e)     "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit A-3, that a Claimant must complete and submit to the Claims Administrator in order to be eligible to share in a distribution of the Net Settlement Fund.

(f)     "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the Net Settlement Fund.

(g)     "Claims Administrator" means JND Legal Administration, the firm retained by Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to Settlement Class Members and to administer the Settlement.

(h)     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed to Authorized Claimants.

(i)     "Class Period" means the period of time between February 26, 2016 and January 27, 2021, both dates inclusive.

(j)     "Court" means the United States District Court for the Eastern District of New York.

(k)     "Defendants" means the Company, Roland Iseli and Alessandro Baldi, as Co-Executors for the Estate of Sergio Marchionne, Michael Manley and Richard K. Palmer.

(l)     "Defendants' Counsel" means the law firm Sullivan & Cromwell LLP.

(m)     "Defendants' Releasees" means Defendants, together with their past, present or future affiliates (including FCA US), divisions, joint ventures, assigns, assignees, direct or indirect parents or subsidiaries, controlling shareholders, successors, predecessors and entities in which a Defendant has a controlling interest, and each of their past, present, or future officers, directors, agents, employees, partners, members, attorneys, controlling shareholders, advisors, investment advisors, auditors, accountants, insurers (including reinsurers and co-insurers) and

Immediate Family members, and the legal representatives, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, successors in interest or assigns of any of the foregoing.  For the avoidance of doubt, Defendants' Releasees expressly includes Sergio Marchionne, the Estate of Sergio Marchionne, and Roland Iseli and Alessandro Baldi as Co-Executors of the Estate of Sergio Marchionne.

(n)     "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 33 of this Stipulation have been met and have occurred, or have been waived.

(o)     "Escrow Account" means an account maintained at Signature Bank, 261 Madison Avenue, New York, NY 10016, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

(p)     "Escrow Agent" means Lead Counsel.

(q)     "Fee and Expense Application" means Lead Counsel's application for an award of attorneys' fees and payment of Litigation Expenses incurred in prosecuting this Action.

(r)     "Final," with respect to the Judgment or, if applicable, the Alternative Judgment, or any other court order means:  (i) if no appeal is filed, the expiration date of the time provided for filing or noticing of any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the Judgment, Alternative Judgment or order; or (ii) if there is an appeal from the Judgment, Alternative Judgment or other court order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the Judgment, Alternative Judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date

of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to:  (i) attorneys' fees, costs or expenses; or (ii) the plan of allocation for the Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude the Judgment or, if applicable, the Alternative Judgment, from becoming Final.

(s)     "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, sisters-in-law and any persons (other than a tenant or employee) sharing the household.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

(t)     "Internet Notice" means the Internet Notice of (i) Pendency of Class Action and Proposed Settlement; (ii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (iii) Settlement Fairness Hearing, to be published substantially in the form attached hereto as Exhibit A-2.

(u)     "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, entered by the Court approving the Settlement.

(v)     "Lead Counsel" means Bernstein Liebhard LLP.

(w)     "Lead Plaintiff" means Nicholas S. Panitza.

(x)     "Litigation Expenses" means the reasonable costs and expenses incurred by Lead Counsel in connection with commencing, prosecuting and settling the Action, for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

(y)      "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by

the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court.

(z)     "Notice" means the publication of the Internet Notice, the publication of Summary Notice, and the mailing of the Postcard Notice.

(aa)    "Notice and Administration Costs" means the costs, fees and expenses that are reasonably and actually incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notice to Settlement Class Members; and (ii) administering the Settlement, including, but not limited to, the Claims process, as well as the reasonably and actually incurred costs, fees and expenses incurred in connection with the Escrow Account.

(bb)    "Parties" means Defendants and Lead Plaintiff, on behalf of himself and the Settlement Class.

(cc)    "Plaintiffs' Releasees" means (i) Lead Plaintiff, his attorneys and all other Settlement Class Members; (ii) the current and former parents, affiliates, subsidiaries, successors, predecessors, assigns and assignees of each of the foregoing in (i); and (iii) the current and former officers, directors, Immediate Family members, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, agents, affiliates, insurers, reinsurers, predecessors, successors, assigns and advisors of each of the persons or entities listed in (i) and (ii), in their capacities as such.

(dd)    "Plan of Allocation" means the proposed plan set forth in the Internet Notice to be used to determine the allocation of the Net Settlement Fund, in substantially the same form as set forth in the Internet Notice or as subsequently modified.

(ee)    "Postcard Notice" means the "Postcard Notice of Proposed Settlement of Class Action and Settlement Fairness Hearing, Motion for Attorneys' Fees and Reimbursement of Expenses," to be mailed substantially in the form attached hereto as Exhibit A-1.

(ff)    "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided.

(gg)    "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

(hh)    "Released Defendants' Claims" means any and all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that arise out of or relate in any way to the institution, prosecution or settlement of the claims asserted in the Action.  "Released Defendants' Claims" does not include (i) any claims relating to the enforcement of the Settlement; or (ii) any claims against any person or entity who or which submits a request for exclusion from the Settlement that is accepted by the Court ("Excluded Defendants' Claims").

(ii)    "Released Plaintiffs' Claims" means any and all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of

every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Lead Plaintiff or any other member of the Settlement Class (i) asserted in the Action, or (ii) could have asserted in any court or forum that arise out of or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions asserted in the Action and that relate to the purchase, acquisition or ownership of shares of FCA or STLA common stock on (and for ownership, shares resulting from a purchase or acquisition on) the New York Stock Exchange or any other securities exchange located in the United States ("U.S. Exchange") or otherwise in a transaction in the United States, during the Class Period.  "Released Plaintiffs' Claims" does not include (i) any claims relating to the enforcement of the Settlement, or (ii) any claims of any person or entity who or which submits a request for exclusion from the Settlement that is accepted by the Court ("Excluded Plaintiffs' Claims").  For the avoidance of doubt, this release is not a general release of any and all claims, including those unrelated to the allegations, transactions, facts, matters or occurrences, representations or omissions asserted in the Action.

(jj)    "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiffs' Releasees.

(kk)   "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

(ll)    "Settlement" means the settlement on the terms and conditions set forth in this Stipulation.

(mm) "Settlement Amount" means five million dollars ($5 million) in cash to be paid pursuant to ¶ 8 of this Stipulation.

(nn)   "Settlement Class" or "Settlement Class Member" means the putative class of all persons or entities who or which purchased or otherwise acquired, on a U.S. Exchange or in a transaction in the United States, FCA or STLA common stock between February 26, 2016 and January 27, 2021, both dates inclusive, including as a result of the January 16, 2021 merger between FCA and Peugeot S.A.  Excluded from the Settlement Class are: (i) Defendants; (ii) current and former officers and directors of the Company and members of their immediate families; (iii) the legal representatives, heirs, successors or assigns of such excluded person or entity; and (iv) any entity in which Defendants have or had a controlling interest.  Also excluded from the Settlement Class are those persons who are found by the Court to have timely and validly requested exclusion from the Settlement, if any.

(oo)   "Settlement Fairness Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

(pp)   "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

(qq)   "Stipulation" means this Stipulation and Agreement of Settlement.

(rr)   "Summary Notice" means the Summary Notice of (i) Pendency of Class Action and Proposed Settlement; (ii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (iii) Settlement Fairness Hearing, substantially in the form attached hereto as Exhibit A-4, to be published as set forth in the Preliminary Approval Order.

(ss)   "Taxes" means: (i) all federal, state, and/or local taxes of any kind (including any interest or penalties thereon) arising with respect to any income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Releasees or their counsel with respect to any income earned by the Settlement Fund for any period after the deposit of the

Settlement Amount in the Escrow Account during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (ii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

(tt)    "Tax Expenses" means the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns for the Settlement Fund).

(uu)    "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant does not know or suspect to exist in his or its favor at the time of the release of such claims.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment or the Alternative Judgment, if applicable, shall have, expressly waived, the provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties acknowledge that they may hereafter discover facts in addition to or different from those which he or it or their counsel now knows or believes to be true with respect to the subject

matter of the Released Claims, but, upon the Effective Date, Lead Plaintiff and Defendants shall expressly settle and release, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment or the Alternative Judgment, if applicable, shall have, settled and released, any and all Released Claims without regard to the subsequent discovery or existence of such different or additional facts.  Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members shall be deemed by operation of the Judgment or the Alternative Judgment, if applicable, to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

### SCOPE AND EFFECT OF SETTLEMENT

2.     The obligations incurred pursuant to this Stipulation are:  (i) subject to approval by the Court and the Judgment, or Alternative Judgment, reflecting such approval becoming Final; and (ii) in full and final disposition of (a) the Action as against all Defendants, and (b) all Released Claims.

3.     For purposes of this Settlement only, the Parties agree to: (i) certification of the Action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Settlement Class as defined in ¶ 1(nn); the appointment of Lead Plaintiff as Class Representative for the Settlement Class; and (iii) the appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g).

4.     Promptly upon execution of this Stipulation, Lead Plaintiff will move for preliminary approval of the Settlement, certification of the Settlement Class, and the scheduling of a hearing for consideration of, *inter alia*, final approval of the Settlement, certification of the Settlement Class, and Lead Counsel's Fee and Expense Application.  Lead Plaintiff's motion for preliminary approval shall be unopposed by Defendants.  Concurrently with the motion for

preliminary approval, Lead Plaintiff shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

5.     Pursuant to the Judgment, or the Alternative Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Plaintiffs' Claims on behalf of any Settlement Class Member, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim against the Defendants' Releasees, and shall forever be barred and enjoined from commencing, instituting, maintaining, prosecuting or continuing to prosecute any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees, in this Action or in any other proceeding.  This Release shall not apply to any Excluded Plaintiffs' Claims.

6.     Pursuant to the Judgment, or the Alternative Judgment, if applicable, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims on behalf of the Defendants, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against the Plaintiffs' Releasees, and shall forever be barred and enjoined from commencing, instituting, maintaining, prosecuting or continuing to prosecute any or all of the

Released Defendants' Claims against any of the Plaintiffs' Releasees, in this Action or in any other proceeding.  This Release shall not apply to any Excluded Defendants' Claims.

7.      Notwithstanding ¶¶ 5-6 above, nothing in the Judgment, or the Alternative Judgment, if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or Alternative Judgment, if applicable.

## THE SETTLEMENT CONSIDERATION

8.      In consideration of the full settlement of the claims asserted in the Action against Defendants and the Defendants' Releasees and the Releases specified in ¶¶ 2-7 above, the Company (on behalf of all Defendants) shall pay, or cause to be paid, the Settlement Amount into the Escrow Account as follows:

(a)      Within two (2) business days after the issuance of the Preliminary Approval Order, Lead Counsel shall provide Defendants' Counsel wiring instructions for the Settlement Amount, the payee's Form W-9, and any other information reasonably required by Defendants to process payment of the Settlement Amount; and

(b)      Within twenty (20) business days after the issuance of the Preliminary Approval Order, the Company shall wire, or shall cause to be wired, the Settlement Amount into the Escrow Account.

9.      Once the Settlement Amount is deposited by the Company, the Company shall have no right to the return of such funds except as provided in the termination provisions in ¶¶ 35, 40 below.

10.      With the sole exception of the Company's obligation to secure payment of the Settlement Amount into the Escrow Account as provided for in ¶ 8, the Company's obligation pursuant to ¶ 21, and Defendants' obligation pursuant to ¶ 43, Defendants and Defendants'

Counsel shall have no responsibility for, interest in, or liability with respect to:  (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

11.     Defendants' sole monetary obligation under the Settlement, including in connection with the provision and administration of notice and the administration of the Settlement and any costs associated therewith (except for the provision of notice pursuant to CAFA as detailed in ¶ 43 hereof) and any attorneys' fees or costs awarded by the Court, is the Settlement Amount, and Defendants shall not be liable for any other amount or amounts.

## USE OF SETTLEMENT FUND

12.     The Settlement Fund shall be used to pay:  (a) any Taxes and Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) any other costs or fees approved by the Court.  Under no circumstances will Defendants (or any of the other Defendants' Releasees) be required to pay more than the Settlement Amount.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 20-31 below.

13.     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow

Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed, or returned, pursuant to the terms of this Stipulation and/or further order of the Court.  Lead Counsel, as the Escrow Agent, shall invest any funds in the Escrow Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a United States Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC"), (b) secured by instruments backed by the full faith and credit of the United States Government, or (c) invested in a bank account in a bank with at least $50 billion in assets.  Lead Counsel, as the Escrow Agent, shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates.  All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

14.     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation.  The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulations § 1.468B-1.  All provisions of this Stipulation shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1.  Upon written request, one or more of Defendants will provide to Lead Counsel the statement described in Treasury Regulations § 1.468B-3(e).  In addition, the Escrow Agent shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph 14, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly

prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur.  Consistent with the foregoing:

(a)     For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) of this paragraph 14.

(b)     All Taxes shall be paid out of the Settlement Fund.  In all events, Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any Tax Return or other document with the Internal Revenue Service or any other state or local taxing authority.  Defendants shall have no liability or responsibility for the taxes of the Escrow Account with respect to the Settlement Amount or the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority.

(c)     Taxes with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court or approval by Defendants.  The Escrow Agent shall be obligated (notwithstanding

anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(a)(2)).   The Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary, to carry out the provisions of this paragraph 14.

15.     The Settlement is not a claims-made settlement.   Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including, without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

16.     Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable; *provided*, *however*, that Lead Counsel may pay up to only $150,000 in Notice and Administration Costs prior to the Settlement Fairness Hearing without further Court approval. Additional sums for this purpose prior to the Effective Date may be paid from the Settlement Fund upon agreement of the Parties or order of the Court.   Following the Settlement Fairness Hearing, Lead Counsel may pay amounts for Notice and Administration Costs over $150,000 without further Court approval.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Postcard Notice, publishing and hosting the Internet Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Postcard Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims

Administrator in connection with providing Notice and administering the Settlement (including processing submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Defendants' Releasees or any other person or entity who or which paid any portion of the Settlement Amount.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

17.     Lead Counsel will apply to the Court for an award of reasonable attorneys' fees to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses.  Lead Counsel's Fee and Expense Application is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation.

18.     The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid from the Settlement Fund to Lead Counsel within five days of such award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final.  Lead Counsel shall make the appropriate refund or repayment in full no later than thirty (30) calendar days after:

(i) receiving from Defendants' Counsel notice of the termination of the Settlement; or (ii) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final.  The procedure for, the allowance or disallowance of, and the amount of any attorneys' fees and/or Litigation Expenses are not necessary terms of this Stipulation, are not conditions of the Settlement embodied herein, and shall be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.  Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses, and any appeal from any order awarding attorneys' fees and/or Litigation Expenses or any reversal or modification of any such order shall not affect or delay the finality of the Judgment or Alternative Judgement.

19.     Defendants and Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.  The attorneys' fees and Litigation Expenses that are awarded to Lead Counsel shall be payable solely from the Settlement Fund.  With the sole exception of the Company's obligation to cause the Settlement Amount to be paid into the Escrow Account pursuant to ¶ 8 above, the Defendants' Releasees shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or Litigation Expenses to Lead Counsel pursuant to this Stipulation, or for any other attorneys' fees and/or Litigation Expenses incurred by or on behalf of any other Settlement Class Member in connection with this Action or the Settlement.

## NOTICE AND SETTLEMENT ADMINISTRATION

20.     As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including, but not limited to, the process of receiving, reviewing and approving or denying Claims, under

Lead Counsel's supervision and subject to the jurisdiction of the Court.  Other than Defendants' obligation to provide Lead Counsel or the Claims Administrator with FCA's common stock records as provided in ¶ 21 below, none of Defendants, nor any of the other Defendants' Releasees, shall have any involvement in or any responsibility, authority or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiff, any other Settlement Class Members or Lead Counsel in connection with the foregoing.  Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

21.     In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to issue Notice and make Proof of Claim Forms available to those members of the Settlement Class as may be identified through reasonable effort.  Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.  For the purposes of identifying and providing notice to the Settlement Class, within ten (10) calendar days after entry of the Preliminary Approval Order, the Company shall provide or cause to be provided to Plaintiff's Counsel or the Claims Administrator, at no cost to the Settlement Fund, Plaintiff's Counsel or the Claims Administrator, a list, in electronic form, of record holders of FCA and STLA common stock during the Class Period obtained from FCA's U.S. transfer agent (consisting of names and addresses, as well as e-mail addresses if available), to the extent that such information is reasonably available.

22.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or in part, and second, each Authorized Claimant's pro rata share of the Net Settlement Fund as calculated pursuant to the proposed Plan of Allocation set forth in the Internet Notice attached hereto as Exhibit A-2 (or such other plan of allocation as the Court approves).

23.     The Plan of Allocation proposed in the Internet Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation approved in this Action.  Defendants and the other Defendants' Releasees shall not object in any way to Lead Plaintiff's Plan of Allocation or any other plan of allocation in this Action.  No Defendant, nor any other Defendants' Releasees, shall have any involvement with or liability, obligation or responsibility whatsoever for the application of the Court-approved plan of allocation.

24.     Any member of the Settlement Class who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment or, the Alternative Judgment, if applicable, to be entered in the Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant or Defendants' Releasee with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

25.     Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.   No Defendant, or any other Defendants' Releasees, shall be permitted to review, contest or object to any Claim, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim, nor shall any Defendant or Defendants' Releasee have any responsibility for, interest in, or liability for any decision.   Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claims submitted in the interests of achieving substantial justice.

26.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Claimant shall be required to submit a Claim in paper form or electronic form, substantially in the form attached hereto as Exhibit A-3 in accordance with the instructions for the submission of such Claims, and supported by such documents as are designated therein, including proof of the Claimant's claimed loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Claims must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.   Any Settlement Class Member who fails to submit a Claim by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any of the

Defendants or the Defendants' Releasees with respect to any Released Plaintiffs' Claim.  A Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)     Each Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)     Claims that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning

a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

27.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure; *provided*, *however*, that such investigation and discovery shall be limited to that Claimant's status as member of the Settlement Class and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claims.

28.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order:   (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

29.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing, commencing, instituting, maintaining, prosecuting or continuing to prosecute any action, claim or other proceeding of any kind against any of the

Defendants or the Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims.

30.     No person or entity shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator or any other agent designated by Lead Counsel, or Defendants, the Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court.   Lead Plaintiff and Defendants, and their respective counsel, Lead Plaintiff's damages consultant/expert, and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation or payment of any Claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes (including interest and penalties) of Tax Expenses owed by the Settlement Fund, or any losses incurred in connection therewith.

31.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment or Alternative Judgment.   All Settlement Class Members, other Claimants, and the Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.   If, after all claims have been processed and after the Court has finally approved the Settlement, any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net

Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be redistributed, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution, to Settlement Class Members who have cashed their checks and who would receive at least $10.00 from such redistribution.  If any funds shall remain in the Net Settlement Fund six months after such redistribution, then such balance shall be contributed to a nonsectarian, not-for-profit charitable organization serving the public interest.

## TERMS OF THE JUDGMENT

32.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

33.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 4 above;

(b)     the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

(c)     the Company has not exercised its option to terminate the Settlement pursuant to the provisions of this Stipulation;

(d)     Plaintiff has not exercised his option to terminate the Settlement pursuant to the provisions of this Stipulation; and

(e)      the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final, or the Court has entered an Alternative Judgment with the consent of all Parties, and the Alternative Judgment has become Final.

34.      If the Settlement Amount is not paid into the Escrow Account in accordance with ¶ 8 of this Stipulation, then Lead Plaintiff, in his sole discretion, shall have the right, following 72 hours' written notice to Defendants, to terminate the Settlement and Stipulation by providing written notice of termination to Defendants prior to the Court's entry of Final Judgment. Defendants shall have a period of 72 hours after Lead Plaintiff provides written notice of his intent to terminate the Settlement and Stipulation in which to cure the noncompliance with ¶ 8 of this Stipulation. If Defendants cure such noncompliance within that 72-hour period, then Lead Plaintiff shall not have the right to terminate the Settlement and Stipulation.

35.      In addition to the foregoing, the Company shall also have the right to terminate the Settlement in the event the Opt-Out Threshold (defined below) has been reached.

(a)      Simultaneously herewith, Lead Plaintiff and Defendants are executing a "Supplemental Agreement" setting forth certain conditions under which this Settlement may be withdrawn or terminated at Defendants' sole discretion if Settlement Class Members who meet certain criteria exclude themselves from the Settlement (the "Opt-Out Threshold"). The Supplemental Agreement shall not be filed with the Court, except that the Supplemental Agreement and/or its contents may be brought to the attention of the Court, *in camera*, if so requested by the Court or as otherwise ordered by the Court. The Parties will keep the terms of the Supplemental Agreement confidential, except if compelled by judicial process to disclose them.

36.     Upon the occurrence of all of the events referenced in ¶ 33 above, any and all remaining interest or right of Defendants or any other Defendants' Releasees in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Releases herein shall be effective.

37.     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiff, the Parties shall jointly move the Court to vacate and set aside the Releases given and the Judgment or Alternative Judgment, if applicable, entered in favor of Defendants and the other Defendants' Releasees pursuant to this Stipulation, in which event the Releases and Judgment, or Alternative Judgment, if applicable, shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 39(b) below, Lead Counsel shall promptly return any attorneys' fees and Litigation Expenses received pursuant to ¶ 18 above, plus accrued interest at the same net rate as is earned by the Settlement Fund, and any cash amounts in the Settlement Fund (less any Taxes and Tax Expenses paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided in ¶ 39 below.

38.     The Company warrants and represents that, as to the payments made or to be made on behalf of it, at the time of entering into this Stipulation and at the time of such payment it, or to the best of its knowledge any persons or entities contributing to the payment of the Settlement

Amount, was not "insolvent" within the meaning of 11 U.S.C. § 101(32).  This representation is made by the Company and not by its counsel.

39.     If (i) the Company exercises its right to terminate the Settlement as provided in this Stipulation or the Supplemental Agreement; (ii) Lead Plaintiff exercises his right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)     the Settlement and the relevant portions of this Stipulation shall be canceled and terminated;

(b)     Lead Plaintiff and Defendants shall revert to their respective positions in the Action as of the date immediately prior to the execution of this Stipulation;

(c)     the terms and provisions of this Stipulation, with the exception of this ¶ 39 and ¶¶ 16, 18, 41 and 59, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or Alternative Judgment, if applicable, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*; and

(d)     Within fourteen (14) calendar days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 18 above), less any Notice and Administration Costs actually incurred, paid, or payable, and less any Taxes and Tax Expenses paid, due, or owing, shall be returned by the Escrow Agent to the Company (or such other persons or entities as the Company may direct).  In the event that the funds received by Lead Counsel consistent with ¶ 18 above have not been refunded to the Settlement Fund within the fourteen (14) calendar days specified in this paragraph, those funds

shall be refunded by the Escrow Agent to the Company (or such other persons or entities as the Company may direct) immediately upon their deposit into the Escrow Account consistent with ¶ 18 above.

40.     It is further stipulated and agreed that Lead Plaintiff, on the one hand, and the Company, on the other hand, shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation within fourteen (14) calendar days of:  (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the United States Supreme Court; or (e) the date upon which an Alternative Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the United States Supreme Court, and the provisions of ¶ 39 above shall apply. However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment or Alternative Judgment, if applicable, and shall not be grounds for termination of the Settlement.

## NO ADMISSION OF WRONGDOING

41.     Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor any

proceedings taken pursuant to or in connection with this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)      shall be offered against any of the Defendants or the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Defendants or the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants or the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants or the Defendants' Releasees, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)      shall be offered against Lead Plaintiff, the Settlement Class, or any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by Lead Plaintiff, the Settlement Class, or any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants or the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount, or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against Lead Plaintiff or any of the Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided*, *however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## MISCELLANEOUS PROVISIONS

42.     All of the exhibits attached hereto, except any plan of allocation to the extent incorporated in those exhibits, are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

43.     Pursuant to the Class Action Fairness Act ("CAFA"), no later than ten (10) calendar days after the Stipulation is filed with the Court, the Company, at its own cost, shall serve proper notice of the proposed Settlement upon those who are entitled to notice pursuant to CAFA.

44.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiff and any members of the Settlement Class against Defendants and the Defendants' Releasees with respect to the Released Plaintiffs' Claims. Accordingly, Lead Plaintiff and his counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure, or of 28 U.S.C. § 1927, or otherwise make any accusation of wrongful or actionable conduct by any other Party, relating to the institution, prosecution, defense, or settlement of this Action. The Parties agree that the amounts

paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

45.     In all events, Lead Plaintiff and his counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

46.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of both Lead Plaintiff and Defendants (or their successors-in-interest).

47.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

48.     Pending approval of the Court of this Stipulation and its exhibits, all proceedings in this Action shall be stayed and all members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

49.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

50.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

51.     This Stipulation, its exhibits and the Supplemental Agreement constitute the entire agreement among Lead Plaintiff and Defendants concerning the Settlement and this Stipulation and its exhibits.  All Parties acknowledge that no other agreements, representations, warranties or inducements have been made by any Party hereto concerning this Stipulation or its exhibits other than those contained and memorialized in such documents.

52.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tiff image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

53.     This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, limited liability company or other entity into or with which any Party hereto may merge, consolidate or reorganize.

54.     The construction, interpretation, operation, effect and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

55.     Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

56.     This Stipulation is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation. Accordingly, this Stipulation shall not be construed more strictly against one Party than another

merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties.

57.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

58.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

59.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

| | |
|---|---|
| If to Lead Plaintiff or Lead Counsel: | Bernstein Liebhard LLP<br>Attn:  Stephanie M. Beige<br>10 East 40th Street<br>New York, NY  10016<br>Telephone:  (212) 779-1414<br>Facsimile:  (212) 779-3218<br>Email:  beige@bernlieb.com |
| If to Defendants or Defendants' Counsel: | Sullivan & Cromwell LLP<br>Attn: William B. Monahan<br>125 Broad Street<br>New York, NY  10004-2498<br>Telephone:  (212) 558-4000<br>Facsimile:  (212) 558-3588<br>Email:  monahanw@sullcrom.com |

60.     Except as otherwise provided herein, each Party shall bear its own fees and costs.

61.     All agreements made during the course of this Action relating to the confidentiality of information shall survive this Settlement.

62.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual members of the Settlement Class is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Stipulation to be executed,

by their duly authorized attorneys, as of May 14, 2021.

**BERNSTEIN LIEBHARD LLP**

/s/ Stephanie M. Beige

Stanley D. Bernstein
Stephanie M. Beige
Peter J. Harrington
10 East 40th Street
New York, New York 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email:  bernstein@bernlieb.com
     beige@bernlieb.com
     pharrington@bernlieb.com

*Attorneys for Plaintiff*

**SULLIVAN & CROMWELL LLP**

/s/ William B. Monahan

William B. Monahan
Thomas C. White
Joshua S. Levy
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email:  monahanw@sullcrom.com
     whitet@sullcrom.com
     levyjo@sullcrom.com

*Attorneys for Defendants*