UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE STELLANTIS N.V. SECURITIES LITIGATION | : : : : : : : | 19-CV-6770 (EK) (MMH) <br><br> CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF
ALLOCATION AND CERTIFICATION OF SETTLEMENT CLASS**

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................ 1

I.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

    A.  Factual Allegations and Procedural History ......................................... 3

    B.  The Negotiation of the Settlement and its Terms ................................. 4

    C.  Preliminary Approval and Notice to the Settlement Class ..................... 5

ARGUMENT ..................................................................................................... 5

II.   STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT ...................... 5

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE 8

    A.  Lead Plaintiff and Lead Counsel Adequately Represented the Class............. 8

    B.  The Settlement Was Negotiated at Arm's-Length........................................ 9

    C.  The Relief Provided by the Settlement is Adequate ..................................... 10

        1.  The Risks of Establishing Liability at Trial..................................... 11

        2.  The Risks of Establishing Loss Causation and Damages at Trial ... 13

        3.  The Settlement Eliminates the Additional Costs and Delay of Continued Litigation ..................................................................... 14

        4.  The Proposed Method for Distributing Relief is Effective............. 15

        5.  Lead Counsel's Request for Attorneys' Fees Is Reasonable .......... 16

        6.  The Parties Have No Other Agreements Besides Opt-Outs ........... 17

    D.  The Settlement Ensures Settlement Class Members Are Treated Equitably. 17

    E.  The Settlement Satisfies the Remaining *Grinnell* Factors............................ 18

        1.  The Lack of Objections to Date Supports Final Approval ............. 18

        2.  Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement.................................................. 18

        3.  Maintaining Class-Action Status Through Trial Presents a Substantial Risk ................................................................................ 20

        4.  Defendants' Ability to Withstand a Greater Judgment................... 20

IV.  THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ............................ 20

V.   CERTIFICATION OF THE SETTLEMENT CLASS .......................................... 22

       A.   The Settlement Class Meets the Requirements of Rule 23(a) ........................ 22

           1.   Rule 23(a)(1): Numerosity ............................................................. 22

           2.   Rule 23(a)(2): Questions of Law or Fact Are Common .................. 23

           3.   Rule 23(a)(3): Lead Plaintiff's Claims are Typical ........................ 23

           4.   Rule 23(a)(4): Lead Plaintiff is an Adequate Representative .......... 24

       B.   The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority ....................................................................... 25

CONCLUSION ................................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................................ 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States,*
406 U.S. 128 (1972)........................................................................................................ 25

*Amchem Prods., Inc.v. Windsor,*
521 U.S. 591 (1997)........................................................................................................ 25

*Basic v. Levinson*,
485 U.S. 224 (1988)........................................................................................................ 25

*Burns v. FalconStor Software, Inc.,*
No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) .......................... 20, 21

*Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) ........................................................................................... 23

*Charron v. Pinnacle Grp. NY LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) *aff'd sub. nom.*

*Charron v. Weiner,*
31 F.3d 241 (2d Cir. 2013) .............................................................................................. 9

*Charron v. Weiner,*
731 F.3d 241 (2d Cir. 2013) ............................................................................................ 9

*Christine Asia Co., Ltd. v. Yun Ma,*
No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).......... 11, 16, 17

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ........................................................................................... 1, 6

*City of Providence v. Aeropostale, Inc.,*
No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)

*aff' d sub nom.*

*Arbuthnot v. Pierson*, 607 App'x 73, 74 (2d Cir. 2015)__ ................................................. 18

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) ............................................................................................. 22

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,*
502 F.3d 91 (2d Cir. 2007) ............................................................................................. 8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ......................................................................................... 7

*Darquea v. Jarden Corp.*,
   No. 06 Civ. 722 (CLB), 2008 WL 622811 (S.D.N.Y. Mar. 6, 2008) ...................................... 26

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................ 13

*Fishoff v. Coty Inc.*,
   No. 09 Civ. 628(SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 603 F. 3d 647 (2d Cir. 2011) ............................................................................................................. 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)................................................................................................ 20

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) .................................................................................. 18

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................................ 11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................... 5, 19, 22

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ. 1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004)...................................... 14, 15

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......................................................................... 15

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................... 18, 20

*In re BofI Holdings, Inc., Secs. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ..................................................................................... 13

*In re China Sunergy Sec. Litig.*,
   No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 10

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) .................................... 7

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) ...................................................................................... 24

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)......................................... 14

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS) (SMG) 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................... 19

*In re Global Crossing Sec. Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 11, 13, 14

*In re Globalstar Sec. Litig.*,
2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ........................................................... 23

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................... 11, 18, 22

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) .......................................................................... 21

*In re Marsh & McLennan, Cos., Inc. Sec. Litig.*,
No. 04 C9v. 8144 (CM) 2009 WL 5178546. (S.D.N.Y. Dec 23, 209) .............................. 24, 25

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................................. 10

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................... 20

*In re Omnicom Grp. Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) ............................................................................... 13

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ......................................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................. 6

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................ 23

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2009) ............................................................................. 8

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ........................................................................... 23

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................ 17

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............................... 14

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 12

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713(PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .................................... 5

*Mikhlin v. Oasmia Pharm. AB*,
No. 19CV4349-NGG-RER, 2021 WL 1259559 (E.D.N.Y Jan. 6, 2021) ............................... 16

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ................................................................. 14, 15

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................... 24

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) .................................... 7

*Thompson v. Metro Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................. 6

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .......................... 19, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................. 5, 9, 11, 18

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ................................................................. 22

*Yuzary v. HSBC Bank, USA, N.A.*, 12 Civ. 3693(PGG),
2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................................. 7

**Docketed**

*Enriquez v. Nabriva Therapeutics PLC*,
No. 19-cv-04183-VM-GWG (E.D.N.Y. May 14, 202118 ......................................... 16

*Mikhlin v. Oasmia Pharmaceutical AB*,
No. 19-CV-4349-NGG-RER (E.D.N.Y. May 24, 2021) .................................... 16, 17

*Murphy III v. JBS S.A.*,
No. 17-cv-03084-ILG-RER (E.D.N.Y. July 22, 2019) ........................................ 16

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................. 25

**Rules**

Fed R. Civ. P. 23(a)(1) ........................................................................................................ 22

Fed R. Civ. P. 23(a)(2) ........................................................................................................ 23

Fed R. Civ. P. 23(a)(3) ........................................................................................................ 23

Fed R. Civ. P. 23(a)(4) ........................................................................................................ 24

Fed R. Civ. P. 23(b)(3) ........................................................................................................ 22

Fed R. Civ. P. 23(e)(1) ...................................................................................................... 2, 5

Fed R. Civ. P. 23(e)(1)(B) ..................................................................................................... 2

Fed R. Civ. P. 23(e)(2) ..................................................................................................... 1, 6, 7

Fed R. Civ. P. 23(e)(2)(C)(i) ........................................................................................... 10, 15

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................................. 16

Fed R. Civ. P. 23(e)(2)(C)(iv) .............................................................................................. 16

Fed R. Civ. P. 23(e)(3) ...................................................................................................... 6, 17

Fed R. Civ. P. 23(g) ............................................................................................................. 25

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure,[1] Lead Plaintiff Nicholas S. Panitza ("Lead Plaintiff"), on behalf of himself and the Settlement Class, respectfully submits this memorandum in support of his motion for final approval of the proposed settlement ("Settlement"), plan of allocation, and certification of the Settlement Class as set forth in the Stipulation and Agreement of Settlement dated May 14, 2021 (the "Stipulation") (ECF No. 50).[2]

## INTRODUCTION

The Settlement provides a significant recovery of $5 million in cash to resolve all claims in this Action.  The Settlement represents an excellent result for the Settlement Class given the risks inherent in this litigation, and easily satisfies Rule 23(e)(2) and the Second Circuit's "*Grinnell*" factors. *City* of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement was achieved after arm's-length negotiations between the Parties and is the product of Lead Plaintiff's extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the litigation on behalf of the Settlement Class.  Over the course of this Action, Lead Counsel and Lead Plaintiff have come to appreciate the strengths and weaknesses of the claims asserted against Stellantis N.V. f/k/a Fiat Chrysler Automobiles N.V. ("FCA" or the "Company"), and strongly believe that the Settlement represents the best possible result for the Settlement Class.

By the time the Settlement was reached, Lead Counsel had, among other things, (i) conducted a comprehensive examination of the United States Department of Justice's (the

---

[1] "Rule" refers to the Federal Rules of Civil Procedure.

[2] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation. All exhibits referenced herein are attached to the Declaration of Stephanie M. Beige in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Settlement Class; and (II) Lead Counsel's Motion for Attorneys' Fees and Expenses (the "Beige Decl."), filed concurrently with this motion.

"DOJ") ongoing investigation of the multi-year bribery scheme involving the Fiat-Chrysler National Training Center (the "NTC"), FCA U.S., and union officials at the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"); (ii) reviewed and analyzed FCA's filings with the U.S. Securities and Exchange Commission ("SEC"), public reports and news articles concerning FCA, and transcripts of FCA's investor calls; (iii) prepared a detailed First Amended Class Action Complaint for Violation of the Federal Securities Laws ("FAC"), based on the investigation; (iv) opposed Defendants' motion to dismiss the FAC; (v) consulted with a damages expert on loss causation and damages; (vi) engaged in settlement negotiations which included the review of internal FCA documents concerning the bribery scheme and the DOJ's investigation; and (vii) drafted the Second Amended Complaint for Violation of the Federal Securities Laws ("SAC"). As a result, Lead Counsel had a thorough understanding of the claims and defenses asserted in the Action, along with the risks of establishing liability and damages.

On October 15, 2021, Magistrate Judge Marcia M. Henry preliminarily approved the Settlement pursuant to Rule 23(e)(1) and authorized notice of the Settlement to the Settlement Class. In accordance with Rule 23(e)(1), this decision was based on a showing that the Settlement "will likely earn final approval after notice and an opportunity to object" and that the Settlement Class can be certified. *See* ECF No. 60; *see also* Rule 23(e)(1)(B) and 2018 Advisory Notes Rule 23(e)(1). To date, no Settlement Class Member has objected to the Settlement or opted out of the Settlement. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

00670747;V3                                                           2

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations and Procedural History

In December 2019 and January 2020, two securities class actions were filed in this District on behalf of the investors who now form the Settlement Class. Beige Decl., ¶¶ 21-22. Pursuant to the procedures of the Private Securities Litigation Reform Act (the "PSLRA"), by Order dated March 10, 2020, the Court consolidated the actions under the caption *In re Fiat Chrysler Automobiles N.V. Securities Litigation*, No. 1:19-cv-677 (EK) (VMS), and appointed Mr. Panitza as Lead Plaintiff and Bernstein Liebhard LLP as Lead Counsel (ECF No. 21). *Id*., ¶ 24.

On June 1, 2020, Lead Plaintiff filed the FAC alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, against FCA and the Individual Defendants[3] on behalf of all persons and entities that purchased FCA securities between February 26, 2016 and November 20, 2019 (ECF No. 29). *Id*., ¶ 5.   The FAC's allegations center on the DOJ's investigation into a bribery scheme involving the NTC, FCA U.S., and union officials at the UAW that took place from 2009 through 2015. Specifically, Lead Plaintiff alleged that the Defendants misled investors by falsely representing: (i) that the bribery scheme had no effect on the 2015 collective bargaining agreement ("CBA") entered into between FCA and the UAW; and (ii) that FCA was a "victim" of the scheme. Lead Plaintiff alleged that the truth began to emerge on November 20, 2019, when General Motors ("GM") filed a federal racketeering lawsuit against FCA, alleging that FCA's bribery scheme corrupted the collective bargaining process and that Marchionne orchestrated the scheme to obtain a labor cost advantage over GM in the hopes

---

[3]   The Individual Defendants are Sergio Marchionne ("Marchionne"), Michael Manley ("Manley"), and Richard Palmer ("Palmer") (together with FCA, the "Defendants").

of forcing a merger (the "GM Complaint"). As a result of the GM Complaint, FCA stock fell approximately 3.72% on November 20, 2019. *See* Beige Decl., ¶¶ 14-19.

On August 21, 2020, Defendants moved to dismiss the FAC (ECF No. 32). On October 21, 2020, Lead Plaintiff filed his Opposition to Defendants' Motion to Dismiss (ECF No. 35). Defendants filed their Reply in Support of their Motion to Dismiss the FAC on December 14, 2020 (ECF No. 36). In January 2021, FCA completed a merger with Peugeot S.A., and on January 25, 2021, the case caption was amended to *In re Stellantis N.V. Securities Litigation* to reflect the Company's name change (ECF No. 39). *See* Beige Decl., ¶¶ 27-30.

On January 27, 2021, FCA U.S. announced an agreement with the DOJ to resolve the investigation into the bribery scheme at the NTC. As part of the settlement, FCA U.S. agreed to plead guilty to one count of conspiracy to violate the Labor Management Relations Act and to pay a $30 million fine. FCA U.S. also agreed to implement an independent compliance monitor for three years with respect to the dissolution of the NTC and internal controls as they relate to the trusts being implemented to replace the NTC. *See* Beige Decl., ¶ 20.

On January 28, 2021, Lead Plaintiff filed the SAC to include FCA's settlement with the DOJ and extending the class period to February 26, 2016 through January 27, 2021 (the "Class Period") (ECF No. 42). *Id.*, ¶ 32.

**B.   The Negotiation of the Settlement and its Terms**

In late December 2020, after briefing on Defendants' motion to dismiss was completed, the Parties began exploring the possibility of a settlement and agreed that attempting to reach a resolution prior to a ruling on the motion could be beneficial to all parties.  In furtherance of the discussions, Defendants provided Lead Counsel with over 1,600 pages of internal FCA documents concerning FCA's investigation of the bribery scheme. *See* Beige Decl., ¶¶ 33-34.

The Parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a dismissal with prejudice of all claims asserted against all Defendants in the Action in return for a cash payment of $5 million (the "Settlement Amount") for the benefit of the Settlement Class. *Id.*, ¶ 5.

**C.   Preliminary Approval and Notice to the Settlement Class**

On October 15, 2021, Magistrate Judge Marcia M. Henry preliminarily approved the Settlement pursuant to Rule 23(e)(1) after briefing and a telephonic hearing. Beige Decl., ¶ 37. Since that time, the Claims Administrator has implemented the notice program to notify the Settlement Class of their rights. As more fully set forth by the Claims Administrator in the Declaration of Luiggy Segura Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions, notice has been given to the Settlement Class as required by the Preliminary Approval Order. *See* Beige Decl., Ex. 1 at ¶ 2. To date, there have been no requests for exclusion and no objections to the Settlement. Beige Decl., ¶¶ 43-44.

**ARGUMENT**

**II.   STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT**

As a matter of public policy, settlement is strongly favored. *See McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) ("Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits.") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014).[4] The Second Circuit has instructed that, while a court

---

[4] All internal quotations and citations are omitted unless otherwise noted.

should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

Rule 23(e) requires court approval for any class action settlement after assessing whether the proposed Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Under the Federal Rules, a court reviews a settlement using four factors.  *Id*. These are whether:

> (A)      the class representatives and class counsel have adequately represented the class;
> (B)      the proposal was negotiated at arm's length;
> (C)      the relief provided for the class is adequate, taking into account:
> > i.      the costs, risks, and delay of trial and appeal;
> > ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > iii.      the terms of any proposed award of attorneys' fees, including timing of payment; and
> > iv.      any agreement required to be identified under Rule 23(e)(3); and
> (D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P 23(e)(2).

Further, in the Second Circuit, a determination of whether a settlement is fair, adequate and reasonable is guided by the overlapping *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinnell* Factors").

For a settlement to be deemed fair, reasonable and adequate, every factor need not be satisfied. "[R]ather, the court should consider the totality of these factors in light of the particular

circumstances." *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Additionally, "[a]bsent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Yuzary v. HSBC Bank, USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).

As set forth in Lead Plaintiff's unopposed motion for preliminary approval of the Settlement (ECF No. 48) and the Preliminary Approval Order (ECF No. 60),[5] the Settlement meets all of the requirements imposed by Rule 23(e)(2). Courts have noted that satisfaction of these factors are easily met where, as here, little has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]"). As there has been no change in circumstances that negatively affect this Settlement since the Preliminary Approval Order was granted, final approval is warranted.

---

[5] "The Court finds, pursuant to Rule 23 of the Federal Rules of Civil Procedure, that it will likely be able to certify the Settlement Class for purposes of the proposed Settlement. Specifically, the Court finds that each element requirement for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met or will likely be met for purposes of the proposed Settlement[.]" ECF No. 60 at 2.

III.   **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

A.   **Lead Plaintiff and Lead Counsel Adequately Represented the Class**

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007). Here, Lead Plaintiff's interest in obtaining the largest recovery possible is directly aligned with the interests of other Settlement Class Members. *See In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2009) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

The Court appointed Nicholas S. Panitza as Lead Plaintiff after finding he was the "most adequate plaintiff" to represent the Settlement Class. *See* ECF No. 21.  Mr. Panitza is an attorney and an investment banker. Mr. Panitza actively contributed to the litigation by communicating with Lead Counsel, overseeing the litigation, reviewing drafts of the pleadings and motions, and participating in settlement discussions with Lead Counsel. *See* Beige Decl., Ex. 3 at ¶¶ 11-13.

In addition, throughout the Action, Lead Plaintiff benefited from the advice of knowledgeable counsel well-versed in shareholder class action and securities fraud litigation. Bernstein Liebhard LLP is among the most experienced and skilled firms in the securities litigation field and has a long and successful track record, serving as lead counsel in many high profile and influential cases. *See* Beige Decl., Ex. 3 at A (Bernstein Liebhard LLP Firm Resume).

Lead Counsel has vigorously litigated the Action since its inception by, among other things, (i) conducting a comprehensive investigation that included the review and analysis of FCA's SEC filings, public reports and news articles concerning FCA, court filings concerning

00670747;V3                                                8

the DOJ's investigation into the bribery scheme between FCA and the UAW, and transcripts of FCA's investor calls; (ii) preparing the FAC and SAC; (iii) opposing Defendants' motion to dismiss the FAC; (iv) engaging in negotiations regarding the terms of the proposed Settlement; (v) analyzing documents produced by Defendants in furtherance of settlement negotiations; and (vi) engaging and consulting with an expert concerning loss causation and damages. Beige Decl., ¶ 8. Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims. Accordingly, both Lead Plaintiff and Lead Counsel adequately represented the Settlement Class.

### B. The Settlement Was Negotiated at Arm's-Length

Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *See, e.g., Wal-Mart,* 396 F.3d at 116 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel"); *Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub. nom. Charron v. Weiner*, 731 F.3d 241 (2d Cir. 2013).

Here, the Settlement resulted from lengthy negotiations between the Parties over several months. Both Lead Counsel and Defendants' counsel are experienced in complex securities class action litigation. Further, prior to agreeing to the Settlement, Lead Counsel reviewed internal, FCA documents relating to the bribery scheme and the DOJ's investigation. At the conclusion of this process, Lead Counsel believes that this is a fair and reasonable settlement. Accordingly, this factor weighs in favor of final approval.  Beige Decl., ¶¶ 33-34, 46-47.

00670747;V3                                                    9

**C. The Relief Provided by the Settlement is Adequate**

Rule 23(e)(2)(C)(i) overlaps with the first, fourth, fifth, eighth and ninth *Grinnell* factors, as they address the substantive fairness of the Settlement when compared to the risks posed by continuing litigation.[6] As set forth below, these factors all weigh in favor of final approval.

The $5 million Settlement provides a favorable recovery of approximately 6.84% of the $73 million in maximum estimated damages. Beige Decl., ¶ 61.  This percentage is above the median settlement amount as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median settlement was 4.9% of damages for cases settling during a pending motion to dismiss. *See* Beige Decl., Ex. 2 at 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2020 Review and Analysis*, Cornerstone Research).  Indeed, courts in this Circuit have approved settlements that recovered similar, or smaller, percentages of maximum damages than here. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762-64 (2d Cir. 2020) (finding recovery of  6.1% of the maximum potentially recoverable damages to be "within the reasonable percentage of recoveries"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding recovery of approximately 6.25% of estimated damages "at the higher end of the range of reasonableness of recovery in class action securities litigations."); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses).

---

[6] The relevant *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the risks of establishing liability; (3) the risks of establishing damages; (4) the range of reasonableness of the settlement fund in light of the best possible recovery; and (5) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

00670747;V3                                           10

This Settlement when viewed as a percentage of maximum recoverable damages is likely even more favorable to the Settlement Class because Lead Plaintiff's $73 million estimate would be subject to formidable challenges. As described below, proving loss causation and damages posed serious risks to recovery.  The adequacy of the Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191-92 (S.D.N.Y. 2012) (same). Thus, the Court "must examine whether the settlement amount lies within a 'range of reasonableness,' which range reflects 'the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* at 191 (quoting *Wal-Mart*, 396 F.3d at 119).

As set forth below, had Lead Plaintiff continued litigating the Action, he would have to overcome many difficult challenges. Given this uncertainty, settling the Action at this juncture will provide the Settlement Class with the best possible result. Accordingly, this factor weighs heavily in favor of the Court granting final approval of the Settlement.

### 1.  The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).  Further, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval.  Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts have long recognized that such litigation is notably difficult and notoriously uncertain.'" *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019).

Although Lead Plaintiff believes that the claims asserted in the FAC are meritorious, he recognizes that continued litigation posed real risks that substantially less – or no recovery at all – would be recovered had the litigation continued. At the time of the Settlement, Defendants' motion to dismiss the FAC had been fully briefed and, while Lead Plaintiff believes his claims should have been sustained, risks were shown through Defendants' motion.

For example, Defendants have argued that their challenged statements were not actionable because they were not false and misleading. Beige Decl., ¶ 51. While the bribery scheme was intended to impact the Company's CBA negotiations with the UAW, Defendants argued that there is no evidence or suggestion – other than allegations lodged by FCA's competitor, GM – that they did. Further, Defendants have strenuously argued, and would continue to argue, that even if Lead Plaintiff could establish a material misstatement or omission, he could not prove the requisite mental state of scienter – *i.e.*, that Defendants misled investors intentionally or with extreme recklessness. The scienter requirement is regarded as "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 Civ. 628(SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd* 634 F.3d 647 (2d Cir. 2011); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008) ("Proving a defendant's state of mind is hard in any circumstances."). Here, Lead Plaintiff's claims are based on allegations in the GM Complaint that Marchionne orchestrated the bribery scheme as part of a plan to force a merger between FCA and GM.  However, establishing scienter on the part of Marchionne posed a significant hurdle, as he was never charged by the DOJ and he passed away in 2018.  Beige Decl., ¶ 69.

In light of the difficulty of pleading falsity and scienter, Lead Plaintiff knew he faced a substantial risk that the Court would grant Defendants' motion to dismiss, leaving the Settlement Class with no recovery at all.

### 2. The Risks of Establishing Loss Causation and Damages at Trial

If this litigation had proceeded, Lead Plaintiff would also have encountered significant loss causation and damages defenses at summary judgment phase and trial. Pursuant to *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-47 (2005), Lead Plaintiff would need to show that it was the disclosure of the alleged securities violations that caused investors' losses, as opposed to other unrelated matters. Establishing loss causation is a "complicated and uncertain process, typically involving conflicting expert opinion[s]," *Global Crossing*, 225 F.R.D. at 459, and Defendants have strongly contested loss causation. Lead Plaintiff alleges losses corresponding with the filing of the GM Complaint on November 20, 2019 (a complaint which has since been dismissed), which alleged that Marchionne was complicit in the bribery scheme and that FCA's bribery of UAW officials in fact influenced the terms of the CBA. Defendants contend that the allegations in the GM Complaint are immaterial as a matter of law, and thus cannot serve as a corrective disclosure. Defendants have also argued that even if the allegations in the GM Complaint are material, the GM Complaint did not reveal any "new" information because it was based on information derived from the DOJ's investigation – information which has been in the public realm for years. *See In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (a corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentation alleged in the complaint"). Furthermore, Lead Plaintiff relies upon the Ninth Circuit's holding in *In re BofI Holdings, Inc., Secs. Litig.*, 977 F.3d 781 (9th Cir. 2020) to support the argument that the GM Complaint served as a corrective disclosure. However, there is no guarantee that the Second Circuit would agree with this interpretation. If Defendants were to

prevail on any of the loss causation arguments, the amount of potentially recoverable damages would be severely reduced, or even cut to zero. Even if Lead Plaintiff overcame each of these risks and prevailed at trial, such a victory would not guarantee the Settlement Class an ultimate recovery larger than the $5 million Settlement. This uncertainty weighs in favor of final approval.

### 3. The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The Settlement provides the Settlement Class with a prompt and tangible recovery, without the additional risk, expense, and delay of litigating to completion. *See Global Crossing*, 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to 'some speculative payment of a hypothetically larger amount years down the road.'"). As noted, Defendants' motion to dismiss had been fully briefed at the time the Settlement was reached. Even if the FAC was sustained, discovery would have been protracted and the subsequent trial would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. *See, e.g.*, *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all."). Indeed, the continued litigation of this Action would be lengthy and costly, with no guarantee of any return for investors. "Securities class actions are generally complex and expensive to [litigate]." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007). "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597, 2004

WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties").

Adding to the complexity and expense of this case is that Lead Plaintiff must prove damages. Lead Plaintiff's expert must show that the corrective disclosures revealed new market-moving news, and determine whether any confounding news released the same day had an impact on stock price and if so, the amount of recoverable damages. The Parties' experts will likely express diverging views on the range of recoverable damages at trial. Because it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426–27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses.").

Accordingly, Rule 23(e)(2)(C)(i) and the first, fourth, fifth, eighth, and ninth *Grinnell* factors all weigh in favor of final approval.

### 4. The Proposed Method for Distributing Relief is Effective

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. JND is an experienced claims administrator and is processing claims under the guidance of Lead Counsel. *See* Beige Decl., ¶¶ 37-42.

Based upon the trading information provided by claimants, JND determines each claimant's eligibility to participate and calculates their respective "Recognized Claim" based on the Plan of Allocation. Beige Decl., Ex.1 at A.  Lead Plaintiff's claim will be reviewed in the same manner. Claimants are notified of any defects or conditions of ineligibility, and given the chance to contest rejection and cure deficiencies. Any claim disputes that cannot be resolved will

be presented to the Court for determination. This claims process is similar to that typically used in securities class action settlements. *See Christine Asia*, 2019 WL 5257534, at *14 (finding a nearly identical distribution method the "type of claims processing and method for settlement proceeds is standard in securities and other class actions and is effective."). This factor therefore supports final approval.

### 5.  Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Lead Counsel's memorandum of law in support of the motion for an award of attorneys' fees and expenses and reimbursement award to Lead Plaintiff, filed concurrently herewith (the "Fee Brief"), Lead Counsel is seeking attorneys' fees of 33 1/3% of the Settlement Fund and litigation expenses of $85,318.18, in addition to a $3,437.50 reimbursement for Lead Plaintiff pursuant to the PSLRA. Beige Decl., Ex. 3 at ¶¶ 7, 14.

As set forth in the Fee Brief, this request is in line with recent fee awards within the Second Circuit in similar common-fund cases. *See, e.g.*, *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349-NGG-RER, 2021 WL 1259559, at *7 (E.D.N.Y Jan. 6, 2021) (granting preliminary approval of settlement, noting that "[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million. […] Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness"); *see also Mikhlin*, No. 19CV4349-NGG-RER (E.D.N.Y. May 24, 2021) (granting final approval to settlement and awarding attorneys' fees of 33 1/3 of $2.35 million settlement amount); *Enriquez v. Nabriva Therapeutics PLC*, No. 19-cv-04183-VM-GWG (E.D.N.Y. May 14, 2021) (awarding one-third of $3 million settlement); *Murphy III v. JBS S.A.*, No. 17-cv-03084-ILG-RER (E.D.N.Y. July 22, 2019) (awarding one-third of $5.9 million

settlement). With respect to the timing of an award of fees and expenses, it is common for such fees to be paid at the time the court makes its award. *See Mikhlin*, No. 19CV4349-NGG-RER (E.D.N.Y. May 24, 2021) (approving the "quick pay" provision of the settlement).

Lead Counsel's fee request is reasonable, and Lead Plaintiff has ensured that the Settlement Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments. Accordingly, this factor supports final approval.

### 6. The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As previously disclosed in connection with Lead Plaintiff's motion for preliminary approval of the Settlement (ECF No. 48 at 15), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of FCA common stock request exclusion (or "opt out") from the Settlement. This type of agreement is "standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia*, 2019 WL 5257534, at *15.

### D. The Settlement Ensures Settlement Class Members Are Treated Equitably

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably. Each Authorized Claimant, including Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation, and each will be subject to the same formula for distribution of the Settlement on a *pro rata* basis. *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *13-14 (S.D.N.Y. July 21, 2020) (finding a plan of allocation reasonable where it distributed the

settlement on a *pro rata* basis). Accordingly, the Plan of Allocation treats all Settlement Class Members equitably.

### E. The Settlement Satisfies the Remaining *Grinnell* Factors

In applying the *Grinnell* factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 23 (2d Cir. 2013). However, "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances." *IMAX*, 283 F.R.D. at 189. As demonstrated below, the Settlement satisfies the remaining criteria for approval under *Grinnell*.

### 1. The Lack of Objections to Date Supports Final Approval

The reaction of the Settlement Class to the Settlement is a significant factor for the court to weigh when considering its adequacy. *See City of Providence*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff' d sub nom. Arbuthnot v. Pierson*, 607 App'x 73, 74 (2d Cir. 2015.) The "absence of objection" is strong evidence of the settlement's fairness. *See also Wal-Mart*, 396 F.3d at 118. While the deadline has not yet passed, to date, no Settlement Class Member has objected to, or excluded themselves from, the Settlement.[7] Beige Decl.,¶¶ 44, 59;  Beige Decl. Ex. 1, ¶¶ 18-19.

### 2. Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). At the time the

---

[7] The deadline for objections and exclusions is January 27, 2022.

Settlement was reached, Lead Counsel and Lead Plaintiff were well aware of the strengths and weaknesses of their case. Beige Decl., ¶¶ 8-10. Courts frequently approve settlements that are reached at earlier stages in the litigation, like the Settlement here, even when no formal discovery has taken place. *See In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG) 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) ("Although little formal discovery has been completed, Lead Counsel has … obtained a number of internal documents, and all parties have conducted extensive research in connection with their submissions in connection with Defendants' motion to dismiss and in preparation for mediation."); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs […] were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (finding that where "no merits discovery  occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement").

As part of the settlement negotiations, Lead Counsel analyzed internal FCA documents related to the alleged bribery scheme. Beige Dec., ¶ 33. These materials, combined with the extensive investigation that occurred over the course of the Action, and the detailed briefing in connection with Defendants' motion to dismiss, reinforce Lead Counsel's belief that settling the case at this juncture will provide the greatest return for the Settlement Class.

### 3. Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Even if the FAC survived Defendants' motion to dismiss, Lead Plaintiff would still have to move for class certification. This motion would be expensive and time-consuming. Without a doubt, Defendants would attempt to rebut the presumption of reliance typically urged in most securities class actions by showing that FCA's stock price was not impacted by the alleged fraud. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Defendants would vigorously oppose class certification and it is likely that the certification process would "devolve into yet another battle of the experts" whose outcome would be impossible to predict. *In re Bear Stearns*, 909 F. Supp. 2d at 268-69; *see also Vaccaro,* 2017 WL 6398636, at *5 ("The process of class certification would have subjected Plaintiffs to considerably more risk.").

### 4. Defendants' Ability to Withstand a Greater Judgment

A defendant's ability to withstand a judgement greater than that secured by settlement is generally not one of the determining factors. *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). Here, the Settlement was not driven by any concern about FCA's ability to pay. Where "ability to pay is not a factor in the settlement," it "does not weigh either for or against approval." *Id.* at 340.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

A Plan of Allocation "need only have a reasonable, rational basis when created by competent and experienced counsel." *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *6 (E.D.N.Y. Apr. 11, 2014). Here, Lead Counsel formulated the

Plan of Allocation to be consistent with the securities laws and to reflect the relative strengths of Lead Plaintiff's theories.

First, Lead Counsel formulated the Plan of Allocation with the help of a damages consultant, consistent with the principles of loss causation. Beige Decl., ¶ 65. In *Burns*, the court approved a plan of allocation where, as here, it "reflects plaintiffs' theory of the case – that the stock price declined due to disclosures of the alleged misconduct – and does not compensate losses from sales made prior to the disclosure of the alleged misconduct"; "requires any gains during the Class Period be netted with losses during the Class Period"; "comports with federal securities law"; and where "plaintiffs' counsel formulated the plan of allocation with a financial consultant to ensure it was fair." *Burns*, 2014 WL 12917621, at *6.

Second, the Plan of Allocation recognizes differences in damages incurred by those who bought and sold their shares at different prices and times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid and the amount of artificial inflation in FCA securities at the time of their purchases. Beige Decl., ¶¶ 64-65.

Finally, the Plan of Allocation accounts for the strengths of the theories Lead Plaintiff must prove to recover damages. Beige Decl., ¶ 65. The Settlement Fund will be distributed on a *pro rata* basis depending on the Settlement Class Member's recognized losses. *Id*., ¶ 64; *see In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages).

In accounting for the applicable law and the strengths and weaknesses of Lead Plaintiff's case, the Plan of Allocation recognizes that certain Settlement Class Members are differently situated but does not discriminate between those in the same position. In short, the Plan of

Allocation has a rational basis, it fairly compensates Settlement Class Members, and should be approved.

## V.      CERTIFICATION OF THE SETTLEMENT CLASS

In the Preliminary Approval Order, Magistrate Henry addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and determined that "pursuant to Rule 23 of the Federal Rules of Civil Procedure… it [would] likely be able to certify the Settlement Class for purposes of the proposed Settlement" (ECF No. 60, at 2). Specifically, Magistrate Henry found that each element requirement for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met or will likely be met for purposes of the proposed Settlement. *Id.* [8]  Nothing has changed since the entry of the Preliminary Order to alter the propriety of the Court's preliminary certification of the Settlement Class.[9]

### A.   The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  In the Second Circuit, numerosity is presumed when a class consists of 40 or more members.  *See, e.g., Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.

---

[8] The Settlement Class is defined as "all persons or entities who or which purchased or otherwise acquired, on a U.S. Exchange or in a transaction in the United States, FCA or STLA common stock between February 26, 2016 and January 27, 2021, both dates inclusive." (ECF No. 60 at 2); *see also* Stipulation, ¶1(nn).

[9] The Second Circuit has long acknowledged that certifying a class for settlement is proper. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs.*, 298 F.R.D. at 180. Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements, involving large numbers of claims by relatively small claimants." *In re IMAX*, 283 F.R.D. 178 at 186 (citations omitted).

1995). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, throughout the Class Period, FCA and/or STLA common stock traded actively on the New York Stock Exchange ("NYSE") under the ticker symbols "FCAU" and "STLA." These shares were purchased by thousands of investors, making joinder impracticable.

### 2. Rule 23(a)(2): Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In securities fraud cases, the commonality requirement is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentation and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *In re Globalstar Sec. Litig.*, 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."). Here, the central questions of whether Defendants issued actionable misstatements and omissions regarding the scope and effects of the bribery scheme, and whether Defendants acted with the requisite mental state, are the same for all members of the Settlement Class.

### 3. Rule 23(a)(3): Lead Plaintiff's Claims are Typical

Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events, and each class member make similar legal argument to prove the defendant's liability." *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *accord Pfizer*, 282 F.R.D. at 44. "Typical" does not

00670747;V3                                          23

mean "identical." *In re Marsh & McLennan, Cos., Inc. Sec. Litig*. No. 04 C9v. 8144 (CM) 2009 WL 5178546, at *10. (S.D.N.Y. Dec 23, 209). Accordingly, "[f]actual differences involving the date of acquisition . . ." will not destroy typicality. *Id*.

Here, Lead Plaintiff's claims are typical of those of the Class. Like other Settlement Class Members, Lead Plaintiff purchased publicly traded FCA or STLA common stock during the Class Period and suffered damages based on the alleged misrepresentations and omissions that Defendants made to the investing public.

### 4. Rule 23(a)(4): Lead Plaintiff is an Adequate Representative

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by: (i) whether the claims of the proposed class representatives conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014). Both prongs are met here.

First, Lead Plaintiff has and will continue to represent the interests of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class. Second, Lead Counsel has extensive experience in complex securities litigation and class action proceedings, is well qualified and able to conduct the Action, and has ably and effectively represented Lead Plaintiff and the proposed Settlement Class throughout the Action.[10]

---

[10] Accordingly, Lead Counsel satisfies the Class Counsel requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See* ECF No. 60.

**B.** **The Settlement Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "readily met" in securities class action claims. *Amchem Prods., Inc.v. Windsor*, 521 U.S. 591, 625 (1997). Here, common questions of law and fact predominate over individual questions because the alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner."[T]hese issues [are] susceptible of generalized proof and, accordingly the predominance requirement of Rule 23(b)(3) is satisfied." *Marsh & McLennan*, 2009 WL 5178546, at \*11.

Moreover, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims are predicated upon omissions of material fact, or alternatively based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Applying either presumption dispenses with the requirement that each Settlement Class Member prove individual reliance on the alleged misstatements or omissions. *See id*.

Further, resolution of this case through a class action is far superior to litigating thousands of individual cases where the expense for a single investor would likely exceed its losses. *See Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at \*5 (S.D.N.Y. Mar. 6, 2008) ("Securities suits easily satisfy the superiority requirement.").

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement; (ii) approve the Plan of Allocation; (iii) certify the Settlement Class; and (iv) enter the Judgment in the form attached as Exhibit B to the Stipulation (revised and updated at ECF No. 57-9).

DATED: January 13, 2022                    Respectfully submitted,

                                           **BERNSTEIN LIEBHARD LLP**

                                           By: /s/ Stephanie M. Beige
                                               Stanley D. Bernstein
                                               Stephanie M. Beige
                                               Peter J. Harrington
                                               10 East 40th Street
                                               New York, NY  10016
                                               Telephone: (212) 779-1414
                                               Facsimile: (212) 779-3218
                                               bernstein@bernlieb.com
                                               beige@bernlieb.com
                                               pharrington@bernlieb.com

                                               *Lead Counsel for Lead Plaintiff and the Settlement
                                               Class*

00670747;V3                                26

**CERTIFICATE OF SERVICE**

I hereby certify that the was filed with CM/ECF system on January 13, 2022 and was thereby served upon all parties and counsel registered therein. **Memorandum of Law In Support of Lead Plaintiff's Motion For Final Approval of Class Action Settlement, Plan of Allocation and Certification of Settlement Class**.

/s/ Stephanie M. Beige
Stephanie M. Beige

00670747;V3