**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE STELLANTIS N.V. SECURITIES LITIGATION | : : : : : : : : | 19-CV-6770 (EK) (MMH)<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
REIMBURSEMENT AWARD TO LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ......................................................................................................................... 1

I.   FACTS ............................................................................................................................... 2

II.  ARGUMENT .................................................................................................................... 2

    A.  Lead Counsel's Application for an Award of Attorneys' Fees Is Reasonable ...... 2

        1.  Lead Counsel is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund ................................................................... 2

        2.  The Requested Fee is Fair and Reasonable Under the Percentage-of -Recovery Method ........................................................................................ 5

        3.  The Fee Requested is Reasonable Under the Lodestar "Cross-Check" ........... 6

        4.  Consideration of the Second Circuit's *Goldberger* Factors Confirms the Reasonableness of the Requested Fee ............................................................. 9

            a.  Time and Labor Expended by Counsel ............................................... 9

            b.  The Risks of the Litigation ................................................................ 11

                (1)  The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee ............................. 11

                (2)  Risks of Establishing Liability .................................................... 13

                (3)  Risks of Establishing Causation and Damages .......................... 14

            c.  The Magnitude and Complexity of the Litigation............................ 15

            d.  The Quality of Representation ......................................................... 16

            e.  The Requested Fee in Relation to the Settlement............................. 18

            f.  Public Policy Considerations............................................................ 19

    B.  Lead Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action ................................................................................. 20

    C.  Lead Plaintiff Nicholas Panitza is Entitled to a Reasonable Award Under 15 U.S.C. §78u-4(a)(4)............................................................................................. 21

CONCLUSION............................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Sterling Portfolio Inv., LP,*
No. 16 Civ. 5337 (CBA) (VMS), 2017 WL 8790990 (E.D.N.Y. Dec. 13, 2017) ...................... 8

*Aponte v. Comprehensive Health Mgmt., Inc.,*
No. 10 Civ. 4825(JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ..................................... 11

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.,*
955 F.3d 254 (2d Cir. 2020), *cert. granted*, 141 S. Ct. 950 (2020) ......................................... 14

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985) ............................................................................................................... 3, 19

*Blum v. Stenson,*
465 U.S. 886 (1984) ................................................................................................................. 4, 5

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ..................................................................................................................... 2

*Burns v. FalconStor Software, Inc.,*
No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ................................. 8

*Christine Asia Co. Ltd. v. Yun Ma,*
No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................... 15

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...................................... 11, 16

*City of Providence v. Aeropostale, Inc.,*
No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) *aff'd sub. nom.*
*Arbuthnot v. Pierson,*
607 F. App'x 73, 74 (2d Cir. 2015) ........................................................................ 3, 7, 16, 19

*Cohan v. Columbia Sussex Mgmt.,*
No. CV 12-3203 (AKT), 2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018) .................................. 8

*Eltman v. Grandma Lee's, Inc.,*
No. 82 Civ. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ............................................... 16

*Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Trust,*
925 F.3d 63 (2d Cir. 2019), *cert denied*, 140 S. Ct. 385 (2019) .......................................... 2, 4

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................... *passim*

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ...................................................................... 3

*Hicks v. Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................ 21

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................... 14

*In re Bayer AG Sec. Litig.*,
   No. 03 Civ. 1546 (WHP), 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ............................... 15

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 20

*In re BioScrip, Inc. Sec. Litig.*,
   273 F. Supp. 3d 474 (S.D.N.Y. 2017), *aff'd sub nom.*
   *Fresno Cnty. Emps' Ret. Ass'n v. Isaacson/Weaver Family Trust*,
   925 F.3d 63 (2d Cir. 2019) ................................................................... 8

*In re China Sunergy Sec. Litig.*,
   No. 07 CIV. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................... 5, 20

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. July 8, 2014) ................................................................. 5, 6

*In re Comverse Tech. Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............ 8, 11, 13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom.*
   *In re Facebook Inc.*,
   674 F. App'x 37 (2d Cir. 2016) ................................................................. 10, 11

*In re Flag Telecom*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................... *passim*

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ............... 5, 20, 21

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 CPS, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ................................. 15

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... 16

*In re Grana y Montero S.A.A. Sec. Litig.*,
 No. 17-CV-1105 (LDH)(ST), 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021),
 *report and recommendation adopted*,
 No. 17-CV-1105 (LDH)(ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) .......................... 8

*In re KeySpan Corp. Sec. Litig.*,
 No. 01 CV 5852(ARR), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ................................... 17

*In re MetLife Demutualization Litig.*,
 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................................... 20, 21

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
 991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................................ 4, 6, 8, 19

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005) ................................................................................................... 18

*In re Sadia S.A. Sec. Litig.*,
 No. 08 Civ. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011)................................. 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
 No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020).................... 7, 17

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d (S.D.N.Y. 2008) ...................................................................................... 3, 11

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
 699 F. App'x 8 (2d Cir. 2017)................................................................................................... 7

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
 724 F. Supp. 160 (S.D.N.Y. 1989) ......................................................................................... 19

*In re Veeco Instruments Inc. Sec. Litig.*,
 No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............... 3, 16, 17, 22

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ................................... 17

*Khait v. Whirlpool Corp.*,
 No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .......................................... 6

*Maley v. Del Glob. Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................... 4, 9

*Mikhlin v. Oasmia Pharm. AB*,
 No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ....................... 18

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)............................................................................................. 5, 7

*Pearlman v. Cablevision Sys. Corp.*,
   No. CV 10-4992 (JS) (AKT), 2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019) .......................... 6

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999) ..................................................................................... 4

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 7961(CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................. 12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261................................................................. 11, 16

*Vaccaro v. New Source Energy Partners L.P.*,
   No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)...................... 6, 19, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................... 3, 4

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ....................................................................................... 16

**Docketed**

*Enriquez v. Nabriva Therapeutics PLC*,
   No. 19-cv-04183-VM-GWG (E.D.N.Y. May 14, 2021) ..................................................... 18

*Mikhlin v. Oasmia Pharmaceutical AB*,
   No. 19-CV-4349-NGG-RER (E.D.N.Y. May 24, 2021) .................................................... 19

*Murphy III v. JBS S.A.*,
   No. 17-cv-03084-ILG-RER (E.D.N.Y. July 22, 2019)....................................................... 19

**Statutes**

15 U.S.C. § 78u-4(a)(4) ..................................................................................................... 1, 21

15 U.S.C. § 78u-4(a)(6) ..................................................................................................... 4

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................................. 14

Fed. R. Civ. P. 23(f)......................................................................................................... 13, 14

Lead Counsel respectfully submits this memorandum in support of its application for: (i) an award of attorneys' fees of one-third of the Settlement Fund; (ii) payment of litigation expenses in the amount of $85,318.18; and (iii) reimbursement in the amount of $3,437.50 to the Lead Plaintiff in connection with his representation of the Settlement Class, pursuant to the PSLRA, 15 U.S.C. ¶78u-4(a)(4).[1]

## INTRODUCTION

The Settlement provides a recovery of $5,000,000 in cash to resolve all claims in the Action. This recovery is a very favorable result for the Settlement Class and avoids the substantial risks and expenses of continued litigation, including the risk of recovering less, or nothing at all. Lead Counsel litigated this Action on a contingency basis and has not received any compensation for their prosecution of the case after over two years of litigation.

As discussed herein, and in the Declaration of Stephanie M. Beige in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Plan of Allocation and Certification of the Settlement Class and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Reimbursement Award to Lead Plaintiff (the "Beige Decl.") filed concurrently herewith, it is respectfully submitted that Lead Counsel's requested fee award of one-third of the Settlement Fund is fair, reasonable, and appropriate. The requested fee award represents a modest lodestar multiplier of 1.24 based on Lead Counsel's lodestar and is within the range of attorney fee awards routinely granted by courts in this Circuit.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement filed with the Court on May 14, 2021 (the "Stipulation") (ECF No. 50).

00671424;V1

The litigation expenses requested are also reasonable and were necessarily incurred for the successful prosecution of the Action.[2]  Finally, Lead Plaintiff's reimbursement request is justified given the time Lead Plaintiff spent litigating on behalf of the Settlement Class.

Accordingly, for the reasons set forth herein, Lead Counsel respectfully requests that the Court approve Lead Counsel's motion for attorneys' fees and payment of expenses.

## I.     FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Beige Declaration and in Lead Plaintiff's Motion in Support of Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class ("Final Approval Brief") filed concurrently herewith and incorporated by reference herein.

## II.    ARGUMENT

### A.     Lead Counsel's Application for an Award of Attorneys' Fees Is Reasonable

#### 1.     Lead Counsel is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court, the Second Circuit, and district courts within this Circuit have long recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund.[3] *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("*Goldberger*"); *Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Trust*, 925 F.3d 63,

---

[2] *See* Declaration of Stephanie M. Beige in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Reimbursement Award to Lead Plaintiff (the "Beige Fee Decl."), attached to the Beige Decl. as Exhibit 3, at ¶ 3.

[3] Throughout this memorandum, emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

68 (2d Cir. 2019), *cert denied*, 140 S. Ct. 385 (2019). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 App'x 73, 74 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 585 (S.D.N.Y. 2008); *In re Veeco*, 2007 WL 4115808, at *2. Indeed, the Supreme Court has emphasized that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).

The percentage-of-the-fund method is also the preferred means to determine a fee because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."). The percentage approach also recognizes that the quality of counsel's services is measured

best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[4]

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . .a reasonable fee is based on a percentage of the fund bestowed on the class."). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49; *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Indeed, the Second Circuit has acknowledged that "[t]he trend in this Circuit is toward the percentage method" when awarding attorneys' fees in common fund cases. *Wal-Mart Stores*, 396 F.3d at 121. The Second Circuit recently reaffirmed these principles in rejecting an objection to the percentage approach for awarding attorneys' fees, confirming the propriety of the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cnty.*, 925 F.3d at 72-73.

The percentage of recovery method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002)

---

[4] *See e.g.*, *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . . The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel").

(when drafting the PSLRA, Congress "indicated a preference for the use of the percentage method); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as well as the trend among district courts in this Circuit and the language of the PSLRA, Lead Counsel respectfully submits that the Court should award a fee based on the percentage of the common fund obtained.

### 2. The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). An "'ideal proxy' for the award should reflect the fees upon which common fund plaintiffs negotiating in an efficient market for legal services would agree." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. July 8, 2014) (quoting *Goldberger*, 209 F.3d at 52). If this were a non-class action, the customary fee arrangement would be contingent and in the range of 33 1/3 % of the recovery. *See Blum*, 465 U.S. at 903 ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.'").

Here, the Court does not need an "ideal proxy" for what counsel would receive if they were bargaining for their services in the marketplace, because Lead Plaintiff (an attorney himself) supports the requested fee percentage. Moreover, the requested 33 1/3% fee is within the range of percentage fees awarded by courts within the Second Circuit in other comparable securities cases. *See, e.g., In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 (DAB), 2011 WL 1899715, at *6

(S.D.N.Y. May 13, 2011) ("the requested attorneys' fees of 33 and 1/3% are reasonable. The compensation requested was negotiated with the Lead Plaintiff and is within the range of percentage fees awarded in the Second Circuit.") (citing other cases in this Circuit awarding 33 and 1/3%); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund*); In re Payment*, 991 F. Supp. 2d at 445  (awarding fees on a graduated schedule including 33.3% to the first $10 million of the settlement, and noting it is "very common" to see 33% contingency fees in settlements less than $10 million); *Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) (same); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2.85 million settlement).

Accordingly, Lead Counsel's requested fees are fair and reasonable for litigation of this kind and are supported by previous awards made by courts in this Circuit.

### 3. The Fee Requested is Reasonable Under the Lodestar "Cross-Check"

When using the percentage-of-the-fund method, courts can also look to "hours as a 'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353.  When used as a mere "cross-check, the hours documented need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.  Indeed, the Second Circuit has held that as long as utilizing the percentage of recovery methodology does not produce an "unwarranted windfall[]" to counsel, there is "no need to compel district courts to undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation." *Id.* at 49-50.

The lodestar method requires a two-part analysis: "first, to determine the lodestar, the court multiplies the numbers of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *City of Providence*, 2014 WL 1883494, at *13; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 10, 2010) ("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'"). Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable.

Lead Counsel and their paraprofessionals have spent 1,692.25 hours in the prosecution of this case, producing a total lodestar amount of $1,342,393.75 when multiplied by Lead Counsel's billing rates. *See* Beige Decl., Ex. 3, at ¶ 6.[5] The amount of attorneys' fees requested by Lead Counsel – $1,665,000 – represents a modest multiplier of 1.24 to Lead Counsel's lodestar.[6] The multiplier of 1.24 reflected here falls at the lower range of multipliers found reasonable for cross-

---

[5] In determining whether Lead Counsel's rates are reasonable, the Court should consider the attorneys' professional reputation, experience, and status. Lead counsel are experienced securities practitioners with a track record of success, and one of the most prominent securities practitioners in the country. *See* Beige Decl., Ex. 3 at A (Bernstein Liebhard Firm Resume). Lead Counsel's hourly rates are reasonable in light of its track record and experience. *See In re Tremont Sec. Law, State Law & Ins. Litig.*, 699 F. App'x 8, 18, n.13 (2d Cir. 2017) (Finding the rates charged by the firm were reasonable "[g]iven the skill and experience required in this complex securities litigation.").

[6] The Supreme Court and other courts have held that the use of current rates is proper to compensate for inflation and the loss of use of the funds. *See Jenkins*, 491 U.S. at 283-84; *see also In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) ("The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest.").

check purposes by courts in this Circuit and elsewhere, and is fully justified here given the effort required, the risks faced, and the results achieved. *See In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cnty. Emps' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 140 S. Ct. 3985 (2019) ("There is no question that Lead Counsel's lodestar multiplier of 1.39 is at the lower range of comparable awards in common fund cases."); *In re Grana y Montero S.A.A. Sec. Litig.*, No. 17-CV-1105 (LDH)(ST), 2021 WL 4173684, at *18 (E.D.N.Y. Aug. 13, 2021), *report and recommendation adopted*, No. 17-CV-1105 (LDH)(ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) (approving lodestar multiplier of 3.56); *Cohan v. Columbia Sussex Mgmt.*, No. CV 12-3203 (AKT), 2018 WL 4861391, at *5 (E.D.N.Y. Sept. 28, 2018) (approving lodestar multiplier of 2.3 in connection with $3.25 million settlement and noting that courts regularly award up to six times lodestar); *Alvarez v. Sterling Portfolio Inv., LP*, No. 16 Civ. 5337 (CBA) (VMS), 2017 WL 8790990, at *9 (E.D.N.Y. Dec. 13, 2017) (approving a lodestar multiplier of 1.36); *In re Payment*, 991 F. Supp. 2d at 448 (approving a 3.41 lodestar multiplier).

Further, courts often award relatively high multipliers to encourage early settlement. A too-strict focus on the lodestar "creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early settlement." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010). Early settlements of class actions preserve the courts' resources and allow quick distribution of settlements, and counsel "should not be penalized for entering into early settlement" by slashing the percentage recovery of attorneys' fees. *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *9 (E.D.N.Y. Apr. 11, 2014).

00671424;V1                                    8

In *Maley*, the parties reached a "relatively quick settlement" after almost one year of litigation, prior to the commencement of extensive discovery. *See Maley*, 186 F. Supp. 2d at 363-64. In awarding a fee of 33 1/3% that resulted in a lodestar cross-check multiplier of 4.65, the court held that "[i]n the context of a complex class action, early settlement has far reaching benefits in the judicial system." *Id.* at 373. The court held that the multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country." *Id.* at 369.

The requested 1.24 multiplier here is far lower than that awarded in *Manley* and is well within the range of multipliers approved by courts in this Circuit and around the country. Lead Counsel litigated this Action on a contingent-fee basis for over two years and obtained a favorable result for the Settlement Class without any certainty of payment. The requested fee is reasonable, whether calculated as a percentage of the Settlement Fund or in relation to Lead Counsel's lodestar. Further, as described below, Lead Counsel's requested fee is also supported by each of the factors set forth by the Second Circuit in *Goldberger*.

### 4. Consideration of the Second Circuit's *Goldberger* Factors Confirms the Reasonableness of the Requested Fee

The Second Circuit has set forth six factors that courts should consider in determining whether a fee request is reasonable under the percentage of the fund method:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors demonstrates that Lead Counsel's requested fee is reasonable.

#### a. Time and Labor Expended by Counsel

Lead Counsel has expended substantial time and effort pursuing the Action on behalf of the Settlement Class. Since the Action commenced over two years ago, Lead Counsel has devoted

nearly 1,700 hours to prosecuting the Settlement Class's claims. *See* Beige Decl., Ex. 3, at ¶6.  As detailed in the Beige Declaration (¶ 8), Lead Counsel, among other things:

- conducted an extensive factual investigation into the underlying facts, which included reviewing public records and news reports regarding the multi-year bribery scheme at the NTC, the DOJ's investigation into the scheme, and the DOJ's related investigations of the UAW;

- reviewed and analyzed documents and evidence from the criminal proceedings relating to the DOJ's investigation into the bribery scheme, including numerous indictments, informations, plea agreements, and sentencing memoranda concerning various FCA and UAW individuals implicated in the alleged scheme;

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted detailed amended complaints;

- briefed Defendants' motion to dismiss the complaint;

- participated in lengthy arm's-length settlement negotiations regarding the terms of the Settlement;

- reviewed and analyzed internal FCA documents concerning the alleged bribery scheme in furtherance of settlement negotiations;

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement; and

- engaged and consulted with a damages consultant and prepared the proposed Plan of Allocation based primarily on an analysis estimating the amount of artificial inflation in the price of FCA stock during the Class Period.

Throughout the litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Additional hours and resources will necessarily be expended assisting Members of the Settlement class with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and responding to Settlement Class Member inquiries. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.,* No. MDL 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.,* 674 F. App'x 37 (2d Cir. 2016) ("Considering that

00671424;V1                                     10

the work in this matter is not yet concluded for Lead Counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825(JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

The significant amount of time and effort devoted to this case by Lead Counsel to obtain a $5 million recovery, work that will not end with the Court's approval of the Settlement, confirms that the fee request is reasonable.

### b.    The Risks of the Litigation

#### (1)    The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger* factor. *Goldberger*, 209 F.3d at 54; *see also Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at * 3

(S.D.N.Y. May 14, 2004); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961(CM), 2014 WL 1224666, at \*21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."); *Goldberger*, 209 F.3d at 55; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at \*3 (S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook this litigation on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute a risky action with no guarantee of compensation for the substantial investment of time and money the case would require, or even the recovery of expenses. Beige Decl. ¶¶ 13, 75-77. Lead Counsel has not been compensated for any time or expenses since being appointed by the Court in March 2020 and would have received no compensation or payment of its expenses had this case not been resolved successfully. *Id.*, ¶¶ 76-77. Nevertheless, Lead Counsel ensured from the outset that sufficient resources were dedicated to the Action and that funds were available to compensate staff and cover any necessary expenses. With an average time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than on a firm that is paid on an ongoing basis. *See In re Flag Telecom*, 2010 WL 4537550, at \*27 ("Lead [c]ounsel undertook this action on a wholly contingent basis, investing substantial amounts of time and money to prosecute this litigation with no guarantee of compensation or even the recovery of out-of-pocket expenses[,] [u]nlike counsel for [d]efendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis[.] Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

00671424;V1                                             12

In addition to advancing all costs and litigation expenses, Lead Counsel faced the possibility that they would receive no attorneys' fees at all.  Indeed, it is possible that, if not for this Settlement, the entire case would have been dismissed in response to Defendants' motion to dismiss.

### (2)      Risks of Establishing Liability

While Lead Plaintiff remains confident in his claims, his ability to plead liability arising out of the alleged bribery scheme that ended four years before the First Amended Complaint (the "FAC") was filed was far from certain.  As detailed in the Beige Declaration and in the Final Approval Brief, Defendants raised significant challenges in their motion to dismiss the FAC, including whether the alleged misstatements and omissions alleged were actionable, whether they were made with scienter, and whether Lead Plaintiff sufficiently pled loss causation.  *See* Beige Decl., ¶¶ 51-53.  Even assuming arguendo that Lead Plaintiff was able to overcome Defendants' motion to dismiss, these arguments would no doubt be raised again on summary judgment. Therefore, whether Lead Plaintiff ultimately would prove liability under the federal securities laws was far from certain. *See In re Flag Telecom*, 2010 WL 4537550, at *27 (noting that securities class actions in particular are "notably difficult and notoriously uncertain."); *In re Comverse*, 2010 WL 2653354, at *5 ("class actions confront even more substantial risks than other forms of litigation.").[7]

If this case continued, Lead Plaintiff would also need to convince the Court to certify a class for litigation purposes, which Defendants reserved the right to contest at a later stage of the proceedings. Even if the Court granted class certification, risks to maintaining certification would persist: Defendants could petition to appeal the certification order under Rule 23(f) or move for

---

[7] In particular, establishing scienter on the part of Marchionne would pose a significant hurdle, as he was never charged by the DOJ and he passed away in 2018. *See* Beige Decl., ¶ 69.

modification or decertification at any point prior to final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C);

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 258 (2d Cir. 2020) (reviewing

class certification pursuant to Fed. R. Civ. P. 23(f)), *cert. granted*, 141 S. Ct. 950 (2020).

### (3)     Risks of Establishing Causation and Damages

The risks posed to Lead Plaintiff's claims with respect to loss causation and damages were

significant, as Defendants would continue to assert that the GM Complaint did not reveal new facts

to the market and thus, was not a "corrective disclosure" under the PSLRA.  *See* Beige Decl., ¶

53.  Defendants would also challenge Lead Plaintiff's damage calculations and whether the alleged

disclosures in the GM Complaint caused Lead Plaintiff's and the Settlement Class's losses.  If

Defendants were successful in their challenges, the amount of damages that could be recovered

would be severely limited or entirely eliminated.  Defendants would never concede these points

and would continue to press this defense at summary judgment and trial. *See In re AOL Time

Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he

legal requirements for recovery under the securities laws present considerable challenges,

particularly with respect to loss causation and the calculation of damages.").

Even if Lead Plaintiff successfully opposed Defendants' motion to dismiss and expected

summary judgment motions, there is no way to know how a jury would decide these issues.  The

damage assessments of the parties' respective trial experts would become a "battle of experts."

The outcome of such battles is never predictable, and there existed the real possibility that a jury

could be swayed by experts for Defendants to minimize the Settlement Class's losses or show that

the losses were attributable to factors other than the alleged misstatements and omissions. Thus,

even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained might be only a

fraction of the damages claimed. Beige Decl., ¶ 56.

00671424;V1                                                14

### c.       The Magnitude and Complexity of the Litigation

It is widely recognized that securities class actions are "notoriously complex and difficult to prove." *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia Co. Ltd. v. Yun Ma,* No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'") (citing *In re Flag Telecom*, 2010 WL 2653354, at *27); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). This case was no exception.

As described herein, this Action involved a number of difficult and complex questions concerning liability and damages and would have required extensive additional efforts by Lead Counsel and consultation with experts. For example, to prove damages, Lead Plaintiff must put a price figure not only on the information that was allegedly fraudulently withheld but also on all other confounding information released at the same time. To prove scienter, Lead Plaintiff must ask the jury to peer into the mind of the Defendants and determine that they issued public statements regarding a bribery scheme that ended a year before the Class Period began with the intent of defrauding investors – even as Defendants steadfastly maintain their innocence on the stand in front of the jury. These are not simple tasks.

This case raises its fair share of difficult and complex issues beyond those inherent in all securities class actions. *See e.g.*, Beige Decl., ¶ 69.   For example, as noted in the Final Approval Brief, sufficiently proving scienter on the part of the key Individual Defendant – FCA's former CEO, Sergio Marchionne – who passed away in July 2018, presents issues that may be difficult for the Lead Plaintiff to overcome. Because this case revolved around "difficult, complex, hotly

disputed, and expert-intensive issues," this factor favors approving Lead Counsel's requested fees. *City of Providence*, 2014 WL 1883494, at *16.

### d.    The Quality of Representation

The best evidence of the quality of representation Lead Counsel provided is the recovery it achieved. *See, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the [] Class[]."); *In re Veeco*, 2007 WL 4115808, at *7 ("the quality of the representation of Plaintiffs' Counsel is best evidenced by the result.").

By skillfully discovering and presenting the facts relating to the multi-year bribery scheme and the sprawling governmental investigation into the scheme, Lead Counsel created an opportunity to settle this case early on favorable terms and demonstrated a great deal of skill to achieve a settlement at this level in this particular case.  Lead Counsel is an experienced securities class action firm and the attorneys who worked on this matter are experienced complex litigation practitioners.  *See* Beige Decl., Ex. 1 at A (Bernstein Liebhard Firm Resume).[8]  This Settlement is attributable to Lead Counsel's determination, diligence, and hard work in developing, litigating, and successfully negotiating the Settlement and an immediate cash recovery in a very challenging case, avoiding the risks associated with further litigation.  *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.  Furthermore, as set out in the Final Approval Brief, the $5 million Settlement Amount recovers a greater proportion of damages (approximately 6.84%) than the average case

---

[8] The standing and prior experience of Lead Counsel is also relevant in determining fair compensation. *See, e.g., Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986) ("Consideration should also be given to … whether the settlement [was] achieved …by counsel who have 'the experience and ability… to effective[ly] represent[] the class' interests.'") (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

that settles during a pending motion to dismiss (4.9%). *See* Beige Decl., Ex. 2 at 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2020 Review and Analysis*, Cornerstone Research).

"The quality of opposing counsel is also important in evaluating" the services provided by Lead Counsel. *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005) (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)); *see also In re Veeco*, 2007 WL 4115808, at *7 (among factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"). Here, Defendants were represented by the law firm of Sullivan & Cromwell LLP, which presented very skilled defenses and spared no effort in representing its clients. Beige Decl., ¶ 74. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate their willingness to continue to aggressively litigate this Action through trial and inevitable appeals, enabled Lead Counsel to achieve the Settlement for the benefit of the Settlement Class.

Moreover, the positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation. The Settlement Class overwhelmingly favors the Settlement. To date, the Claims Administrator has mailed 209,072 postcard notices to potential Settlement Class Members, posted the Internet Notice and Proof of Claim form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published

00671424;V1                                                    17

the Summary Notice over PR Newswire and in *Investor's Business Daily*. *See* Beige Decl., Ex. 1 (Declaration of Luiggy Segura Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions), at ¶¶ 12-16. Thus, notice has been given to the Settlement Class as required by the Preliminary Approval Order. Additionally, these notices informed Settlement Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33 1/3% of the Settlement Fund, plus expenses not to exceed $100,000.  The time to object to the fee request expires on January 27, 2022.  To date, not a single objection to the fee and expense amounts set forth in the Notice has been received.  Beige Decl., ¶ 12. Such a "low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  The fact that no objections have been received to date supports the fairness of the fee request.

Additionally, Lead Plaintiff supports the fee request.  Lead Plaintiff played an active role in the Action and closely supervised the work of Lead Counsel.

### e.     The Requested Fee in Relation to the Settlement

The fee request of one-third of the Settlement Fund net of expenses is well in line with percentages that courts in this District and within the Second Circuit have awarded in similar common fund settlements. *See, e.g.*, *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021) (granting preliminary approval of settlement, noting that "[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million. […] Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness."); *see also Mikhlin*, No. 19CV4349-NGG-RER (E.D.N.Y. May 24, 2021) (granting final approval to attorneys' fees of one third of the $2.35 million settlement amount); *Enriquez v. Nabriva*

*Therapeutics PLC*, No. 19-cv-04183-VM-GWG, slip op. at 6 (E.D.N.Y. May 14, 2021) (Dkt. No. 78) (awarding one-third of $3 million settlement); *Murphy III v. JBS S.A.*, No. 17-cv-03084-ILG-RER, slip op. at 15 (E.D.N.Y. July 22, 2019) (Dkt. No. 57) (awarding one-third of $5.9 million settlement); *In re Payment*, 991 F. Supp. 2d at 445 (awarding fees on a graduated schedule including 33.3% to the first $10 million of the settlement); *Vaccaro*, 2017 WL 6398636, at *8 (awarding one-third of $2.850 million settlement).

Under the percentage-of-recovery approach, Lead Counsel's requested attorneys' fees are reasonable for litigation of this kind and similar fees are routinely awarded by courts in this Circuit.

### f.  Public Policy Considerations

The Second Circuit has also held that "public policy considerations" should be afforded weight when determining the fee awarded to plaintiffs' counsel in class actions. *See In re Flag Telecom.*, 2010 WL 4537550, at *29 ("[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation"). Private securities actions such as this are "'a most effective weapon in the enforcement' of the securities laws and [] 'a necessary supplement to [SEC] action.'" *Berner*, 472 U.S. at 310. These lawsuits require competent counsel to prosecute them. *Id.* Competent counsel will only take on the lawsuits if they can expect reasonable and adequate compensation for their services where they achieve results. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *City of Providence*, 2014 1883494, at *11. As stated in *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989), "[a] large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken." Thus, public policy favors granting Lead Counsel's request for fees.

00671424;V1                                    19

**B.**    **Lead Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action**

Lead Counsel also respectfully requests an award of $85,318.18 in expenses incurred while prosecuting this Action.  Lead Counsel has submitted a declaration regarding the firm's expenses, which are all properly recoverable.  *See* Beige Decl., Ex. 3.  *See, e.g., China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation."'"); *Gilat*, 2007 WL 2743675, at *18 ("Courts routinely grant the expense requests of class counsel."); *In re Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to the class.").

Lead Counsel's expenses include, *inter alia*, the cost of retaining a damages consultant to analyze damages and develop the Plan of Allocation, as well as online, computerized legal research fees. *See* Beige Decl., Ex. 3, at ¶ 8 (the Beige Fee Declaration). A complete breakdown by category of the expenses incurred is set forth in the Beige Fee Declaration at ¶ 7.  These expenses were necessary for the successful prosecution and resolution of the Action on behalf of the Settlement Class and are of the type routinely charged to paying clients. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel). To date, no Settlement Class Member has

objected to the expense amount set forth in the Notice (up to $100,000).  *See* Beige Decl., ¶ 12. Accordingly, Lead Counsel respectfully requests payment for these expenses.

### C.    Lead Plaintiff is Entitled to a Reasonable Award Under 15 U.S.C. § 78u-4(a)(4)

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at *19. "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." (citation omitted). *MetLife*, 689 F. Supp. 2d at 370; *see also Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (reimbursing $7,500 to plaintiff on the basis that "[c]ourts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the Action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

Lead Plaintiff has devoted a substantial amount time to this case on behalf of the Settlement Class. Lead Plaintiff requests a payment in the amount of $3,437.50 to reimburse him for his time. Lead Plaintiff took an active role in the litigation, communicated with Lead Counsel on issues and developments in the Action, reviewed the amended complaints, Defendants' motion to dismiss and Lead Plaintiff's opposition papers, consulted with Lead Counsel regarding the settlement negotiations and strategy, the terms of the Settlement, and the Plan of Allocation. Beige Decl., Ex. 3 at ¶ 3. These are precisely the types of activities courts have found support PSLRA awards to

00671424;V1                                                21

class representatives. *See, e.g.*, *Vaccaro*, 2017 WL 6398636, at *8 (awarding $5,000 to plaintiffs "because they assisted in the litigation communicating with counsel, reviewing pleadings, and monitoring settlement negotiations."); *In re Veeco*, 2007 WL 4115808, at *12 (awarding plaintiff $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit). Lead Counsel submits that the amount requested is reasonable and, indeed, modest compared to awards made to lead plaintiffs in other PSLRA cases and should be granted.

The notices informed Settlement Class Members that Lead Plaintiff was to seek approval for up to $5,000 for his time incurred in representing the Settlement Class. *See* Beige Decl., Ex. 1, at A.  To date, no Settlement Class Member has objected to such an award.  Accordingly, Lead Plaintiff's request is reasonable and justified under the PSLRA and should be approved.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 33 1/3% of the Settlement Fund, plus interest, expenses in the amount of $85,318.18, and $3,437.50 to Lead Plaintiff as permitted by the PSLRA.

DATED: January 13, 2022                Respectfully submitted,

**BERNSTEIN LIEBHARD LLP**

By: /s/ Stephanie M. Beige
    Stanley D. Bernstein
    Stephanie M. Beige
    Peter J. Harrington
    10 East 40th Street
    New York, NY  10016
    Telephone: (212) 779-1414
    Facsimile: (212) 779-3218
    bernstein@bernlieb.com
    beige@bernlieb.com
    pharrington@bernlieb.com

    *Lead Counsel for Lead Plaintiff and the Proposed Class*